**FILED**

MAY - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Raymond W Stephens

1660 Whitehead Drive

Sarasota, Florida 34232

941-953-9628

May 7, 2007

VS

US DEPARTMENT OF LABOR    DEEOIC

EMPLOYMENT STANDARDS ADMINISTRATION

OFFICE OF WORKERS COMPENSATION PROGRAMS

DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION

FINAL ADJUDICATION BRANCH

400 WEST BAY STREET ROOM 722

JACKSONVILLE, FLORIDA  3220

Case: 1:07-cv-00858
Assigned To : Kennedy, Henry H.
Assign. Date : 5/8/2007
Description: Employ. Discrim.

### COMPLAINT

On August 3, 2004, I filed a form EE-I, Claim for Benefits under the EEOICPA. A previous Final Decision was issued by the Department of Labor under Part B of the Act on July 20, 2005, concluding that I was entitled to compensation for chronic beryllium disease. The evidence of record shows that I worked for American Beryllium Company (ABC) from 1980 to 1992.

*1*

On March 22, 2006, the Jacksonville District Office issued a recommended decision under Part E of the Act, concluding that I was not entitled to benefits since I was not a Department of Energy (DOE) contractor employee. Attached to the recommended decision was a notice of Claimant rights, which stated that I had 60 days in which to file an objection to the recommended decision and/or request a hearing. On May 23, 2006, the Final Adjudication Branch received my letter of objection. I requested a reconsideration of the case on November 17, 2006 and was denied. As evidence submitted indicates, these two letters make it very clear that Rocky Flats instructs Loral American Beryllium Company to lease a Zeiss measuring machine with Rocky Flats assuming the lease responsibility of $434,937.  The system becomes **Government-furnished property of approximately 100 sq ft as well as with a specially poured cement foundation measuring 10'x10' x 18" deep to support this delicate measuring device and with special insulation around the entire "Q" Building to insure against infrared and other emissions for safeguard. The cost of all is incorporated into the cost of the parts being manufactured under Contract.**

**"These documents show that Loral (ABC) meets the definition of DOE facility because they show that Loral was doing work on behalf of DOE (as subcontractor to Loral) (see Section 73841**

(12)(A)) and that DOE, through Rockwell (the operator of Rocky Flats, a DOE facility) had a proprietary interest in the Loral facility, as required by Section 73841 (12)(B)i)." By installing a specially poured cement floor to support the Zeiss, thereby making it part of the building -- rendering the building "Proprietary Interest".

These documents show that Loral American Beryllium should have been classified as a DOE Facility and not as a "Vendor" therefore making Loral American Beryllium employees eligible for compensation under EEOICPA Part E.

The purpose of this Court Action is to reverse the DOL Final Decision of November 9, 2006 as stated and reclassify American Beryllium Company from Vendor to DOE Facility thereby allowing all employees at ABC eligible for EEOICPA Part E Compensation.

Raymond W Stephens

1660 Whitehead Drive

Sarasota, Florida 34232

941-953-9628

**SEC. 3677. ADMINISTRATIVE AND JUDICIAL REVIEW.** 42 USC 7385s-6.

``(a) Judicial Review.--A person adversely affected or aggrieved by a final decision of the Secretary under this subtitle may review that order in the United States district court in the district in which the injury was sustained, the employee lives, the survivor lives, or the District of Columbia, by filing in such court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. The person shall also provide a copy of the petition to the Secretary. Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision. The court may modify or set aside such decision only if the court determines that such decision was arbitrary and capricious.

``(b) Administrative Review.--The Secretary shall ensure that recommended decisions of the Secretary with respect to a claim under this subtitle are subject to administrative review. The Secretary shall prescribe regulations for carrying out such review or shall apply to this subtitle the regulations applicable to recommended decisions under subtitle B.

**Statement**

September 8, 2006

Case # 278306717

Karoline M. Anders

Division of Energy Employees Occupational Illness Compensation

Employment Standards Administration

Department of Labor

202-693-0681

Ms Anders;

The following Documents will establish the Eligibility Conclusively of Loral American Beryllium workers For Part E Compensation. It is my Sincere Belief That the Following Documents that I have sent you previously and listed here are more than enough to reclassify LABC to at Least Subcontractor Status thereby insuring our eligibility for PART E Compensation

Item 1.

Two Documents Dated May 9, 1991 and June 11, 1991 from EG & G Rocky Flats **(A DOE Facility)** Terminating LABC Status of Off **Site- Subcontractor**

These Two Documents From EG&G Rocky Flats Prove That LABC was Classified as A Sub Contractor, Exactly When It was Classified I do not Have Access to at this time, But it was terminated in May , June of 1991

Further:

Item 2.

A document Dated February 11, 1985 from Loral American Beryllium To Rockwell International Proposing an Expansion By LABC to Incorporate an Aqueous Cleaning System

Item 3.

A document dated March 5, 1985 From Rockwell International Accepting the Proposal and Paying LABC for it in the cost of Aqueous Cleaning surcharge, rendering **Rockwell the Owner ( A DOE Facility)** after Paying LABC $153,176.22 for it

Items 2 & 3 Consist of a Letter to Rockwell International Proposing The Expansion of the Q Cleared Facility to incorporate an Aqueous Cleaning System and A letter From Rockwell Accepting The Proposal and Paying LABC the Amount of $ 153,176.22 To

07 0858

FILED

MAY - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

install it ( **Approximately 500-600 Sq Ft of floor Space)** Making the system **the Property Of Rockwell ( A DOE Facility)**

Further:

Item 4.

One Document dated July 25, 1985 From Rockwell International to LABC instructing LABC to install A Zeiss UPMC 850/1200 Measuring System, and Rockwell assuming the Lease on such System as it becomes **Government – Furnished Property**

Item 5

A document dated June 1, 1988 forwarding a Zeiss CMM Measuring Machine to Speed Ring in Cullman, Alabama.

Items 4 & 5, These two Letters make it very clear as well That Rocky Flats Instructs LABC To Lease a Zeiss Measuring Machine With Rocky Flats Assuming the Lease Responsibility of $434,937 for Purchase of Machine and Installation of special Flooring to support said machine Therefore rendering the Floor as part of the Building as the system becomes **Government- furnished Property Of Approximately  100 Sq Ft**

**"These documents show that Loral meets the definition of DOE facility because they show that Loral was doing work on behalf of DOE (as subcontractor to Loral) (see Section 7384l(12)(A)) and that DOE, through Rockwell (the operator of Rocky Flats, a DOE facility) had a proprietary interest in the Loral facility, as required by Section 7384l(12)(B)i)."**

Respectfully

Raymond W Stephens

Also Find Attached a Federal Court Document;

This opinion supports our position.  It says LM (which merged with Loral, assumed Loral's liabilities and is Loral's successor in interest) asserted that it was/is a government contractor.

United States District Court,M.D. Florida.
Laura A. WARD, et al., Plaintiffs,
v.
LOCKHEED MARTIN CORPORATION, Loral Corporation, WPI Sarasota Division, Inc., Wire Pro, Inc.,
Becsd, LLC. and Does 1-20, Defendants.
**No. 805CV1878T17TGW.**

March 31, 2006.

Bruce H. Denson, Whittemore, Denson P.A., St. Petersburg, FL, for Plaintiffs.
Clifford J. Zatz, Jennifer R. Devery, Lynn E. Parseghian, Richard E. Schwartz, Crowell & Moring, LLP, Washington, DC, Leslie Norman Vaughan-Birch, Kirk Pinkerton, P.A., Sarasota, FL, for Defendants.

## ORDER

KOVACHEVICH, J.
**\*1** This cause is before the Court on Plaintiffs,' Laura A. Ward, *et al.*, (Plaintiffs) Motion for Remand (Dkt.12) including Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Remand (Dkt.13), both filed on November 3, 2005. Also before this Court is Defendant Lockheed Martin Corporation's Opposition to Plaintiffs' Motion For Remand (Dkt.22-1), filed on December 2, 2005.

## PROCEDURAL BACKGROUND

Plaintiffs in this case either own or occupy homes in Manatee County, Florida and on September 1, 2005, filed a multi-count complaint in the Manatee County Circuit Court against Lockheed Martin Corporation, Loral Corporation, WPI Sarasota Division, Inc., Wire Pro, Inc., BECSD, LLC, and Does 1-20, (Defendants). Plaintiffs allege that their property has been contaminated with hazardous chemicals and substances, including but not limited to beryllium dust, trichloroethylene, 1,4 dioxin and perchlorethylene. (Complaint). Plaintiffs specifically contend that Defendants are legally responsible for the contamination and, furthermore, that Defendants knew of this contamination for years and intentionally failed to disclose this information to the Plaintiffs. (Complaint, ¶ 260).

Defendant Lockheed Martin Corporation is a Maryland corporation with its principal place of business in Maryland; it is authorized to do business in Florida and has assumed the liabilities of Loral Corporation. Defendant BESCD, LLC is a Florida limited liability company whose sole entity is a New Jersey limited partnership. Defendant Wire Pro, Inc. is a Pennsylvania corporation with its principal place of business in New Jersey. Defendant WPI Sarasota Division, Inc. is a Florida corporation with its principal place of business in Florida. Each Defendant named in the suit is either a past or present owner or operator of the site in Manatee County, Florida from which the Plaintiffs allege that the hazardous materials originated.

Plaintiffs filed this lawsuit in Manatee County Circuit Court on the basis that Plaintiffs are Florida citizens and Defendant WPI Sarasota is a Florida Corporation with its principal place of business in Florida. (Dkt.13). On or about October 6, 2005, Defendant Lockheed Martin filed a Notice of Removal of Plaintiffs' action alleging the fraudulent joinder of Defendant WPI Sarasota, the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332, and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).

## STANDARD OF REVIEW

**\*2** A district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1331; 28 U.S.C. § 1441(a). If a plaintiff objects to a defendant's removal, the burden of proof is on the defendant, as the removing party, to prove by a preponderance of the evidence that the action was properly removed. *Forest v. Penn Treaty American Corp.*, 270 F.Supp.2d 1357, 1360 (M.D.Fla.2003). A federal district court must remand to the state court any case that was removed without the necessary jurisdiction. *Cacciatore v. Liberty Life Assurance Co. Of Boston*, 85 F.Supp.2d 1282, 1283 (M.D.Fla.2000). Due to the fact that removal jurisdiction raises significant federal concerns, federal courts "are directed to construe

removal statutes strictly and doubts about jurisdiction should be resolved in favor of remand to a state court." *Forest,* 270 F.Supp.2d at 1360-61.

## DISCUSSION

### Removal Pursuant to *28 U.S.C. § 1332*

Plaintiffs allege that that Defendant WPI Sarasota Division, Inc. has not been fraudulent joined and thus, removal pursuant to *28 U.S.C. § 1332* is improper and diversity jurisdiction does not exist. In order to have diversity jurisdiction, complete diversity is required; in other words, every plaintiff must be diverse from every defendant. *28 U.S.C.A. § 1332.* The doctrine of fraudulent joinder provides an exception to the requirement of complete diversity because an action may be removable if the joinder of the non-diverse party is fraudulent. *28 U.S.C. § 1441(a).* In determining whether to sustain a fraudulent joinder allegation, "a state court must find that there was no possibility that the plaintiff could prove a cause of action against the resident defendant or that the plaintiff fraudulently pled jurisdictional facts in order to subject that resident defendant to the jurisdiction of the state court." *Insinga v. LaBelle,* 845 F.2d 249, 254 (11th Cir.1988)(citing *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983)). In *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284 (11th Cir.1998), the court clarified its position and stated that a plaintiff need not have a "winning case against the allegedly fraudulent defendant" in order to defeat diversity jurisdiction, the plaintiff only needs "a possibility of stating a valid cause of action." Thus, case law supports the notion that so long as Plaintiffs have stated a valid cause of action against Defendant WPI Sarasota, the doctrine of fraudulent joinder does not apply and removal pursuant to *28 U.S.C. § 1332* is improper.

Defendant WPI Sarasota is the present operator of the site. While no evidence has been submitted that Defendant WPI Sarasota used any of the alleged hazardous chemicals at its facility since it began its operations in 2000 (Dkt.22-2), evidence has been submitted that the hazardous materials present on the site in 2000 continue to migrate offsite into the residential communities. (Dkt.14). Moreover, pursuant to Fla. Stat § 376.313(3) and its interpretation in *Aramark Uniform and Career Apparel, Inc. v. Easton,* 894 So.2d 20, 24 (Fla.2004), a strict liability cause of action exists for the "non-negligent discharge of pollution without proof that the defendant caused it." Plaintiffs have alleged that Defendant WPI Sarasota operated the site during the time in which the hazardous chemicals emanated from the site onto the residential communities. (Dkt.13, p. 6). After reviewing the evidence, specifically the Affidavits and Declarations submitted on behalf of the Plaintiffs, this Court finds that the Plaintiffs have stated a claim for relief against Defendant WPI Sarasota and Defendant has not proved the contrary. Thus, this Court finds that removal is not warranted under 28. U.S.C. § 1332 because Defendant WPI Sarasota has not been fraudulently joined as Plaintiffs have alleged facts that support a basis for recovery.

### Removal Pursuant to *28 U.S.C. § 1442(a)(1)*

**\*3** Defendant Lockheed Martin also maintains that removal is proper pursuant to Federal Officer Removal, 28 U.S.C. § 1442(a)(1) (Dkt.22-1, p. 15), which provides that a civil action commenced in State court against "any officer (or any person acting under that officer) of the United States, ... for any act under color of such office or on account of any right, title, or authority, claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue" may be removed to a district court of the United States. If a federal officer is involved in the cause of action, removal is only proper pursuant to 28 U.S.C. § 1442(a)(1) when: (1) the defendant was a "person" within the meaning of the statute, (2) defendant was acting at the direction of a federal officer and a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims, and (3) the defendant has asserted a colorable federal defense. See *Mesa v. California,* 489 U.S. 121, 124-25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Plaintiffs concede that Defendant Lockheed Martin satisfies the "person" requirement and, thus, the only issues before this Court are whether Defendant Lockheed Martin acted under federal government direction and whether there is a causal nexus between that federal direction and the Complaint (prong 2), and

whether the Defendant Lockheed Martin has asserted a colorable defense (prong 3).

This Court first addresses whether Defendant Lockheed Martin raised a colorable federal defense under federal law. In analyzing this, the question before the Court is not whether a claimed defense is meritorious, but only whether a colorable claim to such a defense has been made. *Fung v. Abex Corp.*, 816 F.Supp. 569, 573 (N.D.Cal.1992). Defendant Lockheed Martin asserts the government contractor and derivative sovereign immunity defenses. (Dkt.22-1, p. 22). The Supreme Court in *Boyle v. United States Technology Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), announced a three part test for determining when state law tort is displaced by federal common law in a suit against a government military contractor: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The Third Circuit in *Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir.1993), extended the *Boyle* holding to nonmilitary contractors explaining that "a private contractor who is compelled by a contract to perform an obligation for the United States should, in some circumstances, share the sovereign immunity of the United States." *Carley*, 991 F.2d at 1120.

Based on the evidence submitted by the parties, this Court finds that the United States provided reasonably precise specifications to Defendant Lockheed Martin and the equipment used by the Defendant conformed to those specifications. (Dkt.23-1, 24-1). As to whether the government was provided with specific warnings concerning the risks of beryllium dust, trichloroethylene, 1,4 dioxin and perchlorethylene, it is not entirely clear that this defense would apply here. The declarations submitted on behalf of Defendant Lockheed indicate that the U.S. Government inspected the facilities for cleanliness and safety, but do not expressly state that it specifically informed the government of the full extent of the risks. (Dkt.23-1, 24-1). Such an analysis, however, would be relevant to the "merits" of the defense and not to the question of whether the defense is "colorable." Thus, without further analysis, this Court finds that Defendant Lockheed Martin asserted a colorable defense and, therefore, satisfies that prong of the federal officer removal test.



In response to Defendant Lockheed's argument, Plaintiffs' emphasize a distinction between governmental control over manufacture and production versus incidental waste disposal. Plaintiffs essentially contend that without governmental control over the latter, which is the basis of Plaintiffs' claims, federal officer removal does not exist. Case law supports Plaintiffs' position. In *Bahrs v. Hughes Aircraft Company*, 795 F.Supp. 965, 970 (D.Ariz.1992), the court distinguished between the government's control over production versus the government's control over waste method disposal. In *Bahrs*, the Plaintiffs were members of a class that sustained injuries as a result of the dumping of toxic substances, including TCE, into the ground, which polluted plaintiffs' water supply, and one of the defendants, General Dynamics, was an aerospace company under contract to United States War Department. *Id.* at 968-69. The facts in *Bahr* are similar to the instant case; the Plaintiffs in *Bahrs* objected to General Dynamics' removal petition on the ground that it did not meet the requirements of the federal officer removal statue just as the Plaintiffs in the instant case allege that Defendant Lockheed Martin did not meet the federal officer removal requirements. In *Barhs* the dispositive issue was whether General Dynamics demonstrated that it was "acting under" an officer of the

United States. *Id.* at 969. The court ruled that removal was not appropriate because General Dynamics did not demonstrate the government's necessary control over the method of waste disposal. *Id.* The Court specifically found that General Dynamics did not establish that the government exercised direct and detailed control over the alleged disposal of pollutants into plaintiff's water supply. *Id.* at 970.

**\*5** An examination of the case law submitted by each party reveals much about the merits of Defendant's assertions. Not one of Defendant's cited cases holding that the government exercised the requisite amount of control to trigger federal officer removal involve an instance of disposal of toxic substances ordered produced by the government. In contrast, cases relied on by the Plaintiffs finding federal officer removal inappropriate illustrate the distinction between governmental control over manufacture and production versus governmental control over disposal. *See Bahrs, 795 F.Supp. 965 at 970; Arness v. Boeing North American, Inc., 997 F.Supp. 1268, 1274-75 (C.D.Cal.1998).* Accordingly, as Defendant Lockheed Martin has not offered any evidence supporting its claim that the federal government exercised control over the disposal of hazardous substances, this Court holds that Defendant Lockheed Martin has not met its burden of demonstrating the causal nexus to invoke the protections of the federal officer removal statute.

## CONCLUSION

For the reasons stated above, this Court has no subject-matter jurisdiction over this case. First, Plaintiffs have not fraudulently joined Defendant WPI Sarasota. Stated simply, there is a possibility that a state court could find that the complaint states a cause of action against resident Defendant WPI Sarasota. Next, Defendant Lockheed Martin has not established the requisite causal connection to invoke the protections of the federal officer removal statutes. Specifically, Defendant Lockheed Martin did not submit any evidence supporting its claim that the government exercised control over the disposal of beryllium dust, trichloroethylene, 1,4 dioxin and perchlorethylene. Thus, because Defendant Sarasota WPI was not fraudulently joined and because Defendant Lockheed Martin does not qualify for federal officer removal, there is not complete diversity between the parties, and the United States federal courts do not have subject matter jurisdiction over this case. Accordingly, it is

ORDERED that Plaintiffs' motion to remand is GRANTED and the Clerk of the Court is DIRECTED to remand this case to the Circuit Court of the Twelfth Judicial Circuit in Manatee County, Florida. The Clerk of Court should close this case and terminate all pending motions.

DONE and ORDERED.

M.D.Fla.,2006.
Ward v. Lockheed Martin Corp.
Slip Copy, 2006 WL 889729 (M.D.Fla.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3614707 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Remand (Nov. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 3138937 (Trial Pleading) Amended Complaint Pursuant to Order of the Court Dated October 11, 2005 (Nov. 1, 2005) Original Image of this Document (PDF)
• 8:05cv01878 (Docket) (Oct. 11, 2005)

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH

**EMPLOYEE:** Raymond W. Stephens

**CLAIMANT:** Raymond W. Stephens

**FILE NUMBER:** 278306717

**DOCKET NUMBER:** 10035076-2006

**DECISION DATE:** November 9, 2006

## FINAL DECISION FOLLOWING
## A REVIEW OF THE WRITTEN RECORD

This is a decision of the Final Adjudication Branch concerning your claim for compensation under the Energy Employees Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C. § 7384 *et seq.* (EEOICPA or the Act). For the reasons set forth below, your claim is denied.

## STATEMENT OF THE CASE

On August 3, 2004, you filed a form EE-1, Claim for Benefits under the EEOICPA. A previous Final Decision was issued by the Department of Labor under Part B of the Act on July 20, 2005, concluding that you were entitled to compensation for chronic beryllium disease. The evidence of record shows that you worked for American Beryllium Company (ABC)[1] from 1967 to 1992.

On March 22, 2006, the Jacksonville district office issued a recommended decision under Part E of the Act, concluding that you are not entitled to benefits since you are not a Department of Energy (DOE) contractor employee. Attached to the recommended decision was a notice of claimant rights, which stated that you had 60 days in which to file an objection to the recommended decision and/or request a hearing. On May 23, 2006, the Final Adjudication Branch received your letter of objection.

## OBJECTIONS

You are basically objecting the recommended decision of March 22, 2006, because you disagree with the ABC classification as a beryllium vendor. You think it should be considered a DOE facility or a DOE subcontractor so you can apply for benefits under Part E of the Act. You

---

[1] The Department of Energy Office of Worker Advocacy website notes that American Beryllium is classified as a beryllium vendor for purposes of the Act.

indicated that since ABC manufactured parts under contract for the DOE Rocky Flats Plant, the ABC employees should be covered under Part E of the Act as contractor employees.

An opinion dated September 25, 2006, from the Branch of Policies, Regulations and Procedures, establishes because part of the definition of a DOE facility is that DOE has or had to have a proprietary interest and DOE had no proprietary interest in ABC. Proprietary interest refers to buildings, structures or premises. Interest in equipment is not sufficient to be considered a proprietary interest. Therefore that ABC can not be considered a DOE facility. 20 C.F.R. § 30.5 (x)(1) (2005).

The Act is clear indicating that subcontractor employment for a DOE facility can only be establish if such employment took place on the premises of a designated DOE facility. See 42 U.S.C. § 7384l(11), 20 C.F.R. § 30.5(w) (2005) and EEOICPA Bulletin 03-27 (issued May 28, 2003). Since your employment took place at the ABC facility in Sarasota, Florida, and not at the DOE Rocky Flats Plant or any other designated DOE facility, ABC cannot be considered a DOE subcontractor and you cannot be considered a DOE contractor employee under Part E of the Act.

## FINDINGS OF FACT

1. You filed a claim for benefits under the Act as a former employee of ABC.

2. ABC has been designated as a beryllium vendor.

## CONCLUSIONS OF LAW

The undersigned has reviewed the record, the recommended decision issued by the district office on March 22, 2006, and the subsequently submitted objections. I find that the decision of the district office is supported by the evidence and the law, and cannot be changed.

In order to be considered eligible for benefits under Part E of the EEOICPA the employee has to be a "covered Part E employee" which means a DOE contractor employee who has been determined to have contracted a covered illness through exposure at a DOE facility. 20 C.F.R. § 30.5(p) (2005). You worked at the ABC in Sarasota, Florida. Unfortunately, ABC has been classified as a beryllium vendor and not a DOE facility. Therefore, I conclude that you are not entitled for benefits under Part E of the Act because you do not meet the definition of a covered DOE contractor employee. 42 U.S.C. § 7385s(1).

Jacksonville, FL

Douglas J. Helsing
Hearing Representative
wp

U. S. DEPARTMENT OF LABOR



EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH

March 13, 2007

Raymond W. Stevens
1660 Whitehead Drive
Sarasota, FL 34232

Dear Mr. Stevens:

Enclosed please find the denial of your request for reconsideration of the November 9, 2006 decision of the Final Adjudication Branch.

Your case file is being returned to:    U.S. Department of Labor, DEEOIC
400 W. Bay Street, Room 722
Jacksonville, FL 32202

If your claim was denied because you did not establish covered employment under the EEOICPA and you have **new evidence** of either covered employment or employment-related exposure to toxic substances, you may request a **reopening** of your claim. If your claim was denied because your cancer was not causally related to your work-related exposure to radiation and you can identify either a **change** in the probability of causation guidelines, a **change** in the dose reconstruction methods or an **addition of a class** of employees to the Special Exposure Cohort, you may also request a **reopening** of your claim. These requests to reopen your claim must be in writing and should be sent, along with your supporting information, to the following address:

U.S. Department of Labor
DEEOIC
Attn: District Director - Reopening
400 W. Bay Street, Room 722
Jacksonville, FL 32202

Sincerely,

Leslie H. Choubane
Hearing Representative

U.S. DEPARTMENT OF LABOR    EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH



| | |
|---|---|
| **EMPLOYEE:** | **Raymond W. Stephens** |
| **CLAIMANT:** | **Raymond W. Stephens** |
| **FILE NUMBER:** | **278306171** |
| **DOCKET NUMBER:** | **10035076-2006** |
| **DECISION DATE:** | **November 9, 2006** |

### NOTICE OF DENIAL OF
### REQUEST FOR RECONSIDERATION

This is the response to your November 17, 2006 request for reconsideration of the November 9,
2006 decision of the Final Adjudication Branch. With that request, you submitted the following
documents: a March 5, 1985 letter and a July 25, 1985 letter addressed to Loral American
Beryllium Corporation (LABC) from a T. L. Vigil, senior buyer with Rockwell International; a
copy of a final decision dated August 1, 2003 for docket number 34291-2003; a September 25,
2006 memorandum to Bill Franson, District Director of the Jacksonville District Office, from
John Vance, Branch Chief of the Branch of Policy, Regulation, and Procedures; a second page of
a February 11, 1985 letter from Mr. George M. Allen, Jr., with Rockwell International; several
documents from EG&G Rocky Flats terminating LABC's facility clearance or contractor status,
with a separate letter dealing with LABC's security servicing visits; and a copy of the
employment and job history affidavit of Patrick G. Daspit. Additionally, you submitted a letter
dated December 20, 2006, which included two letters from EG&G Rocky Flats that were
previously sent as well as a letter from the Department of Energy which responded to your
Freedom of Information Act request to them. You also sent several facsimile transmissions
containing duplicate evidence previously submitted. For the reasons set forth below, your
request is denied.

The November 9, 2006 final decision denied your claim for compensation under the EEOICPA
because you worked at American Beryllium Company (a.k.a. LABC), which has been classified
as a beryllium vendor and not a DOE facility. Hence, you did not meet the definition of a
covered DOE contractor employee and you were not entitled to benefits under Part E of the Act.
42 U.S.C. § 7385s(1).

In order for a reconsideration to be granted, the evidence or argument must be of sufficient
quality to establish that the potential exists to alter a Finding of Fact or Conclusion of Law
referenced in the final decision. I have reviewed the documents submitted with your November
17, 2006 request for reconsideration as well as the additional documents you subsequently
submitted, and must deny that request. In your request, you state that you could not obtain the
1,063 pages of documents mentioned in Mr. Vance's memorandum to Mr. Franson, which

deprived you of the chance to review all of the available evidence in violation of your "due process rights and the Administrative Procedure Act." You later refer to several disagreements you have with the findings stated in this memorandum, particularly with its decision that DOE had neither a proprietary interest nor had entered into a contract. You argue that "LABC need not be either a beryllium vendor or a Department of Energy facility, but could be both, as other covered facilities are considered...." You also state that the "DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal," and that the part of the definition of a DOE facility referring to contracts "provides a wider berth of interpretation." You also argue that since the installation of a Zeiss machine (the purchase of which was mentioned in the July 25, 1985 letter) included pouring a cement floor, which became part of the building where it was placed, the building is a "proprietary interest" of the DOE. Furthermore, you claim that if LABC was involved in a weapons process for the DOE and DOE "owned that process," it should qualify as a property, (e.g., an "intellectual property") and a contract should exist that explains the ownership of the process.

The DEEOIC, including the Branch of Policies, Regulations and Procedures (BPRP), has considered your new arguments and evidence and determined that there is nothing in your most recently submitted evidence or arguments that changes the findings of the September 25, 2006 memorandum. Furthermore, your arguments about LABC's designation and your disagreement with the bulletin and the definition of a DOE contractor are subjective and not supported by any evidence.

In order for an entity to be a DOE subcontractor, the work performed for DOE under that contract must have occurred on the premises of a DOE facility. For LABC to be a subcontractor to Rocky Flats, it had to be on the premises of Rocky Flats and engaged in employment activities. These activities in this case, the manufacturing of parts, did not take place on the premises of a DOE facility. LABC owned the concrete floor on which the Zeiss machine was installed, so there is no DOE proprietary interest and the DOE facility definition is not met. Therefore, LABC does not meet the definition of a DOE facility nor does it qualify as a DOE subcontractor for purposes of the EEOICPA, per Bulletin No. 03-27. As for your contention about LABC's weapons process being the intellectual property of the DOE, proprietary interest under the Act only means an interest in "buildings, structures, [and] premises, including the grounds upon which such a building, structure, or premise in located."

The documents you submitted do not contradict the conclusions reached in the final decision. Therefore, you have not provided a sufficient basis for reconsideration of the November 9, 2006 final decision. The November 9, 2006 decision of the Final Adjudication Branch is therefore final on the date of issuance of this denial of your request for reconsideration. 20 C.F.R. § 30.319(c)(2).

Jacksonville, FL

*[signature]*

Leslie H. Choubane
Hearing Representative
Final Adjudication Branch

CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2007, a copy of the Notice of Denial of Request for Reconsideration was sent by regular mail to the following:

Raymond W. Stevens
1660 Whitehead Drive
Sarasota, FL 34232

Leslie H. Choubane
Hearing Representative



# U. S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH

March 13, 2007

Raymond W. Stephens
1660 Whitehead Drive
Sarasota, FL 34232

Dear Mr. Stevens:

Per your request, I have enclosed copies of all documents generated by the Final
Adjudication Branch and our national office since you filed your reconsideration request.

Sincerely,

Tim Cain
Senior Claims Examiner

**U.S. Department of Labor**



Employment Standards Administration
Office of Workers' Compensation Programs
Division c     ergy Employees Occupational
Illness Cc .npensation
Washington, D.C. 20210

MEMORANDUM

Date:        MAR - 1 2007

To:          Mark Stewart
             Manager, Final Adjudication Branch (FAB)
             Jacksonville

From:        John Vance
             Unit Chief
             Branch of Policies, Regulations and Procedures

Re:          Concerns of Mr. Raymond W. Stephens re: Loral American
             Beryllium Corporation (LABC)

On January 26, 2007, the Division of Energy Employees Occupational Illness
Compensation (DEEOIC) received information from by Mr. Raymond W. Stephens as
part of his request for reconsideration of his November 9, 2006 final decision which
denied his claim for Part E benefits on the grounds that his employer, Loral American
Beryllium Corporation (LABC), was neither a DOE facility nor a subcontractor
performing a service on the premises of a DOE facility. The Branch of Polices,
Regulations and Procedures (BPRP) issued a memo on this same subject dated September
25, 2006 in which it was determined that LABC did not meet the definition of a DOE
facility for purposes of the EEEOICPA and further that LABC did not qualify as a
subcontractor performing a service on the premises of a DOE facility. Mr. Stephens now
raises additional objections to this earlier memo, which will be addressed here.

These objections will be stated and addressed in the order in which they are presented by
Mr. Stephens in his various correspondences with DEEOIC.

### New Submission: Letter Received October 19, 2006

**Concern**: Mr. Stephens expresses his frustration at not receiving the 1063 pages of
material upon which the earlier memo was based. In a subsequent letter he expressed his
additional belief that because these pages were not in his file that they were not
considered as part of the earlier memo.

**Response**: BPRP apologizes for the confusion surrounding the 1063 pages of
documentation. DOL did not initially provide these documents to Mr. Stephens because

1

the Department of Labor was not the "agency of origin," and we were concerned that it was not appropriate for us to release them - that only the Department of Energy could release them. We have revisited this earlier stance and have now provided these documents to Mr. Stephens. Additionally, all 1063 pages were reviewed as part of the drafting the September 25, 2006 memo.

**Complaint:** Mr. Stephens complains that the DEEEOIC did not try to find additional contracts to help him prove his case.

**Response:** Although the DEEEOICP gathers extensive amounts of information as a means of assisting claimants, ultimately the burden of proof is on the claimants. The EEOICPA implementing regulations are clear as to the burden of proof placed on every claimant under the Act. Submitting evidence in support of a claim is ultimately the claimant's responsibility, as explained in § 30.111 of the implementing regulations. This section states that "the claimant bears the burden of proving by a preponderance of the evidence the existence of each and every criterion necessary to establish eligibility under any compensable claim category...the claimant also bears the burden of providing to the OWCP all written medical documentation, contemporaneous records, or other records and documents necessary to establish any and all criteria for benefits set forth in these regulations." In the case of Mr. Stephens, available evidence was gathered and reviewed by the DEEOIC and found insufficient to substantiate his arguments.

**Objection:** Mr. Stephens states that DOL should consider the concrete flooring which was a necessary pre-requisite for installation of the Zeiss Machine. He argues that because of this specialized concrete flooring that LABC meets the proprietary interest of the DOE definition and should therefore be found to be a DOE facility.

**Response:** ~~DEEOIC is aware~~ that concrete flooring was installed to specifications needed as a prerequisite for installation of the Zeiss Machine. The Zeiss Machine and the unique nature of its requirements were considered as part of the September 25, 2006 memo. We disagree with Mr. Stephens' conclusion. It is our understanding that LABC owned the concrete floor and therefore there is no DOE proprietary interest and the DOE facility definition is not met.

*[handwritten annotation:] Not True / Floor was paid for from fund from purchase + installation of Zeiss*

**Objection:** Mr. Stephens states that the DOL should not consider the determination of whether a facility can be a DOE facility to be mutually exclusive of the same facility being a beryllium vendor.

**Response:** There is no prohibition on a facility being both a DOE facility and a beryllium vendor for purposes of the EEOICPA. DEEEOIC acknowledges that the wording of the first sentence of the section entitled, "Objections," in the Final Decision dated November 9, 2006 on this same point is poor. We recognize that Mr. Stephens seeks to have LABC to be categorized at both a beryllium vendor and as a DOE facility or as a subcontractor to a DOE facility. He is correct that such a dual categorization is permitted by the Act. There are a number of facilities so designated.

Additionally, the purpose of the word "alternatively" in the paragraph Mr. Stephens references from the September 25, 2006 memo on this same point was to explore alternative arguments. The two arguments explored in that memo were 1) whether the LABC facility met the definition of a DOE facility and 2) whether the LABC facility met the definition of a DOE subcontractor, as specified in DEEOIC Bulletin No. 03-27. We concluded in the September 25, 2006 memo that LABC did not meet either of these definitions. Nevertheless, if a determination had been made that LABC met the definition of a DOE facility, such a determination would have had no impact on its status as a designated beryllium vendor. The two analyses are separate and distinct and meeting one definition is not a bar to meeting the other.

**Comments:** Mr. Stephens cites a number of DEEOIC regulations pertaining to the definition of contracts and contractor employees and states, "There may also be instances of a DOE facility being considered as subcontractor without being on the same premises as a contractor."

**Response:** With regard to the determination of whether LABC is a subcontractor within the meaning of EEOIPA, DEEOIC realizes that much of the documentation from Rocky Flats refers to LABC as a subcontractor. While this is interesting, it is not probative in terms of whether it is a subcontractor for purposes of the EEOICPA program. By definition, in order for an entity to be a DOE subcontractor for purposes of administration of the EEOICPA, the work performed for DOE under that contract must have occurred on the premises of a DOE facility. The applicable portion of Bulletin No. 03-27 is:

> 7. There are three developmental components that must be met before a decision of covered [subcontractor] employment can be reached. The CE [claims examiner] must determine whether 1) the claimed period of employment occurred during a covered time frame as alleged, 2) a contract to provide "covered services" existed between the claimed subcontractor and the DOE employer or BE vendor [if proving that claimant is a subcontractor to a covered beryllium vendor] at a covered facility (during a covered time frame), and **3) whether employment activities (work or labor) took place on the premises of the covered facility.** (emphasis added)

Mr. Stephens is not seeking to prove he was a subcontractor at a beryllium vendor, rather he is trying to prove that LABC is a subcontractor to Rocky Flats, within the meaning of EEOICPA. What Bulletin No. 03-27 means is that for anyone to be found to be a subcontractor to Rocky Flats, they had to be on the premises of Rocky Flats. The Act also covers on-site subcontractors of beryllium vendors, but those subcontractors are only entitled to the same benefits as the employees of the beryllium vendors themselves, namely Part B. Since Mr. Stephens has already been paid his Part B benefits, coverage as a subcontractor of a beryllium vendor would not help his claim.

**Objection:** Mr. Stephens quotes extensively from of an earlier DEEOIC decision, Docket Number 34291-2003, which explores the meaning of Bulletin No. 03-27,

"Establishing Covered Subcontractor Employment." This decision has also been added to the case file for completeness sake.

**Response:** The DOL agrees that Bulletin No. 03-27 is controlling on the question of whether LABC can be considered a "DOE subcontractor" for purposes of the EEOICPA. The case represented by Docket Number 34291-2003, however, explores the issue of whether a valid contract existed between the claimant's employer and the DOE, as per Bulletin No. 03-27 (available in full on the DEEOIC website). In that case there was no dispute of the fact that the claimant was on the premises of a DOE facility (Paducah, in that instance). This is distinguishable in that with regard to Mr. Stephens' case in that with regard to LABC there is no doubt that a contractual relationship existed between DOE and LABC. The reason LABC was not found to be a DOE subcontractor is because the employment activities (ie. the manufacture of parts) did not take place on the premises of a DOE facility.

**New submission:** Mr. Stephens provides a signed statement from Mr. Patrick G. Daspit which states, "In order to install the Zeiss CMM, LABC had to put in an isolated concrete pad for vibration, as well as environmental equipment to control humidity and temperature." The statement also mentions the aqueous cleaning method and quality assurance process required as part of the LABC contract with DOE.

**Response:** Although the statement from Mr. Daspit was not previously in the file, the information provided therein was nothing substantially different from what was already known about the Zeiss Machine, the aqueous cleaning method or the quality assurance process. The aqueous cleaning method was addressed in the previous memo on pages two and three. The quality assurance method was also familiar to the DOL and is not relevant to whether the DOE had a proprietary interest at LABC.

### New Submission: Letter Dated November 17, 2006

**Argument:** Mr. Stephens argues that proprietary interest includes intellectual property and/or ownership of process and he suggests that if DOE had such an intellectual property interest in some aspect of the process that this would mean that the DOE had a proprietary interest in LABC and LABC should be found to be a DOE facility for purposes of the EEOICPA.

**Response:** DOL's conclusion is that under the Act, proprietary interest means an interest in "buildings, structures, premises, including the grounds upon which such building, structure, or premise is located." This has not been shown in the instant case.

**Comments:** Mr. Stephens states, "DOL is supposed to have cleared people that can do that [review classified contracts]. Karoline Anders should hold a clearance and could request that from DOE"

**Response:** Karoline Anders does hold a DOE clearance. None of the material associated with the 1063 pages or anything else in this file, however, is classified. Although the parts manufactured by LABC, and specifically the shapes thereof, were (and still are) classified, the shape of a manufactured part is not relevant to a determination of whether the DOE had a proprietary interest in LABC or whether LABC held one of the specific types of contracts listed in the law.

**Comments:** Mr. Stephens states, "John M. Anders who Works for DOE and who originally made the designation of 'VENDOR' To American Beryllium is the Husband of Karoline Anders and ex Employee OF DOE now employed by DOL in John Vance's Office, Investigator of this case and the Author of the Memo, Signed off by John Vance. Now this to me raises all kinds of Red Flags as "CONFLICT OF INTERST." She has to have a prior knowledge of the case on her own or thru her husband."

**Response:** Decisions and memos receive considerable review through DOL's solicitor's office, the BPRP and various levels of management, all of which have a say in how decisions should be made and what those decisions should be. The September 25, 2006 memo regarding LABC was fully vetted through this process to ensure sound decision-making occurred.

**New submission:** Mr. Stephens provides a copy of the DOE response to his FOIA request.

**Response:** This material is all duplicative of that which is already contained in the 1063 pages and was fully considered in writing the September 25, 2006 memo on this topic.

**New submission:** Letter from Mr. Stephens dated January 11, 2007 in which he complains about the DOE response to his FOIA, including concerns about the possible destruction of contract records.

**Response:** The DOL is not in a position to offer an opinion on the efficacy of the DOE FOIA process.

## Conclusion

While the DEEOIC regrets not sending the CD containing the documentation earlier, there is essentially nothing in Mr. Stephens' most recent submissions or arguments that changes any aspect of the September 25, 2006 memorandum. LABC does not meet the definition for a DOE facility nor does it qualify as a DOE subcontractor for purposes of the EEOICPA, per Bulletin No. 03-27.

## Anders, Karoline - ESA

**From:**   Anders, Karoline - ESA
**Sent:**   Tuesday, February 27, 2007 2:46 PM
**To:**   'RStephe726@aol.com'
**Cc:**   Vance, John - ESA; Cain, Timothy - ESA
**Subject:** Loral American Beryllium Corp. (LABC)

Dear Mr. Stephens,

You will be pleased to know that just yesterday I burned a CD with all 1063 pages that were used in writing the memo pertaining to Loral American Beryllium Corp. I also drafted a cover letter to you which will accompany that material. The letter is now working through the concurrence chain here in National Office and once it is signed, I will get that in the mail to you on the same day it is signed.

Karoline M. Anders
Division of Energy Employees Occupational Illness Compensation
Employment Standards Administration
Department of Labor
202-693-0681

> -----Original Message-----
> **From:** RStephe726@aol.com [mailto:RStephe726@aol.com]
> **Sent:** Tuesday, February 27, 2007 2:32 PM
> **To:** Anders, Karoline - ESA
> **Subject:** (no subject)

> February 27,2007

> Dear Ms Anders

> I would like to request the following documents pursuant to the reconsideration of my case (278306717) with the understanding that the word "document" encompasses a broad definition (hard copy records, computer records, memos, notes, reports, electronic messages (emails), meeting minutes or transcripts and the like).

> All Documents Generated from The Date of Reconsideration of the case  Forward to it's Final Conclusion. Although I have a copy of my file up to but not including the Reconsideration in Progress I want copies of all Documents and Evidence Generated  by DOL, DOE as well as from any other agency that is being used to Determine the outcome of my case.
> We did speak of this by phone Earlier but I felt I should put it in writing to further insure that my request receives Compliance

> Thank You

> Raymond W. Stephens
> 1660 Whitehead Dr.
> Sarasota, Florida
> 34232

> Ph -941-953-9628
> Fax 941-953-9628

> email  Rstephe726@aol.com

02/28/2007

cc Timothy Cain  Claims Examiner

**Raymond**

---

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

**MEMORANDUM**

RECEIVED OWCP

DATE:    JANUARY 23, 2007

TO:    JOHN VANCE, BRANCH CHIEF
BRANCH OF POLICY, REGULATION, AND PROCEDURES

2007 JAN 24  A 10: 53

FROM:    TIM CAIN, FAJ SENIOR CLAIMS EXAMINER

SUBJECT:    PROPRIETARY INTEREST ISSUE
RE: CASE #278306717, RAYMOND STEPHENS

Mr. Vance:

You wrote a previous memorandum on this case dated September 25, 2006 to Bill
Franson, District Director of the Jacksonville district office. You explained in your
memorandum that just because the company for which the employee/claimant worked,
Loral American Beryllium Company (LABC), installed DOE-owned equipment in their
building in Tallevast, Florida, does not mean that DOE's purchase of the equipment
installed at LABC rises to the level of proprietary interest and therefore, the claimant is
not a covered employee under Part E of the Act (he received an award under Part B for
chronic beryllium disease as a beryllium vendor employee). The Final Decision issued
on November 9, 2006 addresses your memorandum and denied the employee's claim
under Part E of the Act.

The claimant now argues as part of his reconsideration request that DOE through the
facility at Rocky Flats required LABC to install the machinery at the Tallevast plant in
order to inspect the very specific machined beryllium parts needed at Rocky Flats. The
machine was originally at Speedring in Cullman, Alabama. Rockwell, the contractor at
Rocky Flats, assumed payment of the lease of the equipment (a Zeiss CMM) but LABC
was required to build special flooring and other modifications to meet the requirements of
the machinery. When LABC finished machining all the pieces of beryllium
DOE/Rockwell requested, the machine was moved back to Speedring. So although
Rockwell (and by inference DOE) maintained proprietary interest in the equipment, he is
arguing that requiring LABC to build to meet the equipment needs makes the LABC
building proprietary interest of Rockwell/DOE. Secondly, LABC was required by
Rockwell to modify much of their existing building(s) to install a cleaning system for the
beryllium parts. He argues this takes them out of "vendor" status into "subcontractor
status" and makes the buildings a *de facto* DOE facility, possibly through the
"construction" contract portion of 20 C.F.R. §30.5(x)(1)(ii)(B) (2006).

The employee submitted a FOIA to DOE and got some new documents and submitted
them with the reconsideration request, alleging that they show the company he worked
for (LABC) was a subcontractor with DOE at Rocky Flats from 1988 to 1991. Prior to
issuance of the most recent FAB decision, the claimant alleges that LABC was required
to construct a special concrete floor to hold the special equipment and that action brings it
into proprietary interest because that makes it part of the "building, structure or premise"
as the law requires.

A second sticking point with the claimant is that you mentioned 1063 imaged pages of documents from DOE on a CD but the CD is not in the case file and no one has ever given him a copy of all of the pages.

Please provide guidance on these issues.  Thank you.

U.S. Department of Labor

## MEMORANDUM

Date:        SEP 2 5 2006

To:          Bill Franson
             District Director
             Jacksonville District Office

From:        John Vance
             Branch Chief
             Branch of Policy, Regulation and Procedures

Re:          American Beryllium Company

On May 31, 2006, the Division of Energy Employees Occupational Illness Compensation (DEEOIC) received a request to consider whether the American Beryllium Company, (ABC) in Sarasota, FL should be listed as a Department of Energy (DOE) facility or alternatively, whether it should be considered an EEOICPA-covered subcontractor to the DOE Rocky Flats Plant. ABC is currently a designated beryllium vendor under the Act for 1967-1992. This request was forwarded to the Branch of Policies, Regulations, and Procedures (BPRP) for evaluation.

On June 5, 2006, the Jacksonville Final Adjudication Branch received a letter from the claimant, Mr. Raymond Stephens, in which he stated that the Department of Energy (DOE) located "thousands of pages of documents revealing that Loral American Beryllium did far more work on DOE projects than originally believed." Mr. Stephens requested that these additional records be examined in making the determination whether the ABC meets the definition of a DOE facility. The DOE has provided a copy of these additional documents to the BPRP on a CD. There are 1063 imaged pages on the CD, though not all are pertinent to ABC (some documents pertain to other corporate entities).

ABC was purchased by Loral Corporation and became Loral American Beryllium, and the names are used interchangeably in this memorandum. In addition, some documents reviewed contain a Sarasota, Florida address

for the plant while others have a Tallevast address. Regardless of how it is characterized, the documentation all pertains to the same plant.

On August 22, 2006, Mr. Stephens submitted additional documents to the BPRP. These documents are summarized as follows:

Documents #1 and #2 are correspondence between Loral American Beryllium and Rockwell International (Rockwell), the contractor for the DOE's Rocky Flats Plant. These letters discuss the purchase of an "Aqueous Cleaning System" by Loral, and the company's recovery of its costs in that acquisition by means of a surcharge on parts sold to Rockwell.

Document #3 is a requisition whereby some equipment was transported to Speedring (another EEOICPA-designated beryllium vendor) in Culman, Alabama from Loral American Beryllium.

Document #4 is an internal Rocky Flats letter dated November 12, 1981 in which procedures for procuring beryllium parts from ABC are discussed. These procedures included having ABC make the tooling and gaging necessary for the manufacturing and inspection of parts. Mr. Stephens highlighted the sentence, "The team also agreed that certified fixturing used in lieu of inspection gaging would become the property of Rocky Flats." ABC is referred to throughout the letter as the "vendor."

Document #5 is a portion of a Rocky Flats letter dated May 9, 1991, discussing security clearance termination procedures for ABC, referred to as an "off-site classified subcontractor" when Rocky Flats stopped procuring parts from ABC.

Document #6 is a Rocky Flats letter dated June 11, 1991, containing the statement, "Effective this date, EG&G Safeguards and Security records will reflect that Loral ABC is no longer considered an active, classified (off-site) subcontractor."

Document #7 is a letter dated July 25, 1985 in which Rockwell authorized Loral American Beryllium to purchase on Rockwell's behalf a "Zeiss UPMC 850/1200 Measuring System." The letter provided that Rockwell would advance $434.937to pay for the equipment, with ownership vesting in the government.

Documents #8 & #9 provide more information about the Zeiss machine, including indications that Rockwell inspected it and calibrated it.

Document #10 is a December 5, 1985 letter in which Rockwell authorized payment of Loral American Beryllium's costs in shipping classified materials, for its contracts with Rockwell, from the Pinellas facility (a DOE facility in Clearwater, Fl).

In making a determination on this matter, the BPRP has carefully reviewed all the material in the file as well as all the additional documentation from Mr. Stephens and the DOE.

In considering the question of whether the reviewed evidence supports a finding that the American Beryllium Company is a DOE facility under the Act, the applicable law and regulations are:

20 C.F.R. § 30.5 (x)(1)(2005) contains the current regulatory definition of "Department of Energy facility" and states:

> Department of Energy facility means, as determined by the Director of OWCP, any building, structure, or premise, including the grounds upon which such building, structure, or premise is located:
> > (i) In which operations are, or have been, conducted by, or on behalf of, the DOE (except for buildings, structures, premises, grounds, or operations covered by E.O. 12344, dated February 1, 1982 [42 U.S.C. 7158 note], pertaining to the Naval Nuclear Propulsion Program); and
> > (ii) With regard to which the DOE has or had:
> > > (A) A proprietary interest; or
> > > (B) Entered into a contract with an entity to provide management and operation, management and integration, environmental remediation services, construction, or maintenance services.

Assuming that the machining of parts by ABC does constitute "operations" and thus fulfills (i) of the definitional test, one is left to find that DOE had either:

> > (A) a proprietary interest; **or**
> > (B) Entered into a contract with an entity to provide management and operation, management and integration, environmental remediation services, construction, or maintenance services.

In terms of proprietary interest, the documentation reviewed suggests that the following items were either owned or potentially owned by DOE:

- Zeiss machine[1] (DOE owned);
- "certified fixturing used in lieu of inspection gaging;"and
- potentially the "Aqueous Cleaning System."

None of these items alone or in combination with one another is sufficient to be considered the proprietary interest of DOE. Proprietary interest needs to be buildings, structures, or premises. Equipment, no matter how large, special-purpose, unique or expensive, is still just equipment; it is not sufficient to be considered a proprietary interest under (A) of the definition of a DOE facility.

With regard to determining whether prong (B) of the test is met, our office reviewed each of the documents in the file to see if any were a management and operation, management and integration, environmental remediation, construction or maintenance contract. These are the types contracts that are common at the large DOE facilities and which are specified in the law. The file contains none of the specified contracts and no evidence that such a contract ever existed between ABC and the DOE or its predecessor agencies. The files are overwhelmingly comprised of purchase orders for parts as well as letters and memoranda regarding arrangements, specifications, vendor audits, quality assurance and delivery of those parts.

In addition to purchase orders, pp. 766-768 of the material provided by the DOE is a Rockwell memorandum dated June 6, 1988, discussing procurement from ABC. It refers to the procurement relationship between Loral and Rockwell in the following manner:

> Nine beryllium component types for the B83 Program have been fabricated by Loral ABC in Tallevast, Florida since the early 1980's and will terminate at the completion of the current contract on June 30, 1988. The fabrication contract for FY89-FY91 deliveries have been awarded to the RADG/Speedring after analysis of a competitive bid to provide machining.

The June 8, 1988 memorandum includes an attachment with a chart on parts pricing.

---

[1] A photograph of a Zeiss machine was located on the internet and added to the file to clarify the nature of a Ziess machine.

Another document (pp. 810-813) forwarded by the DOE and dated September 30, 1987 provides additional details on the nature of the relationship between Loral ABC and the DOE. The attachment gives the delivery schedule for parts being sent from Loral ABC to the DOE. Each delivery is identified in the schedule by a separate purchase order number. This suggests that the fabrication contract was basically implemented through purchase orders. This is confirmed by a statement in an October 7, 1983 Quality Engineering Report that "Loral American Beryllium Company (LABC) of Tallevast, Florida machines and inspects products for [Rockwell] under purchase order contracts."

Irrespective of whether the contracting mechanism was a fabrication contract, purchase orders or some combination thereof, none of these procurement mechanisms meets the legal test outlined in (B).   Review of all the documentation clearly shows that the role of Loral American Beryllium in relation to the various portions of the AEC and DOE with which it did business was that of a vendor. ABC was in fact referred to as a "vendor" throughout the November 12, 1981 internal Rockwell letter. ABC therefore does not meet the statutory definition of a DOE facility.

Mr. Stephens also requests that BPRP consider whether ABC qualifies as an EEOICPA-covered subcontractor to the DOE Rocky Flats Plant. The Rocky Flats Plant is a DOE facility. Fed. R. Vol. 70, No. 109, p. 33610.  He argues that since ABC manufactured parts under contract for Rocky Flats, ABC employees should be covered under Part E as DOE contractor employees. Mr. Stephens also highlights the sentence in document #6 stating, "Effective this date, EG&G Safeguards and Security records will reflect that Loral ABC is no longer considered an active, classified (off-site) subcontractor."

Regardless of how ABC was characterized in correspondence from Rockwell, however, under the EEOICPA, subcontractor employment for a DOE facility can only be established if such employment took place *on the premises* of a designated DOE facility. See EEOICPA Bulletin No. 03-27 – paragraph 21. Therefore, because the parts ABC manufactured for Rocky Flats were made in Sarasota and not at Rocky Flats, ABC cannot be considered a subcontractor of a DOE facility for purposes of the EEOICPA.

Given these facts, Loral American Beryllium, also known as American Beryllium Company, has not met the definition of a DOE facility under the EEOICPA. The facts also do not support a finding of an EEOICPA-covered subcontractor relationship for ABC.

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Florida
34232
Ph 941-953-9628
Fax 941-953-9628
Email -
Rstephe726@aol.

Case # 278306717
DEPARTMENT OF ENERGY
FOIA Public Liason
Mr. Abel Lopez
200 West Constitution Avenue NW
Washington, DC 20210
Via Facsimile: 202-586-6026

Dear Mr. Lopez

I would like to request the following documents pursuant to the Acts under FOIA with the understanding that the word "document" encompasses a broad definition (hard copy records, computer records, memos, notes, reports, electronic messages (emails), meeting minutes or transcripts and the like).

1. All documents relating to the interpretation of the law for the probability of causation under Part E.

2. All documents relating to Part E Final Bulletins numbers 06-08 and 06-10.

Item 1.
All Documents/ Contracts Pertaining to,Two Documents Dated May 9, 1991 and June 11, 1991 from EG & G Rocky Flats **(A DOE Facility)** Terminating Loral American Beryllium Company Status of Off **Site- Subcontractor**

These Two Documents From EG&G Rocky Flats Prove That Loral American Beryllium Company was Classified as A Sub Contractor, Exactly When It was Classified I do not Have Access to at this time, But it was terminated in May , June of 1991

Further:

Item 2.
All documents/Contracts Dated February 11, 1985 from Loral American Beryllium To Rockwell International  Proposing an Expansion By Loral American Beryllium Company to Incorporate an Aqueous Cleaning System

Item 3

All documents/Contracts dated March 5, 1985 From Rockwell International Accepting the Proposal and Paying Loral American Beryllium Company for it in the cost of Aqueous Cleaning surcharge, rendering **Rockwell the Owner ( A DOE Facility)** after Paying LABC $153,176.22 for it

Items 2 & 3  Consist of a Letter to  Rockwell International  Proposing The Expansion of the Q Cleared Facility to incorporate an Aqueous Cleaning System and A letter From Rockwell Accepting The Proposal and Paying Loral American Beryllium Company the Amount of $ 153,176.22 To install it **( Approximately 500-600 Sq Ft of floor Space)** Making the system **the Property Of Rockwell ( A DOE Facility)**

Further:

Item 4.
        All Documents/Contracts dated July 25, 1985 From Rockwell International to Loral American Beryllium Company instructing LABC to install A Zeiss UPMC 850/1200 Measuring System, and Rockwell assuming the Lease on such System as it becomes **Government – Furnished Property**

Item  5
        All documents/Contracts dated June 1, 1988 returning a Zeiss CMM Measuring Machine to Speed Ring in Cullman, Alabama The original Owner.

        Items 4 & 5, These two Letters make it very clear as well That Rocky Flats Instructs Loral American Beryllium Company To Lease a Zeiss Measuring Machine With Rocky Flats Assuming the Lease Responsibility of $434,937 as the system becomes **Government- furnished Property Of Approximately  100 Sq Ft as well as a  special poured cement Foundation Measuring 10'x10' x 18" Deep to support  this Delicate measuring device, As well as Special Insulation around the whole "Q" Building to insure against infrared and other emissions for safeguard. The cost of all Is incorporated into the cost of the Parts being Manufactured under Contract**

        **"These documents show that Loral meets the definition of DOE facility because they show that Loral was doing work on behalf of DOE (as subcontractor to Loral) (see Section 7384l(12)(A)) and that DOE, through Rockwell (the operator of Rocky Flats, a DOE facility) had a proprietary interest in the Loral facility, as required by Section 7384l(12)(B)i)."**

 5. All documents related to the "Classification" of the Loral American Beryllium Company status as a covered "Vendor" under Department of Energy  EEOICPA, including all inter-agency correspondence.

Each of these nine numbered paragraphs can be treated as separate requests for the purpose of expediting any one of the requests.

If the Agency's response to any part of our request yields classified records, or if the Agency determines that responsive documents can be withheld under FOIA, I request a Vaughn index of withheld, exempt, or classified documents.
I will pay whatever cost are involved in my request for the above Documents./ Contracts under FOIA

Respectfully

Raymond W. Stephens

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Florida
34232
Ph/Fax 941-953-9628


Mr Mark Stewart
US Dept of Labor DEEOIC/FAB
Charles E Bennett Fed BLDG.
400 West Bay St. Rm . 63B
Jacksonville, Florida 32202


CASE # 278306717


Dear Mr. Stewart;

     I just received a copy of my file that I had requested, After perusing through it, I must admit I was very disappointed at the Department of Regulations and Policy (John Vance & Karoline Anders) After speaking with both of them by Phone and Email I had ask for Copies of any other evidence supplied by DOE Relevant to this Case, I was assured by both that I would Receive those copies. I received no such copies. A CD was ordered by Ms. Anders from DOE containing 1063 Pages of information originally found by Senator Nelson in his request to DOE in March of 2005 for Contracts and other Documents to Justify the Coverage in years from 12 to 25 for Our Belpt Testing Program,

     I had Sent Copies of Documents that I had discovered in the same Pages that were available to them in the CD of 1063 pages, as I had a copy of the same. I assumed (mistakenly) that they would try to find the Contracts to prove or disprove the Documents I had submitted proving my case. I have taken Steps through FOIA DOE to obtain copies of those contracts and have information I should receive then in about 4 weeks

     If they had investigated as they were directed they would have found the Document I sent them Concerning the Zeiss Machine they would have found that to install this delicate Machinery ($453,000) a Special Concrete pad was poured measuring 10' x 10' x 18" deep Approximately 100 Square feet, That renders the Building "PROPRIETARY INTEREST" as stated in the Law.

Now let's examine the Solicitors report from John Vance and Karoline Anders in the Department of Regulations and Policy


Here is what I see from my review:

Page 1, first paragraph -- Not sure why the issue to be considered is framed as it is. LABC need not be *either* a beryllium vendor *or* a Department of Energy facility, but could be both, as other covered facilities are considered, and as I argue.

Page 1, second paragraph -- A request of my file's contents would now, presumably, encompass the 1,063 pages of imaged documents, some of which may be beneficial to me_  none were present

Page 4, second full paragraph -- Though the memo does provide the standard definition of proprietary interest under law, it is not clear why there is not a citation to a law or laws for the definition provided in this paragraph.

There may indeed be documents within the 1,063 imaged pages -- or the additional information that will come from my FOIA request -- that may produce a challenge to the finding of the memo of there being no evidence of a proprietary interest, as defined on page four of the memo. I certainly know now how they are interpreting that definition.

The heart of the memo hinges on the second prong of the test, beginning in the middle of page four. The terms used in the second prong of the test are very broad, and subject to widely varying interpretations.

The DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal. There may be other applications of contract law that do not require a subcontractor to be on the same premises as a contractor for the contractual relationship to be binding. There may also be instances of a DOE facility being considered a subcontractor without being on the same premises as a contractor.

The second prong of the definition of a DOE facility provides a wider berth of interpretation than the first. You may indeed find that various courts have interpreted the same terms that are used in the second prong as evidence of a proprietary interest.

I bring your attention to the last Paragraph in The following Rendered Decision!!


http://www.dol.gov/esa/regs/compliance/owcp/eeoicp/Decisions/GenericDecisions/DecisionsRef/3
4291-2003--20030801.htm


## CONCLUSIONS OF LAW


A covered employee is eligible for compensation under the EEOICPA for an "occupational illness," which is defined in § 7384l(15) of the EEOICPA as "a covered beryllium illness, cancer referred to in § 7384l(9)(B) of this title, specified cancer, or chronic silicosis, as the case may be." 42 U.S.C. § 7384l(15). A "covered employee" is eligible for compensation under EEOICPA for a specified "occupational illness." A "covered employee," as defined in §§ 7384l(1),7384l(3),7384l(7),7384l(9), 7384l(11) and § 7384r of the EEOICPA, includes employees of private companies (an entity "other than the United States", per § 7384l(4)) which provided radioactive materials to the United States for the production of atomic weapons, employees at Department of Energy facilities or test sites (§ 7384l(12)), and employees of Department of Energy contractors, subcontractors, or beryllium vendors. 42 U.S.C. §§ 7384l(1),(3),(7),(9),

(11); 7384r. Section 7384(l)(11)(B)(I and ii) defines a "Department of Energy contractor employee" to include

"An individual who is or was employed at a Department of Energy facility by—

     (i)        An entity that contracted with the Department of Energy to provide management and operating, management and integration, or environmental remediation at the facility; or

     (ii)       A contractor or subcontractor that provided services, including construction and maintenance, at the facility."

The DEEOIC has further addressed the issues of how a "contractor or subcontractor" may be defined, as well as whether employees of state or federal governments may be considered DOE contractor employees, in EEOICPA Bulletins No. 03-27 (issued May 28, 2003) and No. 03-26 (issued June 3, 2003). The following definitions have been adopted by the DEEOIC:

**Contractor** – An entity engaged in a contractual business arrangement with the Department of Energy to provide services, produce materials or manage operations at a beryllium vendor or Department of Energy facility.

**Subcontractor** – An entity engaged in a contracted business arrangement with a beryllium vendor contractor or a contractor of the Department of Energy to provide a service at a beryllium vendor or Department of Energy facility.

**Contract - An agreement to perform a service in exchange for compensation, usually memorialized by a memorandum of understanding, a cooperative agreement, an actual written contract, or any form of written or implied agreement, is considered a contract for the purpose of determining whether an entity is a "DOE contractor."**

       To Summarize, it is my belief that this case so far has not had the benefit of investigation in the Department of Policy and Regulations. They used only the Documents I submitted and dismisses the case at hand without just cause.

After speaking with you on the phone and by emails in the past, I know beyond doubt you are a Fair and Caring person in your work and you will do what is right. The department of DOL must certainly have ways of checking information as it determines Appropriate and I know you will do whatever needs to be done

If this case should be denied be advised I will request an in person hearing to defend my case

Respectfully

Raymond W Stephens

September 8, 2006

<u>Employment and Job History Affidavit</u>
For

Patrick G. Daspit
356 So. Orchid Dr.
Ellenton, FL  34222

I was employed at Loral American Beryllium for 26 years, during which time I was the Material Control Supervisor, Purchasing Manager, Quality Assurance Inspector and Manager, Security Officer, and Manager of Classified Projects and Contracts Administrator.

I first went to work at American Beryllium Corp. in March 1963 and worked there till September 1973.  I returned to Loral American Beryllium Corp. in September 1978 and finally left in September 1993.

I worked with Mr. Raymond Stephens in different departments of the organization from June 1980 until I left in 1993.

Loral American Beryllium was a sub-contractor to many aerospace companies that were contractors for the Department of Energy. They manufactured weapons hardware, and other components for programs such as the B1, B51, & B82 weapons and the facility held "L" or "Q" level clearance from approximately 1968 to 1972 and then I believe it was reinstated in 1982 thru 1991.

 LABC was a manufacturer of ultra-precision machined components, processing difficult to machine exotic materials, such as Titanium, Stainless Steel, Hafnium, depleted Uranium, Waspalloy, and Inconel.  The primary material used for fabrication was pure Beryllium, supplied by Kawecki Berylco and Brush Wellman Corp., Rockwell International, Rocky Flats, Golden, CO., LLL, Livermore, CA.

LABC had a highly skilled work force and was able to provide design and fabrication services to customers blue prints.  In addition to machining product, they also did secondary operations, such as Electroless Nickel Plating, Gold and Silver Plating, Anodizing of Beryllium metals, assembly and integration of supplied or purchased components into the final product.

1

During the approximately 40 years the company was in business they became experts in producing hardware for companies such as, Rockwell International, Rocky Flats, Golden, CO., Dupont Corp., Savannah River, EG&G Pantex Facility in Amarillo, TX. And Bendix KC, Kansas City, MO. LABC was also doing contract manufacturing directly for Lawrence Livermore and Sandia Labs.

Usually LABC used their own machining equipment and techniques for production and inspection; however sometimes equipment was provided for manufacturing and inspection by the contractor. Bendix KC and Rockwell at Rocky Flats provided equipment for manufacture of their product.

Because Rockwell wanted enhanced methods of inspection and a different cleaning procedure, LABC had to make changes to the facility. In addition to the standard gaging, Rockwell asked that a Zeiss UMC CMM coordinate measuring machine be used for measuring some features and this machine was installed in 1985. In order to install the Zeiss CMM, LABC had to put in an isolated concrete pad for vibration, as well as environmental equipment to control humidity and temperature.

Before starting the aqueous cleaning method, LABC had to expand the facility to incorporate the cleaning system. The entire facility was upgraded for production of DOE classified product. The product manufactured for Rocky Flats was source inspected by GE, Pinellas, or Rocky Flats quality assurance personnel. This allowed LABC to ship components directly to Savannah River, Rocky Flats, and Pantex, for further processing or final assembly.

LABC also performed machining, inspection, and secondary operation services, such as repairs and rework to parts produced by them or from other manufacturing facilities. This service was performed at LABC because of their familiarity with the material, prior experience, and the ability to do the work in a classified manner.

This information provided is to the best of my recollection, and all facts and statements contained in this affidavit are true and correct and within my personal knowledge.

_____ (Signature)

Patrick G. Daspit, September 8, 2006

2



Rocky Flats Plant
North American Space Operations
Rockwell International Corporation
P.O. Box 464
Golden, Colorado 80402-0464
(303) 497-7000
Contractor to U.S. Department of Energy

**Rockwell
International**

July 25, 1985

Loral American Beryllium Corporation
P. O. Box 117
1600 Tallevast Road
Tallevast, FL  33588

ATTN:  George Allen, Jr.

Please use this letter as your authorization to acquire, on
Rockwell's behalf, and install at your facility a Zeiss UPMC
850/1200 Measuring System.  Such system shall be in accordance
with your proposal dated June 14, 1985, and Zeiss Quotation No.
3361-99701-0R2 dated 07-29-85.

However, Rockwell will assume the lease responsibility which in
turn the system becomes Government-furnished equipment.

Our leasing agent shall forward to Loral the Sum not to exceed
$434,937 at such time as the system is delivered to Loral's
plant.

It shall be Loral's responsibility to assure the timely
installation and acceptance of the Zeiss equpment and it shall
also be Loral's responsibility to control all funds advanced by
the leasing agent on Rockwell's behalf for this purchase.  Should
Loral not be able to pass title to the equipment in accordance
with Rockwell's leasing agreement, Loral shall be responsible for
leasing costs attendant to this purchase and for refund of all
monies to the leasing agent which were advanced for this
purchase.

T. L. Vigil
Senior Buyer
Purchasing, Subcontracts
  and Administration

cc:
P. G. Daspit -  Loral, ABC Tallevast, FL
S. D. Brumley
G. O. Elvey
D. R. Gammel
R. L. Hansen
P. A. Hurtado
J. A. Marceca
L. E. Wilson

**Rocky Flats Plant**
**North American Space Operations**
**Rockwell International Corporation**
P.O. Box 464
Golden, Colorado 80402-0464
(303) 497-7000
Contractor to U.S. Department of Energy



**Rockwell**
**International**

July 25, 1985

Loral American Beryllium Corporation
P. O. Box 117
1600 Tallevast Road
Tallevast, FL  33588

ATTN:  George Allen, Jr.

Please use this letter as your authorization to acquire, on
Rockwell's behalf, and install at your facility a Zeiss UPMC
850/1200 Measuring System.  Such system shall be in accordance
with your proposal dated June 14, 1985, and Zeiss Quotation No.
3361-99701-OR2 dated 07-29-85.

However, Rockwell will assume the lease responsibility which in
turn the system becomes Government-furnished equipment.

Our leasing agent shall forward to Loral the Sum not to exceed
$434,937 at such time as the system is delivered to Loral's
plant.

It shall be Loral's responsibility to assure the timely
installation and acceptance of the Zeiss equpment and it shall
also be Loral's responsibility to control all funds advanced by
the leasing agent on Rockwell's behalf for this purchase.  Should
Loral not be able to pass title to the equipment in accordance
with Rockwell's leasing agreement, Loral shall be responsible for
leasing costs attendant to this purchase and for refund of all
monies to the leasing agent which were advanced for this
purchase.

T. L. Vigil
Senior Buyer
Purchasing, Subcontracts
 and Administration

cc:
P. G. Daspit - Loral, ABC Tallevast, FL
S. D. Brumley
G. O. Elvey
D. R. Gammel
R. L. Hansen
P. A. Hurtado
J. A. Marceca
L. E. Wilson

## Internal Letter

 **Rockwell International** *recd.*
*8-15-8*

Date    August 13, 1985

TO      (Name, Organization, Internal Address)
        Those Listed

No.

FROM    (Name, Organization, Internal Address, Phone)
        P. A. Hurtado
        RQA
        Building 991
        7284

SUBJECT·    TRIP REPORT

During July 30 thru August 2, 1985, the following RIRF personnel visited Loral American Beryllium Company (LABC) at Sarasota, Florida. The visit purpose was to evaluate inspection procedures and handling of changes. A secondary purpose was to outline necessary activities pertaining to the acquisition of and bringing on line a Zeiss CMM. Those in attendance were:

    Larry Wilson, Product Engineering
    Dale Gammel, QE&C/ITS
    Paul Hurtado, QEO/RQA

Also, William Bish of the LLNL Design Agency was in attendance.

Evaluation of the procedures resulted in findings that procedures were in order and up to date. Handling of changes will be in accordance with present methods regardless of whether Rockwell or General Electric performs source inspection.

Currently the Zeiss has been ordered by LABC and delivery is scheduled for the last week of August 1985. The housing (including concrete pad) was found to be progressing on schedule with appropriate pad thickness and environmental controls.

A plan of activities starting with arrival of the Zeiss CMM at LABC through issuance of the Design Agency CER was formulated. The activities include unpackaging, assembly, calibration, master part checkouts and design agency engineering evaluation.

Items of concern that were discussed included schedule impact. This involves cut off between parts inspected on the Zeiss CMM and the now used Brown and Sharpe validator. No problem is anticipated; however, it was agreed if Rockwell was selected to perform the source inspection it would be easier to coordinate and conduct the source inspection. Another concern was splintering of the calibration activity. This activity should be consoli- dated, with Rockwell performing not only the Zeiss CMM calibration, but also covering the remaining inspection equipment.

Those Listed
Page 2
August 13, 1985

Additional aspects of the source inspection program were discussed (not in presence of LABC personnel) that led to the consensus that Rockwell should perform source inspection at LABC. An effort to present and justify this position will be made during August.

P. A. Hurtado
Receiving Quality Assurance

Distribution

M. L. Adams
V. M. Alexander
J. O. Elvey
    Attn:  T. L. Vigil
D. R. Gammel
D. C. Smith
    Attn:  J. A. Marceca
L. E. Wilson

CORRES. CONTROL
OUTGOING LTR NO.
56341.
91 RF 3413

| DIST. | LTR | CHG |
|---|---|---|
| ILLHOFF, F.H. | | |
| RETZKE, J.C. | | |
| URLINGAME, A.H. | | |
| ROUCHER, D.W. | | |
| AVIS, J.G. | | |
| VERED, J.E. | | |
| ERRERA, D.W. | | |
| ERRERA, K.P. | | |
| ERRIS, L.R. | | |
| RAIKOR, F.J. | | |
| RANCIS, G.E. | | |
| OODWIN, R. | | |
| EALY, T.J. | | |
| EKER, E.H. | | |
| ENS, J.P. | | |
| ERSH, J.M. | | |
| IRBY, W.A. | | |
| IRKEBO, J.A. | | |
| EE, F.M. | | |
| AJESTIC, J.R. | | |
| CHANEL, M.G. | | |
| EURRENS, B.E. | ✓ | 10 |
| ONTROSS, R.W. | | |
| ORGAN, R.V. | | |
| ORTH, P. | | |
| ALMER, L.A. | | |
| ARNELL, R.F. | | |
| OTTER, G.I. | | |
| ZZUTO, V.M. | | |
| HOADES, J.I. | | |
| AFFELL, B.F. | | |
| HANNON, W.M. | | |
| WANSON, E.R. | | |
| IEBE, J.S. | | |
| ILKINSON, R.B. | | |
| ILSON, J.M. | | |
| OUNG, E.R. | | |
| NE, J.O. | | |
| rtinez-than, S. | | 10 |
| ral File | | |
| m. Corr. File | | 10 |
| illenar, J | | 10 |
| suclass H. | | 10 |
| inchard, G. | | 10 |
| inate, Ctrl. | | 10 |
| ug, D.M. | | 10 |
| rig. Sec. Mgmp. Staff | | |
| RRES CONTROL | x | 10 |
| AFFIC | | |

CLASSIFICATION:

| | | |
|---|---|---|
| CRI | | |
| NCLASSIFIED | ☒ | ☒ |
| ONFIDENTIAL | | |
| ECRET | | |

THORIZED CLASSIFIER
SIGNATURE
_[signature]_
ATE 6/5/91

REPLY TO LTR NO.

R APPROVALS:

IG & TYPIST INITIALS

## EG&G ROCKY FLATS

**EG&G ROCKY FLATS, INC.**
ROCKY FLATS PLANT, P.O. BOX 464, GOLDEN, COLORADO 80402-0464 • (303) 966-7000

June 11, 1991                                    91-RF-3413

R. J. Levernier, Director
Safeguards and Security
DOE, RFO

REQUEST FOR TERMINATION OF FACILITY CLEARANCE - LORAL AMERICAN BERYLLIUM

We reported to you in May 1991 that appropriate action had been initiated in order to ensure proper closure of security interests at Loral American Beryllium Corporation (ABC). The classified contract with Loral ABC had expired.

Representatives from EG&G Procurement and Safeguards and Security visited with Loral ABC officials at their Tallevast, Florida facility in early May. Discussions with Loral personnel and a visual survey of the facility indicated that no classified documents or material related to the expired Rocky Flats classified contract were present. Per DOE requirement and as a confirmation of verbal statements obtained from Loral ABC staff, please find attached an original Certificate of Non-Possession, dated May 7, 1991.

Also attached are Security Termination Statements for Loral's DOE-cleared personnel. The originals have been provided to EG&G Personnel Security so they may be processed internally and expeditiously forwarded to your Personnel Security Branch for appropriate action.

Effective this date, EG&G Safeguards and Security records will reflect that Loral ABC is no longer considered an active, classified (off-site) subcontractor. Please let me know if any other data is needed by your staff in order for them to revise and resubmit the Facility Data and Approval Record (FDAR). Thank you.

_[signature]_
Bernard E. Meurrens, Director
Safeguards and Security

sch

Attachments:
As Stated

20118A

# EG&G ROCKY FLATS

EG&G ROCKY FLATS, INC.
ROCKY FLATS PLANT, P.O. BOX 464, GOLDEN, COLORADO 80402-0464 • (303) 966-7000

CORRES. CONTROL
OUTGOING LTR NO
5634.1
91RF2722

May 9, 1991                                                                91-RF-2722

DIST.

| | |
|---|---|
| ALLHOFF, F.H. | |
| BRETZKE, J.C. | |
| BURLINGAME, A.H. | |
| CROUCHER, D.W. | |
| DAVIS, J.G. | |
| EVERED, J.E. | |
| FERRERA, D.W. | |
| FERRERA, K.P. | |
| FERRIS, L.R. | |
| FRAKIOR, J.I. | |
| FRANCIS, G.E | |
| GOODWIN, R. | |
| HEALY, T.I. | |
| IEKER, F.H. | |
| JENS, J.P. | |
| KERSH, J.M. | |
| KINSY, W.A. | |
| KIRKEBO, J.A. | |
| LEE, E.M. | |
| MA | |
| McDANIEL, M.G. | |
| MEURRENS, B.E. | N |
| MONTROSS, R.W. | |
| MORGAN, R.V. | |
| NORTH, P. | |
| PALMER, L.A. | |
| PARNELL, R.F. | |
| POTTER, G.I. | |
| RIZZUTO, V.M. | |
| RHOADER, J.I | |
| SAFFEU, R.F. | |
| SHANNON, W.M. | |
| SWANSON, E.R. | |
| WEBB, J.S. | |
| WILKINSON, R.B. | |
| WILSON, J.M. | |
| YOUNG, E.R. | |
| ZANE, J.O. | |
| Castigar | N |
| Gilmer | N |
| W. Capps | N |
| Schafer | N |
| Ser | |
| Loral | N |
| aco corr | N |
| CORRES CONTROL | I |
| TRAFFIC | N |

Richard J. Levernier, Director
Safeguards and Security Division
DOE, RFO

**TERMINATION OF OFF-SITE CLASSIFIED SUBCONTRACTOR/LORAL/AMERICAN BERYLLIUM
(BEM-429-91)**

As previously indicated to you (91-RF-2279 and 2560), EG&G Procurement and
Safeguards and Security representatives visited Loral American Beryllium
Corporation (ABC) in Tallevast, Florida on May 2, 1991. After confirming
with Loral ABC personnel that their organization was not currently
performing any classified activities for Rocky Flats, the requirement for
terminating facility approval/clearance was discussed with Mr. Allen,
President, and Ms. Debbeberry, Security Officer. A check of the classified
area of the facility revealed no Rocky Flats-related classified documents
or material. Mr. Allen and Ms. Derreberry individually advised that no
Rocky Flats classified assets were in their (Loral) possession.

Although Certificates of Non-Possession were previously executed in 1988
and 1989, Loral ABC will provide a current Certificate of Non-Possession.
Upon receipt in my office, it will be provided to you.

They are in the process of having their eighteen (18) "QN" cleared
employees sign Termination Statements. These will be forwarded to my
office for relay to Personnel Security for processing. However, in the
interim and for cancellation purposes, please find attached, a listing of
Loral ABC employees who currently hold DOE access authorizations (based
upon the Rocky Classified Contract).

In order to properly document the termination events, and provide Loral
with a formal notification of termination activities, a reiteration letter
has been forwarded to Mr. Allen. A copy of the letter is being provided to
your office.

We will keep the Loral ABC file open until we receive the executed
Certificate of Non-Possession and Termination Statements. We expect to
receive these items and close the file on or about May 24, 1991.

CLASSIFICATION:

| | |
|---|---|
| UCNI | |
| UNCLASSIFIED | X |
| CONFIDENTIAL | |
| SECRET | |

AUTHORIZED CLASSIFIER
SIGNATURE

DATE 5/8/91

IN REPLY TO LTR NO.
2203-RF-91

R. J. Levernier
91-RF-2722
Page 2


Please feel free to contact me or my subcontractor coordinator,
S. Costigan-Hann with any questions or comments.


Bernard E. Meurrens, Director
Safeguards and Security

BEM:jem

Attachments:
As Stated

 Rockwell International *recd. 8-15-85*

## Internal Letter

Date    · August 13, 1985

No.

FROM    (Name, Organization, Internal Address, Phone)
· P. A. Hurtado
· RQA
· Building 991
· 7284

TO    (Name, Organization, Internal Address)
· Those Listed

SUBJECT·  TRIP REPORT

During July 30 thru August 2, 1985, the following RIRF personnel visited Loral American Beryllium Company (LABC) at Sarasota, Florida. The visit purpose was to evaluate inspection procedures and handling of changes. A secondary purpose was to outline necessary activities pertaining to the acquisition of and bringing on line a Zeiss CMM. Those in attendance were:

Larry Wilson, Product Engineering
Dale Gammel, QE&C/ITS
Paul Hurtado, QEO/RQA

Also, William Bish of the LLNL Design Agency was in attendance.

Evaluation of the procedures resulted in findings that procedures were in order and up to date. Handling of changes will be in accordance with present methods regardless of whether Rockwell or General Electric performs source inspection.

Currently the Zeiss has been ordered by LABC and delivery is scheduled for the last week of August 1985. The housing (including concrete pad) was found to be progressing on schedule with appropriate pad thickness and environmental controls.

A plan of activities starting with arrival of the Zeiss CMM at LABC through issuance of the Design Agency CER was formulated. The activities include unpackaging, assembly, calibration, master part checkouts and design agency engineering evaluation.

Items of concern that were discussed included schedule impact. This involves cut off between parts inspected on the Zeiss CMM and the now used Brown and Sharpe validator. No problem is anticipated; however, it was agreed if Rockwell was selected to perform the source inspection it would be easier to coordinate and conduct the source inspection. Another concern was splintering of the calibration activity. This activity should be consolidated, with Rockwell performing not only the Zeiss CMM calibration, but also covering the remaining inspection equipment.

Those Listed
Page 2
August 13, 1985


Additional aspects of the source inspection program were discussed (not in presence of LABC personnel) that led to the consensus that Rockwell should perform source inspection at LABC. An effort to present and justify this position will be made during August.

P. A. Hurtado
Receiving Quality Assurance

Distribution

M. L. Adams
V. M. Alexander
J. O. Elvey
  Attn:  T. L. Vigil
D. R. Gammel
D. C. Smith
  Attn:  J. A. Marceca
L. E. Wilson



**Rocky Flats Plant
North American Space Operations
Rockwell International Corporation**
P.O. Box 464
Golden, Colorado 80402-0464
(303) 497-7000
Contractor to U.S. Department of Energy

**Rockwell
International**

March 5, 1985


Loral American Beryllium Corporation
P. O. Box 117
1600 Tallevast Road
Tallevast, Florida  33588

Attn:  Mr. George Allen, Jr.

Reference:  Loral's proposal dated February 11, 1985
            for an Aqueous Cleaning Expansion

Rocky Flats request Loral to begin your expansion as
soon as possible.

We do not intend to increase the unit price per part as
originally discussed, but, Rockwell, Rocky Flats will
issue change notices on current contracts (with Loral)
and the most recent negotiated orders by adding a line
item - Aqueous Cleaning surcharge.

The charges will be divided equally for all orders and
will be completed within 30 days.

However, Rocky Flats prefers Loral to have competitive
quotes for your expansion.

As stated in the proposal regarding an audit.  Rocky
Flats intends to audit the costs for varification.  The
proposed amount of $153,176.22 will be the maximum
Rocky Flats will pay back to Loral.

*T. L. Vigil*
T. L. Vigil
Senior Buyer


cc:
R. G. Stearns
P. A. Hurtado
L. E. Wilson

# L☐RAL
## AMERICAN BERYLLIUM
A SUBSIDIARY OF **L☐RAL** CORPORATION

February 11, 1985

*Hurtado*
*Stearns*

Rockwell International
6262 W. 91st Avenue
Westminster, CO  80030

Attention:  Mr. T. L. Vigil, Sr. Buyer

Subject:  Expansion at Loral ABC to incorporate an Aqueous
Cleaning System

Reference:  October 8, 1984 letter P. Hurtado to P. Daspit

Gentlemen:

Loral ABC has undertaken a study to arrive at the total cost
to incorporate the required Aqueous Cleaning System as an intergal
part of the present "Q" cleared facility.

o Expansion Cost

Attached is a letter from P. Daspit to W. Chappele (Loral ABC
V.P. of Manufacturing) which outlines this cost of $153,176.22.

o Proposal to Recapture the Cost

Loral ABC would propose that Loral's cost for the subject
expansion as mandated by the Design Agency be payed back in
the following method:

A. That Rockwell R.F. establishes the approximate total re-
quirements for the seven beryllium parts to be purchased
through government FY-1988.

B. That we take the $153,176 expansion and cleaning cost and
divide it by total approximate quantity to be purchased
during this period.  This will give us a piece part price
for amortizing of the expansion cost which will be added
to the bottom of each piece part price as it's invoiced.
This will simplify the accural of expansion cost with a
running total.

o Audit

Rockwell R.F. will have the privilege at any time to audit
all cost of the proposed expansion.

Rockwell International
February 11, 1985
Page 2

o <u>Adjustments</u>

In the event the Rockwell R.F. purchase requirements were less than anticipated by the end of government FY-1988, Loral ABC would have the opportunity to renegotiate the amortized unit price to reflect a higher unit price which would enable Loral ABC to recover all the cost prior to the end of government FY-1988.

Due to the classified nature of the total quantities, a piece part price for amortization of the cost was not included as a part of this proposal.  My intent is to outline the concept and if agreeable with Rockwell, we will then determine the incremental cost required to amortize the expansion.

Please advise if you have any additional questions.

Sincerely yours,

LORAL AMERICAN BERYLLIUM CORPORATION

George M. Allen, Jr.
Sr. Vice President, Marketing

GMA/bp

Encs. 1.) 12/14/84 letter P. Daspit to W. Chappele
      2.) 10/08/84 letter P. Hurtado to P. Daspit
      3.)  9/28/84 Rockwell internal letter J. L. Briggs to
               L. E. Wilson
      4.) 11/19/73 Draft cleaning beryllium parts
      5.) Back-up cost support for Loral ABC expansion



**Rocky Flats Plant**
**North American Space Operations**
**Rockwell International Corporation**
P.O. Box 464
Golden, Colorado 80402-0464
(303) 497-7000
Contractor to U.S. Department of Energy

**Rockwell**
**International**

March 5, 1985


Loral American Beryllium Corporation
P. O. Box 117
1600 Tallevast Road
Tallevast, Florida  33588

Attn:  Mr. George Allen, Jr.

Reference:  Loral's proposal dated February 11, 1985
            for an Aqueous Cleaning Expansion

Rocky Flats request Loral to begin your expansion as
soon as possible.

We do not intend to increase the unit price per part as
originally discussed, but, Rockwell, Rocky Flats will
issue change notices on current contracts (with Loral)
and the most recent negotiated orders by adding a line
item - Aqueous Cleaning surcharge.

The charges will be divided equally for all orders and
will be completed within 30 days.

However, Rocky Flats prefers Loral to have competitive
quotes for your expansion.

As stated in the proposal regarding an audit.  Rocky
Flats intends to audit the costs for varification.  The
proposed amount of $153,176.22 will be the maximum
Rocky Flats will pay back to Loral.

T. L. Vigil
Senior Buyer

cc:
R. G. Stearns
P. A. Hurtado
L. E. Wilson

CORRES. CONTROL
OUTGOING LTR NO.

56341

91 RF 3413.

# EG&G ROCKY FLATS

EG&G ROCKY FLATS, INC.
ROCKY FLATS PLANT, P.O. BOX 464, GOLDEN, COLORADO 80402-0464 • (303) 966-7000

June 11, 1991

91-RF-3413

R. J. Levernier, Director
Safeguards and Security
DOE, RFO

REQUEST FOR TERMINATION OF FACILITY CLEARANCE - LORAL AMERICAN
BERYLLIUM

We reported to you in May 1991 that appropriate action had been initiated in order to
ensure proper closure of security interests at Loral American Beryllium Corporation (ABC).
The classified contract with Loral ABC had expired.

Representatives from EG&G Procurement and Safeguards and Security visited with Loral
ABC officials at their Tallevast, Florida facility in early May. Discussions with Loral
personnel and a visual survey of the facility indicated that no classified documents or
material related to the expired Rocky Flats classified contract were present. Per DOE
requirement and as a confirmation of verbal statements obtained from Loral ABC staff,
please find attached an original Certificate of Non-Possession, dated May 7, 1991.

Also attached are Security Termination Statements for Loral's DOE-cleared personnel.
The originals have been provided to EG&G Personnel Security so they may be processed
internally and expeditiously forwarded to your Personnel Security Branch for appropriate
action.

Effective this date, EG&G Safeguards and Security records will reflect that Loral ABC is
no longer considered an active, classified (off-site) subcontractor. Please let me know
if any other data is needed by your staff in order for them to revise and resubmit the
Facility Data and Approval Record (FDAR). Thank you.

Bernard E. Meurrens, Director
Safeguards and Security

sch

Attachments:
As Stated

---

DIST.

| DIST. | LTR | CHC |
|-------|-----|-----|
| ALLHOFF, F.H. | | |
| RETZKE, J.C. | | |
| BURLINGAME, A.H. | | |
| CROUCHER, D.W. | | |
| DAVIS, J.G. | | |
| VERED, J.E. | | |
| ERRERA, D.W. | | |
| ERRERA, K. P. | | |
| ERRIS, L.R. | | |
| RAIKOR, F.J. | | |
| RANCIS, G.E. | | |
| GOODWIN, R. | | |
| EALY, T.J. | | |
| EKER, F.H. | | |
| ENS, J. P. | | |
| ERSH, J.M. | | |
| IRBY, W.A. | | |
| IRKEBO, J.A. | | |
| FE, E.M. | | |
| AJESTIC, J.B. | | |
| cDANIEL, M.G. | | |
| EURRENS, B.E. | ✓ | O |
| ONTROSS, R.W. | | |
| ORGAN, R.V. | | |
| ORTH, P. | | |
| ALMER, L.A. | | |
| ARNELL, R.F. | | |
| UTER, J.J. | | |
| ZZUTO, V.M. | | |
| HOADES, J.I. | | |
| AFFELL, B.F. | | |
| HANNON, W.M. | | |
| WANSON, E.R. | | |
| IEBE, J.S. | | |
| ILKINSON, R.B. | | |
| ILSON, J. M. | | |
| OUNG, E.R. | | |
| NE, J.O. | | |
| rtigan-Hean, S. | | O |
| ral File | | |
| m. Corr. File | | |
| ilmer, J | | O |
| carla H | | |
| metrand, G. | | O |
| chafer, Sch | | O |
| ug, D.M. | | O |
| rig. Sec. Term. Staten | | |
| ORRES CONTROL | X | O |
| RAFFIC | | O |

CLASSIFICATION:

| | | |
|---|---|---|
| CNI | | |
| NCLASSIFIED | X | X |
| ONFIDENTIAL | | |
| ECRET | | |

THORIZED CLASSIFIER
SIGNATURE

ATE 6/5/91

REPLY TO LTR NO.

R APPROVALS:

IG & TYPIST INITIALS

# EG&G ROCKY FLATS

EG&G ROCKY FLATS, INC.
ROCKY FLATS PLANT, P.O. BOX 464, GOLDEN, COLORADO 80402-0464 • (303) 966-7000

CORRES. CONTROL
OUTGOING LTR NC
5634.1
9URF2722

May 9, 1991

91-RF-2722

| DIST. | |
|---|---|
| ALLHOFF, F.H. | |
| BRETZKE, J.C. | |
| BURLINGAME, A.H. | |
| CROUCHER, D.W. | |
| DAVIS, J.G. | |
| EVERED, J.E. | |
| FERRERA, D.W. | |
| FERRERA, K.P. | |
| FERRIS, L.R. | |
| FRAIKOR, F.J. | |
| FRANCIS, G.E. | |
| GOODWIN, R. | |
| HEALY, T.J. | |
| DEKER, E.H. | |
| JENS, J.P. | |
| KERSH, J.M. | |
| KIRBY, W.A. | |
| KIRKEBO, J.A. | |
| LEE, E.M. | |
| MAESTAS | |
| McCANSE, J.G. | |
| MEURRENS, B.E. | N |
| MONTROSS, R.W. | |
| MORGAN, R.V. | |
| NORTH, P. | |
| PALMER, L.A. | |
| PARNELL, R.F. | |
| POTTER, G.I. | |
| PIZZUTO, V.M. | |
| RHOADES, J.I. | |
| SAFFELL, B.F. | |
| SHANNON, W.M. | |
| SWANSON, E.R. | |
| WIEBE, J.S. | |
| WILKINSON, R.B. | |
| WILSON, J.M. | |
| YOUNG, E.R. | |
| ZANE, J.O. | |
| Costigan | N |
| Prim | |
| Gilmer | N |
| H. Cagney | N |
| Schafer | N |
| Ger | |
| Loral | N |
| Gen Corr | N |

Richard J. Levernier, Director
Safeguards and Security Division
DOE, RFO

TERMINATION OF OFF-SITE CLASSIFIED SUBCONTRACTOR/LORAL/AMERICAN BERYLLIUM
(BEM-429-91)

As previously indicated to you (91-RF-2279 and 2560), EG&G Procurement and Safeguards and Security representatives visited Loral American Beryllium Corporation (ABC) in Tallevast, Florida on May 2, 1991. After confirming with Loral ABC personnel that their organization was not currently performing any classified activities for Rocky Flats, the requirement for terminating facility approval/clearance was discussed with Mr. Allen, President, and Ms. Debbeberry, Security Officer. A check of the classified area of the facility revealed no Rocky Flats-related classified documents or material. Mr. Allen and Ms. Derreberry individually advised that no Rocky Flats classified assets were in their (Loral) possession.

Although Certificates of Non-Possession were previously executed in 1988 and 1989, Loral ABC will provide a current Certificate of Non-Possession. Upon receipt in my office, it will be provided to you.

They are in the process of having their eighteen (18) "QN" cleared employees sign Termination Statements. These will be forwarded to my office for relay to Personnel Security for processing. However, in the interim and for cancellation purposes, please find attached, a listing of Loral ABC employees who currently hold DOE access authorizations (based upon the Rocky Classified Contract).

In order to properly document the termination events, and provide Loral with a formal notification of termination activities, a reiteration letter has been forwarded to Mr. Allen. A copy of the letter is being provided to your office.

We will keep the Loral ABC file open until we receive the executed Certificate of Non-Possession and Termination Statements. We expect to receive these items and close the file on. or about May 24, 1991.

| CORRES CONTROL | X |
| TRAFFIC | N |

CLASSIFICATION:

| UCNI | |
| UNCLASSIFIED | X |
| CONFIDENTIAL | |
| SECRET | |

AUTHORIZED CLASSIFIE
SIGNATURE

DATE 5/8/91

IN REPLY TO LTR NO.
Q063-RF-
91

R. J. Levernier
91-RF-2722
Page 2


Please feel free to contact me or my subcontractor coordinator,
S. Costigan-Hann with any questions or comments.


Bernard E. Meurrens, Director
Safeguards and Security

BEM:jem

Attachments:
As Stated

# LABC CLEARANCES

## D.O.E. ONLY

GEORGE MAX ALLEN, JR.
GREGORY WAYNE BALLINGER - debriefed 3/15/91
FRANZ FRIEDEL BRUNATH
HARVEY OMERLE BUNDRICK
WILLIAM DAVID CHAPPELE
STEVE HAYWARD CLARK
PATRICK GERALD DASPIT
VICKI YVONNE DERREBERRY
HENRY FREDERICK GLASS
LEE RAYMOND HATT
BOB JOHN LANGENBACH
CAMILO IGNACIO LEZCANO
CARL WILFRED NADEAU
PAUL JOSEPH O'BRIEN
JAMES EDWARD REYNOLDS
HARRY EDWARD TEETER
FERINARD JAMES THOMPSON
LEWIS ELLSWORTH WELCH    - debriefed 2/28/91

DAVID ARNOLD LANE
PATRICK THOMAS LANE

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Florida
34232
Ph/Fax 941-953-9628

Mr Mark Stewart
US Dept of Labor DEEOIC/FAB
Charles E Bennett Fed BLDG.
400 West Bay St. Rm . 63B
Jacksonville, Florida 32202

CASE # 278306717

Dear Mr. Stewart;

     I just received a copy of my file that I had requested, After perusing through it, I must admit I was very disappointed at the Department of Regulations and Policy (John Vance & Karoline Anders) After speaking with both of them by Phone and Email I had ask for Copies of any other evidence supplied by DOE Relevant to this Case, I was assured by both that I would Receive those copies. I received no such copies. A CD was ordered by Ms. Anders from DOE containing 1063 Pages of information originally found by Senator Nelson in his request to DOE in March of 2005 for Contracts and other Documents to Justify the Coverage in years from 12 to 25 for Our Belpt Testing Program,

     I had Sent Copies of Documents that I had discovered in the same Pages that were available to them in the CD of 1063 pages, as I had a copy of the same. I assumed (mistakenly) that they would try to find the Contracts to prove or disprove the Documents I had submitted proving my case. I have taken Steps through FOIA DOE to obtain copies of those contracts and have information I should receive then in about 4 weeks

     If they had investigated as they were directed they would have found the Document I sent them Concerning the Zeiss Machine they would have found that to install this delicate Machinery ($453,000) a Special Concrete pad was poured measuring 10' x 10' x 18" deep Approximately 100 Square feet, That renders the Building "PROPRIETARY INTEREST" as stated in the Law.

Now let's examine the Solicitors report from John Vance and Karoline Anders in the Department of Regulations and Policy

Here is what I see from my review:

Page 1, first paragraph -- Not sure why the issue to be considered is framed as it is. LABC need not be *either* a beryllium vendor *or* a Department of Energy facility, but could be both, as other covered facilities are considered, and as I argue.

Page 1, second paragraph -- A request of my file's contents would now, presumably, encompass the 1,063 pages of imaged documents, some of which may be beneficial to me_  none were present

Page 4, second full paragraph -- Though the memo does provide the standard definition of proprietary interest under law, it is not clear why there is not a citation to a law or laws for the definition provided in this paragraph.

There may indeed be documents within the 1,063 imaged pages -- or the additional information that will come from my FOIA request -- that may produce a challenge to the finding of the memo of there being no evidence of a proprietary interest, as defined on page four of the memo. I certainly know now how they are interpreting that definition.

The heart of the memo hinges on the second prong of the test, beginning in the middle of page four. The terms used in the second prong of the test are very broad, and subject to widely varying interpretations.

The DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal. There may be other applications of contract law that do not require a subcontractor to be on the same premises as a contractor for the contractual relationship to be binding. There may also be instances of a DOE facility being considered a subcontractor without being on the same premises as a contractor.

The second prong of the definition of a DOE facility provides a wider berth of interpretation than the first. You may indeed find that various courts have interpreted the same terms that are used in the second prong as evidence of a proprietary interest.

I bring your attention to the last Paragraph in The following Rendered Decision!!

http://www.dol.gov/esa/regs/compliance/owcp/eeoicp/Decisions/GenericDecisions/DecisionsRef/34291-2003--20030801.htm

## CONCLUSIONS OF LAW

A covered employee is eligible for compensation under the EEOICPA for an "occupational illness," which is defined in § 7384l(15) of the EEOICPA as "a covered beryllium illness, cancer referred to in § 7384l(9)(B) of this title, specified cancer, or chronic silicosis, as the case may be." 42 U.S.C. § 7384l(15). A "covered employee" is eligible for compensation under EEOICPA for a specified "occupational illness." A "covered employee," as defined in §§ 7384l(1),7384l(3),7384l(7),7384l(9), 7384l(11) and § 7384r of the EEOICPA, includes employees of private companies (an entity "other than the United States", per § 7384l(4)) which provided radioactive materials to the United States for the production of atomic weapons, employees at Department of Energy facilities or test sites (§ 7384l(12)), and employees of Department of Energy contractors, subcontractors, or beryllium vendors. 42 U.S.C. §§ 7384l(1),(3),(7),(9),

(11); 7384r. Section 7384(l)(11)(B)(I and ii) defines a "Department of Energy contractor employee" to include

"An individual who is or was employed at a Department of Energy facility by—

(i)     An entity that contracted with the Department of Energy to provide management and operating, management and integration, or environmental remediation at the facility; or

(ii)    A contractor or subcontractor that provided services, including construction and maintenance, at the facility."

The DEEOIC has further addressed the issues of how a "contractor or subcontractor" may be defined, as well as whether employees of state or federal governments may be considered DOE contractor employees, in EEOICPA Bulletins No. 03-27 (issued May 28, 2003) and No. 03-26 (issued June 3, 2003). The following definitions have been adopted by the DEEOIC:

**Contractor** – An entity engaged in a contractual business arrangement with the Department of Energy to provide services, produce materials or manage operations at a beryllium vendor or Department of Energy facility.

**Subcontractor** – An entity engaged in a contracted business arrangement with a beryllium vendor contractor or a contractor of the Department of Energy to provide a service at a beryllium vendor or Department of Energy facility.

**Contract - An agreement to perform a service in exchange for compensation, usually memorialized by a memorandum of understanding, a cooperative agreement, an actual written contract, or any form of written or implied agreement, is considered a contract for the purpose of determining whether an entity is a "DOE contractor."**

To Summarize, it is my belief that this case so far has not had the benefit of investigation in the Department of Policy and Regulations. They used only the Documents I submitted and dismisses the case at hand without just cause.

After speaking with you on the phone and by emails in the past, I know beyond doubt you are a Fair and Caring person in your work and you will do what is right. The department of DOL must certainly have ways of checking information as it determines Appropriate and I know you will do whatever needs to be done

If this case should be denied be advised I will request an in person hearing to defend my case

Respectfully

Raymond W Stephens

**(REVISED)**
( November 17, 2006)

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Florida
34232

Case # 278306717

U.S. Department of Labor/DEEOIC
Final Adjudication Branch
Charles E. Bennett Federal Building
400 West Bay Street, Room 63B
Jacksonville, FL 32202

Sir/Madam;

The wording of the final decision allows me to file a letter requesting reconsideration of the final decision, I requested copies of the 1,063 pages of documents that were the basis of the decision communicated in the Vance memo From John Vance And Karoline Anders, that request was denied, thus denying me the opportunity to review all the evidence needed to appeal my Final decision; therefore, that the failure of the DEEOIC to produce the requested documents is a violation of my due process rights and the Administrative Procedure Act.

Your Decision Seems to be based on "Proprietary Interest", In the Document I originally sent you Dated July 25, 1985 Rockwell International Authorizes LABC to Install a Zeiss UPMC 850/1200 Measuring Machine at a cost of $434,937, This Includes The pouring of a Special Cement Floor to Support this Machine. The cement Floor is Common Knowledge in the installation of This Machine, Therefore: The Floor Becomes Part of the Building, rendering The Building "Proprietary Interest".

Additionally,.... This is hard to explain. Property can mean machines, buildings etc. or it can mean the process, like an intellectual property. If LABC did a process that was only for DOE and DOE owned that process then it should meet the criteria. If Loral was making a part for a weapon you can bet DOE owned the process. No other company obviously would have ownership of a weapons process. Am I explaining that clearly enough? That information would be in a contract. The reason I know that existed is because they secured an area and required personnel to be cleared to work in the area. To do all of that there has to be a DOE contract that sets out the requirements and within that contract will be the ownership of that process. In my opinion that's the case that needs to be made and it will require someone with a clearance to request and view those documents. DOL is supposed to have cleared people that can do that. Why didn't she do that? Did we not request that info? Of Course I did. This case was not investigated properly from the outset

To further question the accuracy of the interpretation of critical terms used to deny my claim, I cite the following from a DOL decision dated August 1, 2003, Docket # 34291-2003, in

which I call your Attention to the Highlighted areas of That Part of the Decision Dealing with Interpretation of "Contractor" , "SubContractor" , "Contract".

**"Contractor" – An entity engaged in a contractual business arrangement with the Department of Energy to provide services, produce materials or manage operations at a beryllium vendor or Department of Energy facility.**

**"Subcontractor" – An entity engaged in a contracted business arrangement with a beryllium vendor contractor or a contractor of the Department of Energy to provide a service at a beryllium vendor or Department of Energy facility.**

**"Contract" - An agreement to perform a service in exchange for compensation, usually memorialized by a memorandum of understanding, a cooperative agreement, an actual written contract, or any form of written or implied agreement, is considered a contract for the purpose of determining whether an entity is a "DOE contractor."**

Therefore Rendering the Documents I submitted in Question "A Contract between the two Parties." Including Reference to LABC Being a "Subcontractor"

Even though I have requested Copies of the 1063 Pages on the CD that were used in Evidence of My denial by Karoline Anders and John Vance from the very Start and was denied, the bulk of evidence seems to stem from that report Submitted by John Vance dated September 25, 2006

All references to pages and paragraphs in the following text are for the September 25, 2006 Memo from John Vance to Bill Franson.

Page 1, first paragraph – Not sure why the issue to be considered is framed as it is.  LABC need not be *either* a beryllium vendor *or* a Department of Energy facility, but could be both, as other covered facilities are considered, and as I argue.

Page 1, second paragraph – A request of my file's contents would now, presumably, encompass the 1,063 pages of imaged documents, some of which may be beneficial to me.....File received and no evidence of 1063 Pages in Question.

Page 4, second full paragraph – Though the memo does provide the standard definition of proprietary interest under law, it is not clear why there is not a citation to a law or laws for the definition provided in this paragraph.

There may indeed be documents within the 1,063 imaged pages -- or the additional information that will come from my FOIA request – that may produce a challenge to the finding of the memo of there being no evidence of a proprietary interest, as defined on page four of the memo.

The heart of the memo hinges on the second prong of the test, beginning in the middle of page four.  The terms used in the second prong of the test are very broad, and subject to widely varying interpretations.

The DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal. There may be other applications of contract law that do not require a subcontractor to be on the same premises as a contractor for the contractual relationship to be binding. There may also be instances of a DOE facility being considered a subcontractor without being on the same premises as a contractor.

The second prong of the definition of a DOE facility provides a wider berth of interpretation than the first. You may indeed find that various courts have interpreted the same terms that are used in the second prong as evidence of a proprietary interest.

John M. Anders who Works for DOE and who originally made the designation of "VENDOR" To American Beryllium is the Husband of Karoline Anders an ex Employee OF DOE now employed by DOL in John Vance's Office, Investigator of this case and the Author of the Memo, Signed off by John Vance.
Now, this to me raises all kinds of Red Flags as "CONFLICT OF INTEREST" She had to have a prior knowledge of the case on her own or thru her husband.


DOL denied me the opportunity to review all the evidence needed to appeal my Final decision; therefore, that the failure of the DEEOIC to produce the requested documents is a violation of my due process rights and the Administrative Procedure Act. I request that DOL hold my case in abeyance until DOL or DOE produce the evidence from my FOIA request. At that point, I should be given 30 days to file for reconsideration

The case was never Investigated Properly by Karoline Anders and John Vance of the Department of Policy and Regulations. There was no attempt at Discovering Contracts pertaining to the Documents I presented. I know from past experience that the Claimant is usually held responsible for evidence to support their case but I do not hold a clearance for obtaining this information, so, I would expect that they should have Requested those contracts from DOE as I had asked for in the first place, Instead they only used the Documents I submitted and denied the case based on those Documents, Which, By the way are considered Contracts based on your own Definition as witnessed in the Decision posted above. I have requested Copies of all the Contracts pertaining to the Documents I have submitted From FOIA DOE, If those contracts are unobtainable for me because of lack of Clearance I expect DOL to request those Contracts to Substantiate My case.


Respectfully


Raymond W. Stephens
Claimant
Case # 278306717

07-858
HHK

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

*RAYMOND W. STEPHENS*

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ~~58888~~
(EXCEPT IN U.S. PLAINTIFF CASES)

*PRO SE  N/P*

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
*1660 WHITEHEAD DR.
SARASOTA, FLA. 34232
941-253-7628*

**DEFENDANTS**

*DOL, ET AL*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
~~TRACT OF LAND INVOLVED~~

Case: 1:07-cv-00858
Assigned To : Kennedy, Henry H.
Assign. Date : 5/8/2007
Description: Employ. Discrim.

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff

□ 3 Federal Question
(U.S. Government Not a Party)

● 2 U.S. Government Defendant

□ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**□ A. Antitrust**

□ 410 Antitrust

**□ B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency Review**

□ 151 Medicare Act

Social Security:
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

Other Statutes
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

**□ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*If Antitrust, then A governs)*

**□ E. General Civil (Other) OR □ F. Pro Se General Civil**

Real Property
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

Personal Property
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

Bankruptcy
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

Prisoner Petitions
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

Property Rights
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

Federal Tax Suits
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

Other Statutes
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/* *2255* | ☐ **H.** *Employment* *Discrimination* | ☐ **I.** *FOIA/PRIVACY* *ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** ☐ **510 Motion/Vacate Sentence** | ☒ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** ☐ **890 Other Statutory Actions** (if Privacy Act) *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ☐ **K.** *Labor/ERISA* *(non-employment)* | ☐ **L.** *Other Civil Rights* *(non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** ☐ **720 Labor/Mgmt. Relations** ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** ☐ **740 Labor Railway Act** ☐ **790 Other Labor Litigation** ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** ☐ **443 Housing/Accommodations** ☐ **444 Welfare** ☐ **440 Other Civil Rights** ☐ **445 American w/Disabilities-Employment** ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** ☐ **120 Marine** ☐ **130 Miller Act** ☐ **140 Negotiable Instrument** ☐ **150 Recovery of Overpayment & Enforcement of Judgment** ☐ **153 Recovery of Overpayment of Veteran's Benefits** ☐ **160 Stockholder's Suits** ☐ **190 Other Contracts** ☐ **195 Contract Product Liability** ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

☒ **1 Original Proceeding** ☐ **2 Removed from State Court** ☐ **3 Remanded from Appellate Court** ☐ **4 Reinstated or Reopened** ☐ **5 Transferred from another district (specify)** ☐ **Multi district Litigation** ☐ **7 Appeal to District Judge from Mag. Judge**

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 2000

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐   ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** N/F   (See instruction)   ☐ YES ☒ NO   If yes, please complete related case form.

**DATE** 5.8.07   SIGNATURE OF ATTORNEY OF RECORD   [signature]

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

