**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RAYMOND W. STEPHENS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-0858-HHK |
| | ) | |
| DEPARTMENT OF LABOR | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Department of Labor, by and through counsel, respectfully moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment in its favor. Defendant requests that the court affirm its administrative decision denying benefits to Plaintiff under Part E of the Energy Employees Occupational Illness Compensation Program Act of 2000, 42 U.S.C. § 7384 et seq., and dismiss this case with prejudice. In support of this motion, Defendant relies upon the attached record citations. A statement of material facts not in dispute is also attached.

Although this is a record review case, because it is also a motion for summary judgment, defendant provides the following cautionary instruction. Plaintiff should take notice that any factual assertions contained in the accompanying affidavit and other attachments in support of defendant's motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendant's attachments. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992).

Local Rule 7.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made
> on personal knowledge, shall set forth such facts as
> would be admissible in evidence, and shall show
> affirmatively that the affiant is competent to testify

to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A proposed order is also attached.

Respectfully submitted,

<u>      /s/      </u>
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

<u>      /s/      </u>
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

<u>      /s/      </u>
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
RAYMOND W. STEPHENS                             )
)
        Plaintiff,                                   )
)
        v.                                           )       Civil Action No. 07-0858-HHK
)
DEPARTMENT OF LABOR,                             )
)
        Defendant.                                   )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The instant action seeks review of a decision of the Department of Labor ("DOL")

denying benefits claimed under Part E of the Energy Employees Occupational Illness

Compensation Program Act of 2000, as amended (hereinafter the "EEOICPA" or "Act"), 42

U.S.C. § 7384 et seq., by Raymond W. Stephens ("Stephens").  Stephens is requesting that the

Court reverse DOL's decision finding him ineligible under Part E of EEOICPA.  However, the

Court should enter judgment in favor of the Defendant because DOL's decision to deny

Stephens' claim was not "arbitrary and capricious" under 42 U.S.C. § 7385s-6(a), since Part E

requires that an individual prove that he or she was a "DOE contractor employee" as defined in

42 U.S.C. § 7384l(11).  Because the Administrative Record ("AR") does not establish that

Stephens meets that definition, DOL's decision to deny his claim was not "arbitrary and

capricious"; rather, it articulated a rational connection between the facts found and the decision

made, and was consistent with agency precedent.  Therefore, this Court should enter judgment

on behalf of the Defendant and dismiss Stephens' amended complaint with prejudice.  In

addition, for the reasons set forth herein, Stephens' Motion for Summary Judgment [Docket Entry # 19] should be denied.

## II.  **STATEMENT OF THE ISSUE**

The issue is whether DOL's decision denying benefits to Stephens under Part E of EEOICPA was "arbitrary and capricious" pursuant to 42 U.S.C. § 7385s-6(a).

## III.  **BACKGROUND**

### A.      **Statutory and Regulatory Background.**

The EEOICPA establishes a compensation program that provides benefits to individuals with illnesses caused by exposure to radiation and other toxic substances in the course of their work for the United States Department of Energy (hereinafter "DOE") or its predecessor agencies, and certain of its contractors and subcontractors.  Under Part B of the Act, compensation is available to workers who were employed by a DOE contractor or subcontractor at a DOE facility, by an atomic weapons employer ("AWE") at an AWE facility, or by a beryllium vendor at a beryllium vendor facility.[1]  Part E of EEOICPA provides additional compensation that a "DOE contractor employee" (but not employees of beryllium vendors or AWE's) can receive in the form of a variable lump-sum payment of compensation (based on the employee's permanent impairment and/or calendar years of qualifying wage-loss) if he or she developed a "covered illness" as a result of work-related exposure to a toxic substance at a DOE facility.  42 U.S.C. §§ 7385s(1) and (2), 7385s-2.

The Act defines the term "DOE contractor employee" to mean any of the following:

_____

[1]  Under Part B, qualifying employees (or their eligible survivors) can receive compensation in the form of a lump-sum payment of $150,000 and medical benefits (for covered employees) for certain illnesses due to their exposure to radiation, beryllium or silica in the performance of duty at DOE facilities or the facilities of certain specified DOE contractors, subcontractors and beryllium vendors.  20 C.F.R. § 30.0 (2006).

(A) An individual who is or was in residence at a Department of Energy facility as a researcher for one or more periods aggregating at least 24 months.
(B) An individual who is or was employed <u>at a Department of Energy facility</u> by—
    (i) an entity that contracted with DOE to provide management and operating, management and integration or environmental remediation at the facility; or
    (ii) a contractor or subcontractor that provided services, including construction and maintenance, at the facility (emphasis added).

42 U.S.C. § 7384l(11).  The term "DOE facility" in the above provision is also defined in the Act to mean:

> [A]ny building, structure, or premise, including the grounds upon which such building, structure, or premise is located—
>     (A) in which operations are, or have been, conducted by, or on behalf of, the Department of Energy (except for buildings, structures, premises, grounds, or operations covered by Executive Order 12344, dated February 1, 1982 (42 U.S.C. 7158 note), pertaining to the Naval Nuclear Propulsion Program), and
>     (B) with regard to which the Department of Energy has or had—
>     (i) a proprietary interest; or
>     (ii) entered into a contract with an entity to provide management and operation, management and integration, environmental remediation services, construction, or maintenance services.

42 U.S.C. § 7384l(12).

Executive Order 13179 of December 7, 2000 (65 Fed. Reg. 77487) delegated primary responsibility for administering EEOICPA to DOL.  The determination of whether a particular "building, structure, or premise" is a "DOE facility" has been left to the discretion of the Director of the Office of Workers' Compensation Programs ("OWCP") within DOL.  20 C.F.R. § 30.5(x)(1) (2006).

The EEOICPA also defines the term "beryllium vendor" in § 7384l(6) to mean any one of the eight corporations listed therein and any other processor or producer of beryllium or related products designated as such on or before December 31, 2002 under § 7384m.  The President's authority to designate additional beryllium vendors was delegated to DOE by Section 2(c)(iv) of Executive Order 13179.  Pursuant to that delegation of authority, DOE designated Stephens' employer, American Beryllium Company (the prior corporate name of Loral American

Beryllium Company or "LABC") as a beryllium vendor with a facility in Sarasota, Florida for the purposes of the compensation program. 66 Fed. Reg. 4003 (Jan. 17, 2001). A beryllium vendor facility may also be a "DOE facility" if the vendor's facility is found to meet the definition of a "DOE facility" under 42 U.S.C. § 7384l(12).

An individual asserts entitlement to benefits under EEOICPA by filing a written claim with OWCP, which determines if the claimant meets the eligibility criteria under Part B or Part E of EEOICPA, or both. 20 C.F.R. § 30.100, 30.101 and 30.110(c). The claimant bears the burden of proving by a preponderance of the evidence the existence of each and every criterion necessary to establish eligibility under EEOICPA, unless otherwise provided in the Act or the implementing regulations. 20 C.F.R. § 30.111.

Once OWCP has completed the necessary development of the claim, it will issue a recommended decision on the claimant's alleged entitlement that contains recommended findings of fact and conclusions of law. 20 C.F.R. §§ 30.300 and 30.305. OWCP's Final Adjudication Branch ("FAB") will then consider any objections to the recommended decision that may be filed by the claimant and conduct an informal oral hearing, if one is requested by the claimant within 60 days of the issuance of the recommended decision, after which the FAB will issue the final decision of OWCP on the claim. 20 C.F.R. §§ 30.300 and 30.316.

The claimant may request reconsideration of the FAB's final decision in writing within 30 days of the issuance of that decision. 20 C.F.R. § 30.319(a). If the FAB grants the request for reconsideration, it will consider the written record of the claim again and issue a new final decision on the claim. 20 C.F.R. § 30.319(c). If the FAB denies the request for reconsideration, the FAB decision forming the basis for the request will be considered final upon the date the request for reconsideration is denied, and no further request for reconsideration of that final decision will be considered. 20 C.F.R. § 30.319(d).

4

**B.**    **Procedural Background of Stephens' Part E Claim.**

On April 11, 2005, Stephens filed two claims under EEOICPA, one under Part B for chronic beryllium disease (CBD), and another under Part E which is at issue in this litigation. On July 20, 2005, Stephens was awarded a lump-sum of $150,000.00 for his CBD under Part B. AR 228-229.  Stephens' Part E claim was for alleged heart and lung problems he felt were due to his exposure to toxic substances while working for LABC at its Sarasota, Florida, facility from June 1980 to June 1992.[2]  AR 170.

On March 22, 2006, OWCP issued a recommended decision to deny Stephens' Part E claim on the ground that he had failed to establish qualifying employment by a DOE contractor as required by 42 U.S.C. § 7385s(1).  AR 411-412.  Stephens objected to the recommended decision on May 23, 2006, and contended that LABC was both a beryllium vendor and a "subcontractor" of Rockwell International ("Rockwell"), the DOE contractor at the DOE facility in Golden, Colorado, known as the Rocky Flats Plant, because LABC had performed its beryllium work pursuant to a contract with Rockwell.  AR 486.

On August 16, 2006, Stephens offered a second argument in support of his objection by asserting that DOE had a proprietary interest in the LABC facility because LABC had been required to make a number of substantial modifications to a building at its Sarasota facility before it installed a piece of DOE-owned machinery known as a "Zeiss UPMC 850/1200 Measuring System."  AR 692.  In support of this argument, Stephens submitted a July 25, 1985, letter in which Rockwell authorized LABC to lease the machinery on Rockwell's behalf (after which it would become "Government-furnished equipment"), and to install it in one of LABC's

---

[2]  Stephens had previously filed a claim under Part B of EEOICPA for beryllium sensitivity and was awarded beryllium sensitivity monitoring by OWCP on December 15, 2004.  AR 54.

buildings at its Sarasota facility after the required modifications had been completed.  AR 676.

Stephens argued that these modifications had the effect of granting DOE a proprietary interest in

LABC's building sufficient to enable the LABC facility to satisfy the statutory definition of a

"DOE facility."  AR 715-714.[3]  In order to evaluate Stephens' arguments, FAB obtained

additional evidence regarding LABC's work as a beryllium vendor from DOE, including a June

6, 1988, report in which Rockwell noted that the beryllium work LABC was doing would be

performed by another beryllium vendor (Speedring, Inc.) with a facility in Cullman, Alabama,

and two requisitions documenting the removal of the Zeiss UPMC 850/1200 Measuring System

from the LABC facility and its relocation to the Speedring, Inc. facility in 1988.  AR 671.

On November 9, 2006, the FAB issued a final decision[4] denying Stephens' Part E claim

on the ground that he did not meet the definition of a "DOE contractor employee."  AR 814-813.

By letters dated November 16 and 17, 2006, Stephens requested reconsideration of the FAB's

November 9, 2006, final decision and argued, for the first time, that the LABC facility met the

definition of a "DOE facility" because DOE held a proprietary interest in the beryllium

machining process that had been used by LABC, which he characterized as a form of

"intellectual property."  AR 840-838, 848-846.  On December 20, 2006, Stephens informed the

FAB that he had received new evidence from DOE that he felt supported his earlier assertion that

---

[3] Some of the AR documents were scanned backward so that the last page is first and so
on.  The citations in this filing and the attached Appendix reflect the proper chronological
order of the cited documents.

[4] The FAB concluded that because part of the statutory definition of the term "DOE
facility" required the existence of a proprietary interest and DOE had no such proprietary
interest in the American Beryllium Corporation facility, the claimant could not be
considered to have been a "DOE contractor employee."

LABC was a "subcontractor," and submitted it for the FAB to consider in conjunction with his reconsideration request.[5]  AR 900.

On March 13, 2007, the FAB denied Stephens' reconsideration request on the ground that he had failed to submit any evidence or arguments sufficient to contradict the conclusions reached in the November 9, 2006 decision, which accordingly became final on March 13, 2007. AR 2005-2004.  In its denial, the FAB explained that there was nothing in Stephens' submissions that would warrant changing the final decision.  Id.

## IV.  <u>SUMMARY OF ARGUMENT</u>

The Court has subject matter jurisdiction to review DOL's decision denying benefits to Stephens under Part E of EEOICPA under the terms of 42 U.S.C. § 7385s-6(a), which contains a standard of review that is similar to the one for review of final agency actions in the Administrative Procedure Act ("APA").  Under § 7385s-6(a), DOL is entitled to judgment as a matter of law because the administrative record establishes that DOL considered all of the relevant facts in reaching its determination that Stephens did not qualify for benefits under Part E because he was not employed at a DOE facility, and its decision sets forth a rational relationship between the facts found and the decision reached.

---

[5]  Neither of these arguments is raised in the amended complaint; therefore, they are not addressed in this pleading.  In its November 9, 2006 final decision, the FAB concluded that because the work performed by the employees of a "subcontractor" must be done on the premises of a DOE facility, and since the LABC employees performed all their work at LABC's facility in Sarasota, Florida and not at the Rocky Flats Plant in Golden, Colorado, LABC was not a "subcontractor."  On December 20, 2006, Stephens presented an alternative "subcontractor" argument and submitted two internal Rockwell letters that referred to LABC as an "offsite subcontractor."  DOL considered these documents, but ultimately found them unpersuasive given the prior discussion.  Lastly, Stephens' "intellectual property" argument was first presented after his requests for reconsideration of the FAB's final decision.  For that reason, his argument was only discussed in the March 13, 2007 denial of his request for reconsideration.  In that denial, DOL rejected Stephens' argument and concluded that the "proprietary interest" in § 7384l(12) of EEOICPA refers exclusively to buildings, structures, premises and the grounds upon which such buildings, structures, or premises are located.  This conclusion was based on the plain language of the statutory definition of a "DOE facility" in § 7384l(12).

## V.  ARGUMENT

### A.  Jurisdiction.

Section 7385s-6(a) of EEOICPA provides that "a person adversely affected or aggrieved by a final decision of the Secretary under [Part E]" may seek review of that final decision in the appropriate United States District Court within 60 days of the date that the final decision was issued.  Defendant contends that the "final decision of the Secretary" referred to in § 7385s-6(a) is essentially identical to the APA's concept of a "final agency action" in 5 U.S.C. § 706(2)(A).  Under the APA, an agency action is considered to be "final" when two conditions are met:  "First, the action must mark the consummation of the agency's decisionmaking process. . .and must not be of a tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  Bennett v. Spear, 520 U.S. 154, 177-178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

This court has subject matter jurisdiction over Stephens' complaint since it was filed less than 60 days after the denial of his claim for benefits under Part E became final on March 13, 2007, and the denial was a "final decision" as defined in the judicial review provision of Part E.

### B.  Scope and Standard of Review.

The scope of the Court's review in this proceeding, as in APA review of final agency action, should be limited to the administrative record before the agency at the time the decision at issue was made.  It has been held in this circuit that when applying the "arbitrary, capricious, an abuse of discretion, or otherwise not in conformance with law" standard of the APA, judicial review is "confined to the full administrative record before the agency at the time the decision was made."  Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981); see also 5 U.S.C. § 706  ("[T]he court shall review the whole record.").  Evidence outside the record should not be considered.  See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial

review should be the administrative record already in existence, not some new record made initially in the reviewing court."). This Court should thus restrict its review to the administrative record that was in existence at the point in time when the Part E decision in this matter became final. A certified copy of the record has been made available to the Court for its consideration of Stephens' petition.

As to the standard of review, although summary judgment is an appropriate procedure for resolving a challenge to a final agency action under Part E, a court in such cases should not apply the standard of review ordinarily applied to a motion for summary judgment. See Gonzalez v. United States Dep't of State, 135 F. Supp.2d 193, 195 (D.D.C. 2001). Instead, EEOICPA itself provides the standard of review this Court must apply when reviewing DOL's decision on Stephens' claim filed under Part E[6] in § 7385s-6(a), which provides that "[t]he court may modify or set aside such decision only if the court determines that such decision was arbitrary and capricious."

While the standard of review under Part E is similar to the APA's standard of review of "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language, the Part E standard of review mandates a more deferential review of agency action. This more deferential review is a necessary outcome of the plain statutory language at issue, which requires a plaintiff to prove that a final decision was both "arbitrary *and* capricious" before a court may modify it or set it aside. See 42 U.S.C. § 7385s-6(a). (emphasis added). Therefore, case law interpreting the APA standard is merely informative rather than binding precedent to which this Court is obligated to adhere.

---

[6] Unlike Part E, Part B does not set forth a standard of review and therefore the court's application of the APA standard was proper in Willingham v. Dep't of Labor, 475 F. Supp.2d 607 (N.D. Tex. 2007). In Willingham, the court limited its review to the administrative record and found that a presumption of validity attached to the agency's decision requiring the plaintiff to prove that the agency's decision was "arbitrary or capricious," 475 F. Supp.2d at 611 (citing Miss. Hosp. Ass'n, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir. 1983)).

When a court reviews agency action under the APA to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," it must afford deference to the agency decision and may not substitute its judgment for that of the agency.  See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976); Arizona Public Service Co. v. United States, 742 F.2d 644, 649 (D.C. Cir. 1984).  Likewise, a court reviewing a final decision of the Secretary under Part E must afford DOL deference and not substitute its judgment for that of DOL.  A court's deferential review under the APA's standard is "'searching and careful,' but 'the ultimate standard of review is a narrow one.'"  Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).  Moreover, a court affords its "greatest deference" to an agency when the agency exercises "special competence" in the subject matter delegated to its regulation.  Am. Ship Bldg. Co. v. N.L.R.B., 380 U.S. 300, 316 (1965).  Therefore, since DOL is the agency charged with the responsibility of administering EEOICPA, it should be viewed as exercising its own "special competence" when it makes determinations in EEOICPA claims.

Because the APA's standard of review is deferential, to uphold an agency action under the APA a court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached."  Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 422 (1983).  Indeed, the APA's standard presumes the agency action to be valid and the burden is on the plaintiff to overcome that presumption.  Maryland Nat. Capital Park & Planning Comm'n v. Lynn, 514 F.2d 829, 834 (D.C. Cir. 1975).  Correspondingly, the Court should hold that Stephens has an even greater burden to meet with respect to DOL's Part E decision that requires an even higher level of deference to DOL's determination by the Court.

Under the APA's standard, a court reviews the record to determine "whether the agency has considered the relevant factors and articulated a rational connection between the facts found

10

and the choice made." Jifry v. F.A.A., 370 F.3d 1174, 1180 (D.C. Cir. 2004). Courts consider

several factors relevant in making this determination. For example, an agency action is arbitrary

or capricious under the APA if the agency: (1) relied on factors not intended to be considered;

(2) failed to consider an important aspect of the problem; (3) explained its decision in a manner

that contradicts the evidence; or (4) reached a conclusion so implausible that it cannot be

explained by a difference in view or the product of agency expertise. See Motor Vehicle Mfrs.

Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Courts also consider whether the agency "has acted consistently with its previous applications of

the governing regulations and whether the application of its general regulative doctrines to the

specifics of th[e] case has been reasonable." DSE, Inc. v. United States, 169 F.3d 21, 28 (D.C.

Cir 1999). In sum, the agency's decision must "make sense." Young v. General Servs. Admin.,

99 F. Supp. 2d 59, 66 (D.D.C. 2000). This Court should also consider whether DOL has

considered the relevant factors in Stephens' claim and articulated a rational connection between

the facts found and the choice made, and whether its actions were consistent with its previous

application of the Act and its own regulations.

Because this is a Motion for Summary Judgment, defendant attaches a Statement of

Material Facts Not in Dispute. Defendant also notes that Plaintiff has failed to attach one to his

Motion as required by Local Rule LCvR 7(h). See Docket Entry # 19. In addition, Local Rule

LCvR 7(n) requires that the parties agree on the pages of the Administrative Record in an APA

case to be designated for the Court and provided as an Appendix. Defendant's counsel has

discussed this requirement with Plaintiff who agrees that Defendant will attach to this filing

those pages upon which it relies and Plaintiff, in his opposition, will file additional pages should

he deem them necessary. An index to the entire record is attached with this filing. With regard

to the cd rom version of the record, the parties agree to file a joint motion to file the record under

seal as it contains Plaintiff's medical records. That motion will be filed separately.

**C. OWCP's final agency decision survives scrutiny under Part E's "arbitrary and capricious" standard.**

A review of the administrative record reveals that the decision to deny Stephens' Part E claim survives scrutiny under the "arbitrary and capricious" standard of 42 U.S.C. § 7385s-6(a). In the instant case, DOL determined that Stephens was not eligible to receive compensation under Part E because the administrative record did not establish that he was employed at a "DOE facility"; rather, he was employed at a facility owned by an entity that qualified as a "beryllium vendor" but did not also meet the definition of "DOE facility." There is no dispute about Stephens' work history; both parties agree his only employment covered by EEOICPA was by LABC at its Sarasota, Florida facility. The only dispute is over the characterization of that facility under EEOICPA.

Stephens advanced a number of arguments in an attempt to convince DOL that he should be determined to be a DOE contractor employee. DOL diligently reviewed each of Stephens' arguments and submissions and found his arguments to be contrary to the factual evidence in the administrative record, the language of the Act, and the pertinent regulations. After fully considering these arguments, OWCP issued a thorough decision that this Court can evaluate in this action.

**D. Stephens' argument before the Court does not support his contention that DOL acted in an arbitrary and capricious fashion.**

In order for Stephens to qualify as a DOE contractor employee he must have been "an individual who was employed at a Department of Energy facility" as defined in 42 U.S.C. § 7384l(11)(B). This in turn requires a finding that LABC's Sarasota, Florida facility is a DOE facility. As noted above, that definition requires several criteria to be met. The first criteria, a building, structure or premise in which operations are or have been conducted by or on behalf of

DOE, is clearly met by LABC's Sarasota, Florida facility since beryllium machining took place there on behalf of DOE.

In addition, however, the building, structure, or premise must meet one of two other criteria in the statute that it cannot meet. It must be a facility that DOE either has a proprietary interest in, or has entered into a contract with an entity to provide certain specific types of services. There is no evidence in the record that DOE has entered into a qualifying contract with any entity in regard to the LABC facility and Stephens makes no such allegation in his complaint. Instead, Stephens alleges that the LABC facility where he worked should be considered a "DOE facility" because DOE had a "proprietary interest" in the facility. DOL reviewed this argument, found it to be unpersuasive and issued the determination presently under review by the Court. See R. 19 (Plaintiff's Motion for Summary Judgment), p. 1-3. These arguments were made by Stephens during the administrative proceedings. See AR 692, AR 686, AR 715-714 and AR 722-719. They were considered and discussed. See AR 705-701, AR 2002-1998. The agency explained its reasoning for the decision reached in the November 9, 2006 Final Decision [AR 748-747] and the March 13, 2007 Notice of Denial of request for reconsideration [AR 2005-2004]. In sum, the agency determination was reasonable, based on relevant factors and legally appropriate.

As noted above, in order for LABC's Sarasota, Florida facility to qualify as a DOE facility, Stephens must establish that DOE had a proprietary interest in the LABC building, structure, or premise. Stephens argues that the fact that Rockwell directed LABC to lease a piece of machinery, a Zeiss UPMC 850/1200 Measuring System (which required LABC to undertake substantial building modifications prior to installing it), and then to transfer the lease to Rockwell so it could make the lease payments and retain title to the machinery during its temporary installation in LABC's facility, gave DOE (through its contractor, Rockwell) a

proprietary interest in LABC's facility sufficient to qualify it as a DOE facility under EEOICPA. See R. 19 at p. 1-2.

Stephens' argument almost refutes itself. A basic tenet of property law is that property that is otherwise personal in nature ordinarily becomes part of the realty (and therefore becomes the property of the owner of the realty) when it is physically attached to the soil. See 63C Am. Jur.2d Property § 15. In this regard, Florida applies a three-part test to determine if personal property that has been attached to a property has become the property of the owner of the realty. The three-part test considers:

> First, actual annexation to the realty or something appurtenant thereto; second, appropriateness to the use or purpose of that part of the realty with which it is connected; and third, the intention of the party making the annexation that it shall be a permanent accession to the freehold.

Gray Industries, Inc. v. Mathews Corp., 595 F.2d 1045, 1048 (5th Cir. 1979) (citing Commercial Fin. Co. v. Brooksville Hotel Co., 98 Fla. 410 (Fla. 1929)). "The intention of the party making the annexation is the primary criterion; method of annexation and the character of the article annexed are factors to determine the intent." See Sears Roebuck & Co. v. Bay Bank & Trust Co., 537 So.2d 1041, 1043 (Fla. 1st DCA 1989). See also Rally's Hamburgers, Inc., v. State of Florida Dep't of Transportation, 697 So.2d 535 (Fla. 1st DCA 1997).

In the instant case, the understanding between Rockwell and LABC that the Zeiss UPMC 850/1200 Measuring System would become government property upon transfer of the lease obligations from LABC to Rockwell, and that it would remain government property despite its installation in LABC's facility, is clear. LABC was instructed by Rockwell in the July 25, 1985 letter that the machinery would remain "Government-furnished equipment" after it was installed by LABC in its Sarasota, Florida facility. AR 676. Stephens has failed to show that it was LABC's intent that the Zeiss UPMC 850/1200 Measuring System would become a permanent part of its facility. Since it has not been shown that it was the intent of the party making the annexation to make the machinery a permanent accession, it never became part of the facility;

14

thus the machine's ownership is irrelevant to the question whether DOE had a proprietary interest in LABC's building, structure, or premise.

It clearly was not arbitrary and capricious for DOL to determine that the LABC facility was not a DOE facility based on an argument premised on the presence of a machine owned by another party that never became part of the building, structure, or premise. That argument provides no basis to overturn DOL's denial of Stephens' claim for Part E benefits.[7]

## <u>CONCLUSION</u>

The decision of DOL to deny Stephens' claim under Part E of EEOICPA is subject to review under its unique "arbitrary and capricious" standard. Under that standard, DOL's decision to deny benefits to Stephens should be upheld as a matter of law since the administrative record establishes that DOL based its decision on both the facts as found and the plain meaning of the eligibility requirements contained in the Act. Stephens has failed to show that DOL's decision was both "arbitrary and capricious," and thus has failed to meet his burden in this action. For the foregoing reasons, the Court should deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment and enter a judgment in favor of DOL.

Respectfully submitted,


/s/

---

[7] Stephens' offers a "new" argument at p. 1-2 of his Motion for Summary Judgment when he directs this Court to an unpublished district court decision from the Middle District of Florida in which the court stated that Lockheed Martin had "assumed the liabilities of Loral Corporation." Plaintiff argues that the opinion supports his position. R. at 3. Although the decision was not raised initially below, Stephens suggested to the Final Adjudication Branch that it could be helpful to his case. <u>See</u> AR 588-587. An unpublished decision, the content of which was considered during the final adjudication of this case, provides no basis to overturn DOL's denial of Stephens' claim for Part E benefits.

JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

Of Counsel
Silvia Dominguez
U.S. Department of Labor
Office of the Solicitor
Division of Federal Employees' and
    Energy Workers' Compensation
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-5320

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RAYMOND W. STEPHENS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-0858-HHK |
| | ) | |
| DEPARTMENT OF LABOR | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

1.  In this law suit, Plaintiff is appealing the denial of benefits under Part E of the Energy Employees Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C. § 7384 <u>et seq</u>.("EEOICPA").  R. 1.

2.  The EEOICPA establishes a compensation program that provides benefits to individuals with illnesses caused by exposure to radiation and other toxic substances in the course of their work for the United States Department of Energy (hereinafter "DOE") or its predecessor agencies, and certain of its contractors and subcontractors.  Under Part B of the Act, compensation is available to workers who were employed by a DOE contractor or subcontractor at a DOE facility, by an atomic weapons employer ("AWE") at an AWE facility, or by a beryllium vendor at a beryllium vendor facility.  <u>See</u> 20 C.F.R. § 30.0 (2006).

3.  Under Part B, qualifying employees (or their eligible survivors) can receive compensation in the form of a lump-sum payment of $150,000 and medical benefits (for covered employees) for certain illnesses due to their exposure to radiation, beryllium or silica in the performance of duty at DOE facilities or the facilities of certain specified DOE contractors, subcontractors and beryllium vendors.  <u>Id</u>..

4.  Part E of EEOICPA provides additional compensation that a "DOE contractor employee" (but not employees of beryllium vendors or AWE's) can receive in the form of a variable lump-sum payment of compensation (based on the employee's permanent impairment and/or calendar years of qualifying wage-loss) if he or she developed a "covered illness" as a result of work-related exposure to a toxic substance at a DOE facility.  42 U.S.C. §§ 7385s(1) and (2), 7385s-2.

5.  The Act defines the term "DOE contractor employee" to mean any of the following:

(A) An individual who is or was in residence at a Department of Energy facility as a researcher for one or more periods aggregating at least 24 months.

(B) An individual who is or was employed <u>at a Department of Energy facility</u> by—
> (i) an entity that contracted with DOE to provide management and operating, management and integration or environmental remediation at the facility; or
> (ii) a contractor or subcontractor that provided services, including construction and maintenance, at the facility (emphasis added).

42 U.S.C. § 7384l(11); <u>see also</u> 42 U.S.C. § 7384l(12).

6.  The determination of whether a particular "building, structure, or premise" is a "DOE facility" has been left to the discretion of the Director of the Office of Workers' Compensation Programs ("OWCP") within DOL.  20 C.F.R. § 30.5(x)(1) (2006).

7.  The EEOICPA also defines the term "beryllium vendor" in § 7384l(6) to mean any one of the eight corporations listed therein and any other processor or producer of beryllium or related products designated as such on or before December 31, 2002 under § 7384m.  The President's authority to designate additional beryllium vendors was delegated to DOE by Section 2(c)(iv) of Executive Order 13179.  Pursuant to that delegation of authority, DOE designated Stephens' employer, American Beryllium Company (the prior corporate name of Loral American Beryllium Company or "LABC") as a beryllium vendor with a facility in Sarasota, Florida for the purposes of the compensation program.  66 Fed. Reg. 4003 (Jan. 17, 2001).  A

beryllium vendor facility may also be a "DOE facility" if the vendor's facility is found to meet the definition of a "DOE facility" under 42 U.S.C. § 7384l(12).

8.   Plaintiff filed a claim to benefits under EEOICPA by filing a written claim with OWCP, which determines if the claimant meets the eligibility criteria under Part B or Part E of EEOICPA, or both.  20 C.F.R. § 30.100, 30.101 and 30.110(c).  He bore the burden of proving by a preponderance of the evidence the existence of each and every criterion necessary to establish eligibility under EEOICPA, unless otherwise provided in the Act or the implementing regulations.  20 C.F.R. § 30.111.

9.   On April 11, 2005, Stephens filed two claims under EEOICPA, one under Part B for chronic beryllium disease (CBD), and another under Part E which is at issue in this litigation. On July 20, 2005, Stephens was awarded a lump-sum of $150,000.00 for his CBD under Part B. AR 228-229.  Stephens' Part E claim was for alleged heart and lung problems he felt were due to his exposure to toxic substances while working for LABC at its Sarasota, Florida, facility from June 1980 to June 1992.  AR 170.

10.   On March 22, 2006, OWCP issued a recommended decision to deny Stephens' Part E claim on the ground that he had failed to establish qualifying employment by a DOE contractor as required by 42 U.S.C. § 7385s(1).  AR 411-412.

11.   Stephens objected to the recommended decision on May 23, 2006, and contended that LABC was both a beryllium vendor and a "subcontractor" of Rockwell International ("Rockwell"), the DOE contractor at the DOE facility in Golden, Colorado, known as the Rocky Flats Plant, because LABC had performed its beryllium work pursuant to a contract with Rockwell.  AR 486.

12.   On August 16, 2006, Stephens offered a second argument in support of his objection by asserting that DOE had a proprietary interest in the LABC facility because LABC had been required to make a number of substantial modifications to a building at its Sarasota facility

before it installed a piece of DOE-owned machinery known as a "Zeiss UPMC 850/1200 Measuring System." AR 692. In support of this argument, Stephens submitted a July 25, 1985, letter in which Rockwell authorized LABC to lease the machinery on Rockwell's behalf (after which it would become "Government-furnished equipment"), and to install it in one of LABC's buildings at its Sarasota facility after the required modifications had been completed. AR 676, AR 715-714.

13. FAB obtained additional evidence regarding LABC's work as a beryllium vendor from DOE, including a June 6, 1988, report in which Rockwell noted that the beryllium work LABC was doing would be performed by another beryllium vendor (Speedring, Inc.) with a facility in Cullman, Alabama, and two requisitions documenting the removal of the Zeiss UPMC 850/1200 Measuring System from the LABC facility and its relocation to the Speedring, Inc. facility in 1988. AR 671.

14. On November 9, 2006, the FAB issued a final decision denying Stephens' Part E claim on the ground that he did not meet the definition of a "DOE contractor employee." AR 814-813.

15. By letters dated November 16 and 17, 2006, Stephens requested reconsideration of the FAB's November 9, 2006, final decision and argued, for the first time, that the LABC facility met the definition of a "DOE facility" because DOE held a proprietary interest in the beryllium machining process that had been used by LABC, which he characterized as a form of "intellectual property." AR 840-38, 848-846.

16. On December 20, 2006, Stephens informed the FAB that he had received new evidence from DOE that he felt supported his earlier assertion that LABC was a "subcontractor," and submitted it for the FAB to consider in conjunction with his reconsideration request. AR 900.

17. On March 13, 2007, the FAB denied Stephens' reconsideration request on the ground that he had failed to submit any evidence or arguments sufficient to contradict the conclusions reached in the November 9, 2006 decision, which accordingly became final on March 13, 2007. AR 2004-2005. In its denial, the FAB explained that there was nothing in Stephens' submissions that would warrant changing the final decision. Id.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

Of Counsel
Silvia Dominguez
U.S. Department of Labor
Office of the Solicitor
Division of Federal Employees' and
    Energy Workers' Compensation
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-5320

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing motion and supporting documents was served

by First-Class mail, postage prepaid to:

RAYMOND W. STEPHENS
1600 Whitehead Drive
Sarasota, Florida 34232

on this 17th day of March, 2008.

_____/s/_____
CLAIRE WHITAKER
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

# Appendix

12/15/04 Letter from District
office informing of entitlement to
beryllium sensitivity monitoring.

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH



**EMPLOYEE:**  Raymond W. Stephens

**CLAIMANT:**  Raymond W. Stephens

**FILE NUMBER:**  <span style="background:black">      </span>

**DOCKET NUMBER:**  60423-2005

**DECISION DATE:**  December 15, 2004

### NOTICE OF FINAL DECISION

This is the decision of the Final Adjudication Branch concerning your claim for compensation under Part B of the Energy Employees Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C. § 7384 *et seq.* (EEOICPA or the Act). For the reasons set forth below, your claim is accepted in part and denied in part.

On November 30, 2004, the Jacksonville district office issued a decision recommending that you are a covered beryllium employee as defined in Part B of the Act; that you have established that you have beryllium sensitivity as defined in Part B of the Act; and concluding that you are entitled to beryllium sensitivity monitoring beginning August 3, 2004. 42 U.S.C. §§ 7384l(7)(A), 7384l(8)(A), 7384s(c), 7384s(7). The decision was based on an abnormal beryllium lymphocyte proliferation test (BeLPT) report dated August 30, 2004. The district office recommended denial of the claimed shortness of breath and arterial sclerosis as these are not covered occupational illnesses under Part B of the Act. 42 U.S.C. § 7384l(15).

On December 6, 2004, the Final Adjudication Branch received your written notification that you waive any and all objections to the recommended decision. I have reviewed the record on this claim and the recommended decision issued by the Jacksonville district office on November 30, 2004. I find that the recommended decision is in accordance with the facts and the law in this case, and that you are a covered beryllium employee, as that term is defined in Part B of the Act; that you have been diagnosed with beryllium sensitivity, as that term is defined in Part B of the Act and implementing regulations; and that you are entitled to beryllium sensitivity monitoring/medical benefits effective August 3, 2004, in lieu of compensation in the amount of $150,000, pursuant to Part B of the Act and implementing regulations. 42 U.S.C. §§ 7384l(7), 7384l(8)(A), 7384s, 20 C.F.R. §§ 30.5(o)(1), 30.507, 30.508. Should your beryllium sensitivity develop into chronic beryllium disease (CBD), you may be entitled to additional benefits. I also find that the conditions of shortness of breath and arterial sclerosis are not a beryllium illness,

DOL 0000054

04/07/05 Letter from claimant
now seeking Part E benefits.

April 07, 2005



RE: Raymond W. Stephens SS 

Supporting evidence for claim under EEOICPA Part B for Chronic Beryllium Disease.

My employment with Loral American Beryllium Company has already been established. I worked at the Tallevast, Florida plant from 1980 to 1992. This plant was known to have potential for beryllium exposure and my work required me to be in an exposed area. It has also been established by the DOL that I have had abnormal BeLPT results (test results included) most recently from September 21, 2004 and am currently receiving monitoring at the DOL's expense. Recently I have been diagnosed with CBD and have obtained proof that I meet more than one of the "after 1993" required criteria. While it is probable that I have been suffering from Chronic Beryllium Disease from the 1980's, this is the first time I have had all the required documentation needed to prove my case. I have suffered from dyspnea a known symptom of CBD from the 1980's and was declared totally and permanently disabled in 1993.

Attached please find copies of my tests and reports to substantiate my claim:

Lung pathology showing process consistent with Chronic Beryllium Disease

Pathology report from March 21, 2005 showing a hemosiderin-laden macrophage deposit, interstitial fibrosis and chronic inflammation, all consistent with Chronic Beryllium Disease

CT scan showing changes consistent with Chronic Beryllium Disease

CT scan dated December 9, 2004 indicating emphysematous changes, interstitial fibrosis and old granulomatous disease. All are consistent with Chronic Beryllium Disease

A Pulmonary function study or exercise tolerance test showing pulmonary defects consistent with Chronic Beryllium Disease

A cardiopulmonary exercise test dated December 15, 2004 shows low diffusing capacity, a condition consistent with Chronic Beryllium Disease

07/20/05 Final decision
for CBD under Part B.

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH

**EMPLOYEE:**          Raymond W. Stephens

**CLAIMANT:**          Raymond W. Stephens

**FILE NUMBER:**

**DOCKET NUMBER:**     60423-2005

**DECISION DATE:**     July 20, 2005

## NOTICE OF FINAL DECISION

This is a decision of the Final Adjudication Branch (FAB) concerning your claim for compensation under the Energy Employees Occupational Illness Compensation Program Act (EEOICPA or the Act). 42 U.S.C. § 7384 *et seq*. For the reasons set forth below, your claim is accepted.

## STATEMENT OF THE CASE

On April 11, 2005, you filed a form EE-1, Claim for Benefits under the EEOICPA, for chronic beryllium disease (CBD). On August 3, 2004, you filed a form EE-1, Claim for Benefits under the EEOICPA, for beryllium sensitivity, shortness of breath and arterial sclerosis. On December 15, 2004, a Final Decision was issued accepting your claim for beryllium sensitivity, and denying your claim for shortness of breath and arterial sclerosis.

On the form EE-3, Employment History, you stated you were employed as a CEN machinist by American Beryllium Company, Sarasota, Florida, from June 20, 1980 to June 22, 1992. The evidence of record establishes you worked for American Beryllium Company as claimed.

I have reviewed the medical evidence and find that it is sufficient to establish that you have chronic beryllium disease. Under section 7384 of the Act, CBD may be established by the following:

    (A) For diagnoses on or after January 1, 1993, beryllium sensitivity (as established in accordance with paragraph (8)(A)), together with lung pathology consistent with chronic beryllium disease, including—
        (i) a lung biopsy showing granulomas or a lymphocytic process consistent with chronic beryllium disease;
        (ii) a computerized axial tomography scan showing changes consistent with chronic beryllium disease; or

Any future correspondence, inquiries, or telephone calls should be directed to the Jacksonville district office. Thank you for your cooperation.

Sincerely,

Jeana F. LaRock
District Manager

03/22/06 Recommended Decision.
Denial of Part E claim.

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES' COMPENSATION
400 WEST BAY STREET, ROOM 722
JACKSONVILLE, FL 32202

COVERED EMPLOYEE:          Raymond W. Stephens

CLAIMANT:                  Raymond W. Stephens

DATE OF FILING:            August 3, 2004

FILE NUMBER:               ▬▬▬▬▬▬

## NOTICE OF RECOMMENDED DECISION

This is a Recommended Decision of the District Office concerning your claim for
compensation under the Energy Employees Occupational Illness Compensation Program
Act (EEOICPA). The District Office recommends denial of your claim for benefits filed
under Part E of the Act.

## STATEMENT OF THE CASE

Mr. Raymond Stephens filed a claim for benefits pursuant to the EEOICPA on August 3,
2004.

The employee submitted a Form EE-3, Employment History, indicating that he was
employed at the American Beryllium Company in Tallevast, FL, from June 20, 1980 to
June 22, 1992.

The American Beryllium Company was a beryllium only vendor from 1967 to 1992.
There was no time period in which this facility was designated a Department of Energy
(DOE) facility under remediation.

## FINDINGS OF FACT

1. Mr. Raymond Stephens' claim for benefits was received on August 3, 2004.

2. The employee was employed at the American Beryllium Company which was not a
   DOE covered facility, as required under Part E of the EEOICPA; therefore, Mr.
   Raymond W. Stephens does not meet the criteria of a covered employee.

DOL 0000411

If you have any questions concerning the Notice of Recommended Decision, please call and ask to speak to the Final Adjudication Branch (FAB), toll free at (877) 336-4272.

Sincerely,

JIMMY E. MAXWELL
Senior Claims Examiner

Enclosures:    Recommended Decision
               Claimants Rights
               Waiver

06/03/06 Letter to Mark Stewart.

Employment Standards Administration
Office of workers Compensation Programs
Division of Energy Employee Occupational
Illness Compensation
Final Adjudication Branch

Case # ▓▓▓▓▓▓▓

Mr Mark Stuart;

Response of Final Decision By Final Adjudication Branch for Claim under EEOICP Part
E Filed

It has been ruled that my claim was denied for reasons that Loral American Beryllium
Status Was Classed as VENDOR. It has been brought to my attention Through NIOSH
documents (Enclosed) That Loral American Beryllium was Contracted by Rocky Flats/Y-
12 to Manufacture Weapons Parts during the Years 1968 and into the 1980's. Rocky
Flats/Y-12 was a Direct Contractor for DOE, Thereby rendering American Beryllium as a
Sub Contractor. This should be enough to Change Our DOE classification From
VENDOR to SUB CONTRACTOR. This can be substantiated by Files from DOE and
Copies of Our Contracts with Rocky Flats/Y-12.

DOE has made a mistake in our Classification By not taking into Consideration Our
Contracts with Rocky Flats/Y-12 during the above years. This should be investigated
though DOL and Into Contract Copies with DOE. This will change Our Classification
Thereby Granting the Employees of American Beryllium The right to Apply for EEOICP
Part E and change the eligibility in our favor that we deserve.


Respectfully


Raymond W. Stephens

1660 Whitehead Dr.
Sarasota, Florida
34232

941-953-9628

DOL 0000486

06/03/2006  09:35    9419539628                    RAYMOND STEPHENS                    PAGE  01

FAJ/FIL
6717

Mr. Mark Stewart.........FAB          Fax # 1-904-357-4785

Dear Mark;

**The following May Help You with My Case even more**

I think I made this case a long time ago what I would maintain and have always thought is that if you supplied Be you are a vendor.  If you machined parts you are a contractor, subcontractor at the least.  I can't prove it but this is what I have found out and what I remember.  Some old Records were found and they were Going to Destroy Them until Some Under secretary (can't remember the Name) Stepped in and saved those records.  Those records will Clear a lot of misunderstandings

The records they found were at LLNL (Laurence Livermore National Lab).  This is what I think I remember in the article.  When I ask around I was told they did the design work for Y-12 and RF so it would make sense that the contracts came out of Engineering at LLNL.

**June 11**

U.S. Department of Energy announces that it has now found thousands of pages of documents revealing that Loral American Beryllium did far more work on DOE projects than originally believed.  DOE assigned two full-time employees to comb through secret records at nuclear sites and labs across the country.  The expansion increases the eligibility period for former Loral employees from 12 to 26 years.  The search for the Tallevast records revealed other contracts that will help extend benefits to atomic weapon workers at vendor companies nationwide.

http://www.mercurynews.com/mld/bradenton/news/special_packages/tallevast/13389396.htm?so
urce=rss&channel=bradenton_tallevast

Loral American Beryllium Co. health records found (FL)
by Neil Fischbein on Wednesday, May 11, 2005 [Permalink] [0 Comments]
According to this story in the Bradenton Herald (FL):

    Lockheed Martin Corp. has located medical records for former Loral American Beryllium Co. employees.

    Those health histories could help hundreds of former workers or their survivors qualify for a federal benefits and compensation program to aid employees sickened by exposure to [beryllium and TCE].
    How to get records

    Former Loral American Beryllium Co. workers can obtain medical records by contacting Gail Rymer, communications director for Lockheed Martin.

    Write: 6801 Rockledge Dr., Bethesda, MD 20817

    Call: (301) 897-6934

    Fax: (301) 897-6252
    (This is what we have already accomplished)

RECEIVED O/WO/DECEIC
2006 JUN -5  A 9: 35

DOL 0000588

10.   Bradenton Herald - June 11, 2005 – 1A front

**TALLEVAST WORKERS SPUR ACTION**
 Once again former Loral American Beryllium Co. employees have prompted federal government action. And once again their efforts may aid beryllium workers nationwide. The Department of Energy has expanded a health care benefits program to cover all employees who worked at the Tallevast plant from 1967 to 1992, Sen. Bill Nelson announced Friday. The expansion increased the covered years for the benefits program from 12 to 25 years... "I am proud that we were able to put together the investigation into these lost contracts that mean so much to these employees"

Bradenton Herald | 06/11/2005 | Tallevast workers spur action
Until now, DOE said it could find just a handful of documents that show the Tallevast plant worked on nuclear energy projects. Exposure to beryllium dust ...
www.bradenton.com/mld/bradenton/news/local/11870933.htm - 27k - Cached - Similar pages

here's the date of the article. I couldn't get it to open but that's the one you need.

Have you read this?  The background part will help you on what you need now.  Looks like they changed their procedures.
 Let me know if you need anything else.  It's all out there but I have found what you need for you to take it further if need be

http://www.doh.state.fl.us/Environment/community/SUPERFUND/pdf2006/FormerAmericanBeryllium El032006

I am working on Further Evidence and trying to get it compiled Before the 20 day Deadline

Respectfully

Raymond W Stephens

1680 Whitehead Dr.
Sarasota, Florida
34232

Ph 941-853- 9628

Case # 276306717

DOL 0000587

June 6, 1988 report regarding
beryllium work at LABC.





COMMS. CONTROL
OUTGOING LTR. NO.

88-RF-1159

| DIST. | | |
|---|---|---|
| SANCHINI, B.J. | X | X |
| BADER, C.P. | | |
| CAMPBELL, G.W | | |
| MODE, R.C. | X | X |
| BINZER, J.E. | | X |
| KIRBY, W.A. | | |
| McNETT, J.F. | | |
| MEYERS, G.W. | | |
| ROECKER, J.H. | | |
| SHANNON, W.M. | | |
| SMITH, R.E. | | |
| WEIDNER, C.W | | |
| WESTON, W.J | | |
| WOXHAR, B.O. | | |
| YOUNG, E.R. | | |

| FETCHER, D.H. | X | X |
| CARNIVAL, G.J. | | |
| HARHAM, L.R. | | |
| HEMENT, J.L. | | |
| HUEY, J.B. | | |
| HOFFMAN, R.B. | | |
| KLAMANN, H.L. | | |
| KING, D.M | | |
| LEE, B.W. | | |
| LOUDENMILK, G.E. | X | X |
| NAIMON, E.R. | | |
| NEWBY, R.L. | | |
| TURNER, H.L. | | |
| VELASQUEZ, R.N. | | |

COMMS. CONTROL

| S.E. ERICKSON? | X | X |
| R.L. HILL | | X |
| R.W. SCHAFFER | | X |
| L.J. SMITH | | |

| CLASSIFICATION | | |
| UNCLASSIFIED | X | X |
| CONFIDENTIAL | | |
| SECRET | | |

AUTH. CLASSIFIER



1 Jun 88
DAY
IN REPLY TO LTR. NO.

DEC # 6.36
LTR. APPROVALS
TEK
CTS
GEL

DMG d TYPIST INITIALS
SCB cri
RF-4849 (Rev. 2/88)

Rocky Flats Plant
North American Space Operations
Rockwell International Corporation
P.O. Box 464
Golden, Colorado 80402-0464
(303) 966-7000
Contractor to U.S. Department of Energy

Rockwell
International

JUN 6 1988                                    88-RF-1754

Albert E. Whiteman
Area Manager
DOE, RFAO

B83 BERYLLIUM MACHINING UNIT COST HISTORY AND SAVINGS

This letter provides machining unit cost history for B83 beryllium components currently fabricated at Loral ABC and soon to be transferred to RADC/Speedring as requested by V. V. Berniklau of DOE/AL/DOA. Please forward a copy of this letter to him.

Nine beryllium component types for the B83 Program have been fabricated by Loral ABC in Tallevast, Florida since the early 1980s and will terminate at the completion of the current contract on June 30, 1988. The fabrication contract for FY89-FY91 deliveries has been awarded to RADC/Speedring after analysis of a competitive bid to provide machining.

The enclosed table, "Summary of Be Multi-Year Contract Pricing" shows the projected savings from competitive bidding for all nine parts after removing transition costs. The effect of changing from previous "sole source" contract to "competitive bid" contracting has also reduced costs.

The enclosed chart, "Unit Cost History" gives a more detailed history of machining unit costs for a typical component, Forward Stiffener. All components have shown a similar decrease in cost since 1986. Early reductions in cost can be attributed to "learning curve" reductions, while later reductions were achieved by more aggressive negotiation and the inference of competitive bid contracting. The recent increase in Speedring's unit cost reflected a significant decrease in FY89/90 delivery requirements driven by B83 IP schedule changes. This increased cost will be renegotiated with Speedring.

Note:  Contains Loral/Speedring proprietary information - not for public dissemination.

DOL 0000671

July 25, 1985 document submitted by Mr. Stephens.  Rockwell authorizes LABC to lease machinery on Rockwell's behalf.

06/22/2006  11:09    9419539628    RAYMOND STEPHENS    PAGE  11

7



Rocky Flats Plant
North American Space Operations
Rockwell International Corporation
P.O. Box 464
Golden, Colorado 80402-0464
(303) 497-7000
Contractor to U.S. Department of Energy

**Rockwell International**

July 25, 1985

Loral American Beryllium Corporation
P. O. Box 117
1600 Tallevast Road
Tallevast, FL  33588

ATTN:  George Allen, Jr.

Please use this letter as your authorization to acquire, on
Rockwell's behalf, and install at your facility a Zeiss UPMC
850/1200 Measuring System.  Such system shall be in accordance
with your proposal dated June 14, 1985, and Zeiss Quotation No.
3361-99701-OR2 dated 07-29-85.

However, Rockwell will assume the lease responsibility which in
turn the system becomes Government-furnished equipment.

Our leasing agent shall forward to Loral the Sum not to exceed
$434,937 at such time as the system is delivered to Loral's
plant.

It shall be Loral's responsibility to assure the timely
installation and acceptance of the Zeiss equipment and it shall
also be Loral's responsibility to control all funds advanced by
the leasing agent on Rockwell's behalf for this purchase.  Should
Loral not be able to pass title to the equipment in accordance
with Rockwell's leasing agreement, Loral shall be responsible for
leasing costs attendant to this purchase and for refund of all
monies to the leasing agent which were advanced for this
purchase.

T. L. Vigil
Senior Buyer
Purchasing, Subcontracts
  and Administration

cc:
P. G. Daspit - Loral, ABC Tallevast, FL
S. D. Brumley
G. O. Elvey
D. R. Gammel
R. L. Hansen
P. A. Hurtado
J. A. Marceca
L. E. Wilson

DOL 0000676

08/22/06  Letter from Raymond Stephens to
John Vance or Karoline Anders.

Mr. John Vance or Karoline Anders

The following Documents will establish Beyond Doubt the Eligibility of Loral American Beryllium workers For Part E Compensation.

Item 1.
    A document Dated February 11, 1985 from Loral American Beryllium To Rockwell International  Proposing an Expansion By LABC to Incorporate an Aqueous Cleaning System

Item 2.
    A document dated March 5, 1985 From Rockwell International Accepting the Proposal and Paying LABC for it in the cost of Aqueous Cleaning surcharge, rendering **Rockwell the Owner** after Paying LABC $153,176.22 for it

Item 3.
    A document dated June 1, 1988 returning a Zeiss CMM  Measuring Machine to Speed Ring in Cullman, Alabama The original Owner **(A DOE Facility)**

Item 4.
    A document Dated November 12, 1981 informing LABC that certified fixturing used in Lieu of Inspection Gauging would become the **Property of Rocky Flats**

Item 5.
    Two Documents Dated May 9, 1991 and June 11, 1991 From EG & G Rocky Flats Terminating LABC Status of  Off **Site- Subcontractor**

Item 6.
    One Document dated July 25, 1985 From Rockwell International to LABC instructing LABC to install A Zeiss UPMC 850/1200 Measuring System, and Rockwell assuming the Lease on such System as it becomes **Government – Furnished Property**

08/16/06  Letter from Mr. Stephens offering
second argument in support of his objection.
Zeiss UPMC argument.

## Anders, Karoline - ESA

| | |
|---|---|
| **From:** | RStephe726@aol.com |
| **Sent:** | Wednesday, August 16, 2006 11:03 AM |
| **To:** | Anders, Karoline - ESA |

**Subject:** (no subject)

Karoline;

The modifications to existing building areas , ie.. the inside milling area of the large building, the remodeling of the quality control area to include the air conditioning, concrete slab, inside structure for temperature controls was all done to support the production of DOE components.  The Zeiss machines were only used in the inspection of DOE product.
The remodeling of the building that became the "Q Area", cleaning line purchased only for DOE product, was done only to support that program

Raymond Stephens

08/16/2006

DOL 0000692

09/25/06 Memorandum from John Vance to Bill Franson regarding American Beryllium Company.

Jepartment of Labor

Employment Standards Administration
Office of Workers' Compensation Programs
Division o      rgy Employees Occupational
 Illness C   pensation
Washington, D.C. 20210



MEMORANDUM

Date:           SEP 2 5 2006

To:             Bill Franson
                District Director
                Jacksonville District Office

From:           John Vance
                Branch Chief
                Branch of Policy, Regulation and Procedures

Re:             American Beryllium Company

On May 31, 2006, the Division of Energy Employees Occupational Illness
Compensation (DEEOIC) received a request to consider whether the
American Beryllium Company, (ABC) in Sarasota, FL should be listed as a
Department of Energy (DOE) facility or alternatively, whether it should be
considered an EEOICPA-covered subcontractor to the DOE Rocky Flats
Plant. ABC is currently a designated beryllium vendor under the Act for
1967-1992. This request was forwarded to the Branch of Policies,
Regulations, and Procedures (BPRP) for evaluation.

On June 5, 2006, the Jacksonville Final Adjudication Branch received a
letter from the claimant, Mr. Raymond Stephens, in which he stated that
the Department of Energy (DOE) located "thousands of pages of
documents revealing that Loral American Beryllium did far more work on
DOE projects than originally believed." Mr. Stephens requested that these
additional records be examined in making the determination whether the
ABC meets the definition of a DOE facility. The DOE has provided a copy
of these additional documents to the BPRP on a CD.  There are 1063
imaged pages on the CD, though not all are pertinent to ABC (some
documents pertain to other corporate entities).

ABC was purchased by Loral Corporation and became Loral American
Beryllium, and the names are used interchangeably in this memorandum.
In addition, some documents reviewed contain a Sarasota, Florida address

DOL 0000705

for the plant while others have a Tallevast address. Regardless of how it is characterized, the documentation all pertains to the same plant.

On August 22, 2006, Mr. Stephens submitted additional documents to the BPRP. These documents are summarized as follows:

Documents #1 and #2 are correspondence between Loral American Beryllium and Rockwell International (Rockwell), the contractor for the DOE's Rocky Flats Plant. These letters discuss the purchase of an "Aqueous Cleaning System" by Loral, and the company's recovery of its costs in that acquisition by means of a surcharge on parts sold to Rockwell.

Document #3 is a requisition whereby some equipment was transported to Speedring (another EEOICPA-designated beryllium vendor) in Culman, Alabama from Loral American Beryllium.

Document #4 is an internal Rocky Flats letter dated November 12, 1981 in which procedures for procuring beryllium parts from ABC are discussed. These procedures included having ABC make the tooling and gaging necessary for the manufacturing and inspection of parts. Mr. Stephens highlighted the sentence, "The team also agreed that certified fixturing used in lieu of inspection gaging would become the property of Rocky Flats." ABC is referred to throughout the letter as the "vendor."

Document #5 is a portion of a Rocky Flats letter dated May 9, 1991, discussing security clearance termination procedures for ABC, referred to as an "off-site classified subcontractor" when Rocky Flats stopped procuring parts from ABC.

Document #6 is a Rocky Flats letter dated June 11, 1991, containing the statement, "Effective this date, EG&G Safeguards and Security records will reflect that Loral ABC is no longer considered an active, classified (off-site) subcontractor."

Document #7 is a letter dated July 25, 1985 in which Rockwell authorized Loral American Beryllium to purchase on Rockwell's behalf a "Zeiss UPMC 850/1200 Measuring System." The letter provided that Rockwell would advance $434.937 to pay for the equipment, with ownership vesting in the government.

Documents #8 & #9 provide more information about the Zeiss machine, including indications that Rockwell inspected it and calibrated it.

Document #10 is a December 5, 1985 letter in which Rockwell authorized payment of Loral American Beryllium's costs in shipping classified materials, for its contracts with Rockwell, from the Pinellas facility (a DOE facility in Clearwater, Fl).

In making a determination on this matter, the BPRP has carefully reviewed all the material in the file as well as all the additional documentation from Mr. Stephens and the DOE.

In considering the question of whether the reviewed evidence supports a finding that the American Beryllium Company is a DOE facility under the Act, the applicable law and regulations are:

20 C.F.R. § 30.5 (x)(1)(2005) contains the current regulatory definition of "Department of Energy facility" and states:

> Department of Energy facility means, as determined by the Director of OWCP, any building, structure, or premise, including the grounds upon which such building, structure, or premise is located:
> (i) In which operations are, or have been, conducted by, or on behalf of, the DOE (except for buildings, structures, premises, grounds, or operations covered by E.O. 12344, dated February 1, 1982 [42 U.S.C. 7158 note], pertaining to the Naval Nuclear Propulsion Program); and
> (ii) With regard to which the DOE has or had:
> (A) A proprietary interest; or
> (B) Entered into a contract with an entity to provide management and operation, management and integration, environmental remediation services, construction, or maintenance services.

Assuming that the machining of parts by ABC does constitute "operations" and thus fulfills (i) of the definitional test, one is left to find that DOE had either:
> (A) a proprietary interest; or
> (B) Entered into a contract with an entity to provide management and operation, management and integration, environmental remediation services, construction, or maintenance services.

In terms of proprietary interest, the documentation reviewed suggests that the following items were either owned or potentially owned by DOE:

- Zeiss machine[1] (DOE owned);
- "certified fixturing used in lieu of inspection gaging;" and
- potentially the "Aqueous Cleaning System."

None of these items alone or in combination with one another is sufficient to be considered the proprietary interest of DOE. Proprietary interest needs to be buildings, structures, or premises. Equipment, no matter how large, special-purpose, unique or expensive, is still just equipment; it is not sufficient to be considered a proprietary interest under (A) of the definition of a DOE facility.

With regard to determining whether prong (B) of the test is met, our office reviewed each of the documents in the file to see if any were a management and operation, management and integration, environmental remediation, construction or maintenance contract. These are the types contracts that are common at the large DOE facilities and which are specified in the law. The file contains none of the specified contracts and no evidence that such a contract ever existed between ABC and the DOE or its predecessor agencies. The files are overwhelmingly comprised of purchase orders for parts as well as letters and memoranda regarding arrangements, specifications, vendor audits, quality assurance and delivery of those parts.

In addition to purchase orders, pp. 766-768 of the material provided by the DOE is a Rockwell memorandum dated June 6, 1988, discussing procurement from ABC. It refers to the procurement relationship between Loral and Rockwell in the following manner:

> Nine beryllium component types for the B83 Program have been fabricated by Loral ABC in Tallevast, Florida since the early 1980's and will terminate at the completion of the current contract on June 30, 1988. The fabrication contract for FY89-FY91 deliveries have been awarded to the RADG/Speedring after analysis of a competitive bid to provide machining.

The June 8, 1988 memorandum includes an attachment with a chart on parts pricing.

---

[1] A photograph of a Zeiss machine was located on the internet and added to the file to clarify the nature of a Ziess machine.

Another document (pp. 810-813) forwarded by the DOE and dated September 30, 1987 provides additional details on the nature of the relationship between Loral ABC and the DOE. The attachment gives the delivery schedule for parts being sent from Loral ABC to the DOE. Each delivery is identified in the schedule by a separate purchase order number. This suggests that the fabrication contract was basically implemented through purchase orders. This is confirmed by a statement in an October 7, 1983 Quality Engineering Report that "Loral American Beryllium Company (LABC) of Tallevast, Florida machines and inspects products for [Rockwell] under purchase order contracts."

Irrespective of whether the contracting mechanism was a fabrication contract, purchase orders or some combination thereof, none of these procurement mechanisms meets the legal test outlined in (B). Review of all the documentation clearly shows that the role of Loral American Beryllium in relation to the various portions of the AEC and DOE with which it did business was that of a vendor. ABC was in fact referred to as a "vendor" throughout the November 12, 1981 internal Rockwell letter. ABC therefore does not meet the statutory definition of a DOE facility.

Mr. Stephens also requests that BPRP consider whether ABC qualifies as an EEOICPA-covered subcontractor to the DOE Rocky Flats Plant. The Rocky Flats Plant is a DOE facility. Fed. R. Vol. 70, No. 109, p. 33610. He argues that since ABC manufactured parts under contract for Rocky Flats, ABC employees should be covered under Part E as DOE contractor employees. Mr. Stephens also highlights the sentence in document #6 stating, "Effective this date, EG&G Safeguards and Security records will reflect that Loral ABC is no longer considered an active, classified (off-site) subcontractor."

Regardless of how ABC was characterized in correspondence from Rockwell, however, under the EEOICPA, subcontractor employment for a DOE facility can only be established if such employment took place *on the premises* of a designated DOE facility. See EEOICPA Bulletin No. 03-27 – paragraph 21. Therefore, because the parts ABC manufactured for Rocky Flats were made in Sarasota and not at Rocky Flats, ABC cannot be considered a subcontractor of a DOE facility for purposes of the EEOICPA.

Given these facts, Loral American Beryllium, also known as American Beryllium Company, has not met the definition of a DOE facility under the EEOICPA. The facts also do not support a finding of an EEOICPA-covered subcontractor relationship for ABC.

DOL 0000701

10/10/06  Letter from Mr. Stephens
regarding a FOIA request.

Raymond W Stephens
1550 Whitehead Dr.
Sarasota, Florida
34232
Ph 941-953-9628
Fax 941-953-9628
Email -
Rstephe728@aol

Case # 278306717

Mr. Pete Turcic
200 West Constitution Avenue NW
Washington, DC 20210
Via Facsimile: 202-693-1465

Dear Mr. Turcic,

I would like to request the following documents pursuant to the Acts under FOIA with the understanding that the word "document" encompasses a broad definition (hard copy records, computer records, memos, notes, reports, electronic messages (emails), meeting minutes or transcripts and the like).

1. All documents relating to the interpretation of the law for the probability of causation under Part E.

2. All documents relating to Part E Final Bulletins numbers 06-08 and 06-10.

Item 1.
All Documents/ Contracts Pertaining to,Two Documents Dated May 9, 1991 and June 11, 1991 from EG & G Rocky Flats (A DOE Facility) Terminating Loral American Beryllium Company Status of Off Site- Subcontracter

These Two Documents From EG&G Rocky Flats Prove That Loral American Beryllium Company was Classified as A Sub Contractor, Exactly When It was Classified I do not Have Access to at this time, But it was terminated in May , June of 1991

Further:

Item 2.
All documents/Contracts Dated February 11, 1985 from Loral American Beryllium To Rockwell International Proposing an Expansion By Loral American Beryllium Company to Incorporate an Aqueous Cleaning System

Item 3

All documents/Contracts dated March 5, 1985 From Rockwell International Accepting the Proposal and Paying Loral American Beryllium Company for it in the cost of Aqueous Cleaning surcharge, rendering **Rockwell the Owner ( A DOE Facility)** after Paying LABC $153,176.22 for it

Items 2 & 3  Consist of a Letter to  Rockwell International  Proposing The Expansion of the Q Cleared Facility to incorporate an Aqueous Cleaning System and A letter From Rockwell Accepting The Proposal and Paying Loral American Beryllium Company the Amount of $ 153,176.22 To install it **( Approximately 500-600 Sq Ft of floor Space)** Making the system **the Property Of Rockwell ( A DOE Facility)**

Further:

Item 4.

All Documents/Contracts dated July 25, 1985 From Rockwell International to Loral American Beryllium Company instructing LABC to install A Zeiss UPMC 850/1200 Measuring System, and Rockwell assuming the Lease on such System as it becomes **Government – Furnished Property**

Item 5

All documents/Contracts dated June 1, 1988 returning a Zeiss CMM Measuring Machine to Speed Ring in Cullman, Alabama The original Owner.

Items 4 & 5, These two Letters make it very clear as well That Rocky Flats Instructs Loral American Beryllium Company To Lease a Zeiss Measuring Machine With Rocky Flats Assuming the Lease Responsibility of $434,937 as the system becomes **Government- furnished Property Of Approximately  100 Sq Ft as well as a special poured cement Foundation Measuring 10'x10' x 18" Deep to support  this Delicate measuring device, As well as Special Insulation around the whole "Q" Building to insure against infrared and other emissions for safeguard. The cost of all Is incorporated into the cost of the Parts being Manufactured under Contract**

**"These documents show that Loral meets the definition of DOE facility because they show that Loral was doing work on behalf of DOE (as subcontractor to Loral) (see Section 7384l(12)(A)) and that DOE, through Rockwell (the operator of Rocky Flats, a DOE facility) had a proprietary interest in the Loral facility, as required by Section 7384l(12)(B)i)."**

5. All documents related to the "Classification" of the Loral American Beryllium Company status as a covered "Vendor" under Department of Energy EEOICPA, including all inter-agency correspondence.

Each of these nine numbered paragraphs can be treated as separate requests for the purpose of expediting any one of the requests.

DOL 0000714

10/19/06  Letter to Mark Stewart.
Just received copy of file.

10/19/2006  08:20    9419539628              RAYMOND STEPHENS              · PAGE  01

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Florida
34232
Ph/Fax 941-953-9628

Mr Mark Stewart
US Dept of Labor DEEOIC/FAB
Charles E Bennett Fed BLDG.
400 West Bay St. Rm . 63B
Jacksonville, Florida 32202

RECEIVED OWCP/DEEOIC
2006 OCT 19 A 8:16
FINAL ADJUDICATION BRANCH
U.S. DOL
JACKSONVILLE, FLORIDA

CASE # 278306717

Dear Mr. Stewart;
    I just received a copy of my file that I had requested, After perusing through it, I must admit I was very disappointed at the Department of Regulations and Policy (John Vance & Karoline Anders) After speaking with both of them by Phone and Email I had ask for Copies of any other evidence supplied by DOE Relevant to this Case, I was assured by both that I would Receive those copies. I received no such copies. A CD was ordered by Ms. Anders from DOE containing 1063 Pages of information originally found by Senator Nelson in his request to DOE in March of 2005 for Contracts and other Documents to Justify the Coverage in years from 12 to 25 for Our Belpt Testing Program,
    I had Sent Copies of Documents that I had discovered in the same Pages that were available to them in the CD of 1063 pages, as I had a copy of the same. I assumed (mistakenly) that they would try to find the Contracts to prove or disprove the Documents I had submitted proving my case. I have taken Steps through FOIA DOE to obtain copies of those contracts and have information I should receive then in about 4 weeks.
    If they had investigated as they were directed they would have found the Document I sent them Concerning the Zeiss Machine they would have found that to install this delicate Machinery ($453,000) a Special Concrete pad was poured measuring 10' x 10' x 18" deep Approximately 100 Square feet, That renders the Building "PROPRIETARY INTEREST" as stated in the Law.

Now let's examine the Solicitors report from John Vance and Karoline Anders in the Department of Regulations and Policy

Here is what I see from my review:

DOL 0000722

Page 1, first paragraph – Not sure why the issue to be considered is framed as it is. LABC need not be either a beryllium vendor or a Department of Energy facility, but could be both, as other covered facilities are considered, and as I argue.

Page 1, second paragraph – A request of my file's contents would now, presumably, encompass the 1,063 pages of imaged documents, some of which may be beneficial to me__ none were present

Page 4, second full paragraph – Though the memo does provide the standard definition of proprietary interest under law, it is not clear why there is not a citation to a law or laws for the definition provided in this paragraph.

There may indeed be documents within the 1,063 imaged pages -- or the additional information that will come from my FOIA request -- that may produce a challenge to the finding of the memo of there being no evidence of a proprietary interest, as defined on page four of the memo. I certainly know now how they are interpreting that definition.

The heart of the memo hinges on the second prong of the test, beginning in the middle of page four. The terms used in the second prong of the test are very broad, and subject to widely varying interpretations.

The DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal. There may be other applications of contract law that do not require a subcontractor to be on the same premises as a contractor for the contractual relationship to be binding. There may also be instances of a DOE facility being considered a subcontractor without being on the same premises as a contractor.

The second prong of the definition of a DOE facility provides a wider berth of interpretation than the first. You may indeed find that various courts have interpreted the same terms that are used in the second prong as evidence of a proprietary interest.

I bring your attention to the last Paragraph in The following Rendered Decision!!

http://www.dol.gov/esa/regs/compliance/owcp/epoicp/Decisions/GenericDecisions/DecisionsRef/3 4291-2003-20030801.htm

### CONCLUSIONS OF LAW

A covered employee is eligible for compensation under the EEOICPA for an "occupational illness," which is defined in § 7384l(15) of the EEOICPA as "a covered beryllium illness, cancer referred to in § 7384l(9)(B) of this title, specified cancer, or chronic silicosis, as the case may be." 42 U.S.C. § 7384l(15). A "covered employee" is eligible for compensation under EEOICPA for a specified "occupational illness." A "covered employee," as defined in §§ 7384l(1), 7384l(3), 7384l(7), 7384l(9), 7384l(11) and § 7384r of the EEOICPA, includes employees of private companies (an entity "other than the United States", per § 7384l(4)) which provided radioactive materials to the United States for the production of atomic weapons, employees at Department of Energy facilities or test sites (§ 7384l(12)), and employees of Department of Energy contractors, subcontractors, or beryllium vendors. 42 U.S.C. §§ 7384l(1),(3),(7),(9),

DOL 0000721

(11); 7384r. Section 7384(l)(11)(B)(I and ii) defines a "Department of Energy contractor employee" to include

"An individual who is or was employed at a Department of Energy facility by—

> (i)          An entity that contracted with the Department of Energy to provide management and operating, management and integration, or environmental remediation at the facility; or
>
> (ii)         A contractor or subcontractor that provided services, including construction and maintenance, at the facility."

The DEEOIC has further addressed the issues of how a "contractor or subcontractor" may be defined, as well as whether employees of state or federal governments may be considered DOE contractor employees, in EEOICPA Bulletins No. 03-27 (issued May 28, 2003) and No. 03-26 (issued June 3, 2003). The following definitions have been adopted by the DEEOIC:

> Contractor -- An entity engaged in a contractual business arrangement with the Department of Energy to provide services, produce materials or manage operations at a beryllium vendor or Department of Energy facility.

> Subcontractor -- An entity engaged in a contracted business arrangement with a beryllium vendor contractor or a contractor of the Department of Energy to provide a service at a beryllium vendor or Department of Energy facility.

> Contract - An agreement to perform a service in exchange for compensation, usually memorialized by a memorandum of understanding, a cooperative agreement, an actual written contract, or any form of written or implied agreement, is considered a contract for the purpose of determining whether an entity is a "DOE contractor."

> To Summarize, it is my belief that this case so far has not had the benefit of investigation in the Department of Policy and Regulations. They used only the Documents I submitted and dismisses the case at hand without just cause.

After speaking with you on the phone and by emails in the past, I know beyond doubt you are a Fair and Caring person in your work and you will do what is right. The department of DOL must certainly have ways of checking information as it determines Appropriate and I know you will do whatever needs to be done

If this case should be denied be advised I will request an in person hearing to defend my case

Respectfully

Raymond W Stephens

DOL 0000719

11/09/06  Final Decision following
review of written record.

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH



**EMPLOYEE:** Raymond W. Stephens

**CLAIMANT:** Raymond W. Stephens

**FILE NUMBER:** 

**DOCKET NUMBER:** 10035076-2006

**DECISION DATE:** November 9, 2006

## FINAL DECISION FOLLOWING
## A REVIEW OF THE WRITTEN RECORD

This is a decision of the Final Adjudication Branch concerning your claim for compensation under the Energy Employees Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C. § 7384 *et seq.* (EEOICPA or the Act). For the reasons set forth below, your claim is denied.

## STATEMENT OF THE CASE

On August 3, 2004, you filed a form EE-1, Claim for Benefits under the EEOICPA. A previous Final Decision was issued by the Department of Labor under Part B of the Act on July 20, 2005, concluding that you were entitled to compensation for chronic beryllium disease. The evidence of record shows that you worked for American Beryllium Company (ABC)[1] from 1967 to 1992.

On March 22, 2006, the Jacksonville district office issued a recommended decision under Part E of the Act, concluding that you are not entitled to benefits since you are not a Department of Energy (DOE) contractor employee. Attached to the recommended decision was a notice of claimant rights, which stated that you had 60 days in which to file an objection to the recommended decision and/or request a hearing. On May 23, 2006, the Final Adjudication Branch received your letter of objection.

## OBJECTIONS

You are basically objecting the recommended decision of March 22, 2006, because you disagree with the ABC classification as a beryllium vendor. You think it should be considered a DOE facility or a DOE subcontractor so you can apply for benefits under Part E of the Act. You

---

[1] The Department of Energy Office of Worker Advocacy website notes that American Beryllium is classified as a beryllium vendor for purposes of the Act.

DOL 0000814

indicated that since ABC manufactured parts under contract for the DOE Rocky Flats Plant, the ABC employees should be covered under Part E of the Act as contractor employees.

An opinion dated September 25, 2006, from the Branch of Policies, Regulations and Procedures, establishes because part of the definition of a DOE facility is that DOE has or had to have a proprietary interest and DOE had no proprietary interest in ABC. Proprietary interest refers to buildings, structures or premises. Interest in equipment is not sufficient to be considered a proprietary interest. Therefore that ABC can not be considered a DOE facility. 20 C.F.R. § 30.5 (x)(1) (2005).

The Act is clear indicating that subcontractor employment for a DOE facility can only be establish if such employment took place on the premises of a designated DOE facility. See 42 U.S.C. § 7384l(11), 20 C.F.R. § 30.5(w) (2005) and EEOICPA Bulletin 03-27 (issued May 28, 2003). Since your employment took place at the ABC facility in Sarasota, Florida, and not at the DOE Rocky Flats Plant or any other designated DOE facility, ABC cannot be considered a DOE subcontractor and you cannot be considered a DOE contractor employee under Part E of the Act.

## FINDINGS OF FACT

1.  You filed a claim for benefits under the Act as a former employee of ABC.

2.  ABC has been designated as a beryllium vendor.

## CONCLUSIONS OF LAW

The undersigned has reviewed the record, the recommended decision issued by the district office on March 22, 2006, and the subsequently submitted objections. I find that the decision of the district office is supported by the evidence and the law, and cannot be changed.

In order to be considered eligible for benefits under Part E of the EEOICPA the employee has to be a "covered Part E employee" which means a DOE contractor employee who has been determined to have contracted a covered illness through exposure at a DOE facility. 20 C.F.R. § 30.5(p) (2005). You worked at the ABC in Sarasota, Florida. Unfortunately, ABC has been classified as a beryllium vendor and not a DOE facility. Therefore, I conclude that you are not entitled for benefits under Part E of the Act because you do not meet the definition of a covered DOE contractor employee. 42 U.S.C. § 7385s(1).

Jacksonville, FL

Douglas J. Helsing
Hearing Representative
wp

11/17/06  Letter (Revised 11/17/06)
requesting reconsideration



6717
CBH
9

REVISED( November 17, 2006)

Raymond W Stephens

1660 Whitehead Dr.
Sarasota, Fl 34232

U.S. Department of Labor/DEEOIC
Final Adjudication Branch
Charles E. Bennett Federal Building
400 West Bay Street, Room 638
Jacksonville, FL 32202

Sir/Madam;

The wording of the final decision allows me to file a letter requesting reconsideration of the final decision, I requested copies of the 1,063 pages of documents that were the basis of the decision communicated in the Vance memo From John Vance And Karoline Anders, that request was denied, thus denying me the opportunity to review all the evidence needed to appeal my Final decision; therefore, that the failure of the DEEOIC to produce the requested documents is a violation of my due process rights and the Administrative Procedure Act.

Your Decision Seems to be based on "Proprietary Interest", In the Document I originally sent you Dated July 25, 1985 Rockwell International Authorizes LABC to install a Zeiss UPMC 850/1200 Measuring Machine at a cost of $434,937, This Includes The pouring of a Special Cement Floor to Support this Machine. The cement Floor is Common Knowledge in the installation of This Machine, Therefore: The Floor Becomes Part of the Building, rendering The Building "Proprietary Interest".

Additionally,..... This is hard to explain.  Property can mean machines, buildings etc. or it can mean the process, like an intellectual property.  If LABC did a process that was only for DOE and DOE owned that process then it should meet the criteria.  If Loral was making a part for a weapon you can bet DOE owned the process. No other company obviously would have ownership of a weapons process.  Am I explaining that clearly enough?  That information would be in a contract. The reason I know that existed is because they secured an area and required personnel to be cleared to work in the area.  To do all of that there has to be a DOE contract that sets out the requirements and within that contract will be the ownership of that process.  In my opinion that is the case that needs to be made and it will require someone with a clearance to request and view those documents.  DOL is supposed to have cleared people that can do that. Karoline Anders should hold a clearance and could request that from DOE.  Why didn't she do that? Did we not request that info? Of Course I did. This case was not investigated properly from the outside?

To further question the accuracy of the interpretation of critical terms used to deny my claim, I cite the following from a DOL decision dated August 1, 2003, Docket # 3 in which I call your Attention to the Highlighted areas of That Part of the Decision Dealing with Interpretation of "Contractor" , "SubContractor" , "Contract".

        "Contractor" – An entity engaged in a contractual business
    arrangement with the Department of Energy to provide services, produce materials
    or manage operations at a beryllium vendor or Department of Energy facility.

**"Subcontractor" – An entity engaged in a contracted business arrangement with a beryllium vendor contractor or a contractor of the Department of Energy to provide a service at a beryllium vendor or Department of Energy facility.**

**"Contract" - An agreement to perform a service in exchange for compensation, usually memorialized by a memorandum of understanding, a cooperative agreement, an actual written contract, or any form of written or implied agreement, is considered a contract for the purpose of determining whether an entity is a "DOE contractor."**

Therefore Rendering the Documents I submitted in Question "A Contract between the two Parties." Including Reference to LABC Being a "Subcontractor"

Even though I have requested Copies of the 1063 Pages on the CD that were used in Evidence of My denial by Karoline Anders and John Vance from the very Start and was denied, the bulk of evidence seems to stem from that report Submitted by John Vance dated September 25, 2006

All references to pages and paragraphs in the following text are for the September 25, 2006 Memo from John Vance to Bill Franson.

Page 1, first paragraph – Not sure why the issue to be considered is framed as it is. LABC need not be either a beryllium vendor or a Department of Energy facility, but could be both, as other covered facilities are considered, and as I argue.

Page 1, second paragraph – A request of my file's contents would now, presumably, encompass the 1,063 pages of imaged documents, some of which may be beneficial to me.....File received and no evidence of 1063 Pages in Question.

Page 4, second full paragraph – Though the memo does provide the standard definition of proprietary interest under law, it is not clear why there is not a citation to a law or laws for the definition provided in this paragraph.

There may indeed be documents within the 1,063 imaged pages – or the additional information that will come from my FOIA request – that may produce a challenge to the finding of the memo of there being no evidence of a proprietary interest, as defined on page four of the memo.

The heart of the memo hinges on the second prong of the test, beginning in the middle of page four. The terms used in the second prong of the test are very broad, and subject to widely varying interpretations.

The DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal. There may be other applications of contract law that do not require a subcontractor to be on the same premises as a contractor for the contractual relationship to be binding. There may also be instances of a DOE facility being considered a subcontractor without being on the same premises as a contractor.

The second prong of the definition of a DOE facility provides a wider berth of interpretation than the first. You may indeed find that various courts have interpreted the same terms that are used in the second prong as evidence of a proprietary interest.

DOL 0000839

John M. Anders who Works for DOE and who originally made the designation of "VENDOR" To American Beryllium is the Husband of Karoline Anders an ex Employee OF DOE now employed by DOL in John Vance's Office, Investigator of this case and the Author of the Memo, Signed off by John Vance.

Now, this to me raises all kinds of Red Flags as "CONFLICT OF INTEREST" She had to have a prior knowledge of the case on her own or thru her husband.

DOL denied me the opportunity to review all the evidence needed to appeal my Final decision; therefore, that the failure of the DEEOIC to produce the requested documents is a violation of my due process rights and the Administrative Procedure Act. I request that DOL hold my case in abeyance until DOL or DOE produce the evidence from my FOIA request. At that point, I should be given 30 days to file for reconsideration

The case was never Investigated Properly by Karoline Anders and John Vance of the Department of Policy and Regulations. There was no attempt at Discovering Contracts pertaining to the Documents I presented. I know from past experience that the Claimant is usually held responsible for evidence to support their case but I do not hold a clearance for obtaining this information, so, I would expect that they should have Requested those contracts from DOE as I had asked for in the first place, Instead they only used the Documents I submitted and denied the case based on those Documents, Which, By the way are considered Contracts based on your own Definition as witnessed in the Decision posted above. I have requested Copies of all the Contracts pertaining to the Documents I have submitted From FOIA DOE, If those contracts are unobtainable for me because of lack of Clearance I expect DOL to request those Contracts to Substantiate My case.

Respectfully

Raymond W. Stephens
Claimant
Case

11/16/06  Letter (11/16/06)
requesting reconsideration

November 16, 2006

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Fl 34232

U.S. Department of Labor/DEEOIC
Final Adjudication Branch
Charles E. Bennett Federal Building
400 West Bay Street, Room 63B
Jacksonville, FL 32202

Sir/Madam;

The wording of the final decision allows me to file a letter requesting reconsideration of the final decision, I requested copies of the 1,063 pages of documents that were the basis of the decision communicated in the Vance memo From John Vance And Karoline Anders, that request was denied, thus denying me the opportunity to review all the evidence needed to appeal my Final decision; therefore, that the failure of the DEEOIC to produce the requested documents is a violation of my due process rights and the Administrative Procedure Act.

Your Decision Seems to be based on "Proprietary Interest", In the Document I originally sent you Dated July 25, 1985 Rockwell International Authorizes LABC to Install a Zeiss UPMC 850/1200 Measuring Machine at a cost of $434,937, This Includes The pouring of a Special Cement Floor to Support this Machine. The cement Floor Is Common Knowledge in the installation of This Machine, Therefore: The Floor Becomes Part of the Building, rendering The Building "Proprietary Interest".

Additionally,…. This is hard to explain. Property can mean machines, buildings etc. or it can mean the process, like an intellectual property. If LABC did a process that was only for DOE and DOE owned that process then it should meet the criteria. If Loral was making a part for a weapon you can bet DOE owned the process. No other company obviously would have ownership of a weapons process. Am I explaining that clearly enough? That information would be in a contract. The reason I know that existed is because they secured an area and required personnel to be cleared to work in the area. To do all of that there has to be a DOE contract that sets out the requirements and within that contract will be the ownership of that process. In my opinion that's the case that needs to be made and it will require someone with a clearance to request and view those documents. DOL is supposed to have cleared people that can do that. Karoline Anders should hold a clearance and could request that from DOE. Why didn't she do that? Did we not request that info? Of Course I did. This case was not investigated properly from the outset

To further question the accuracy of the interpretation of critical terms used to deny my claim, I cite the following from a DOL decision dated August 1, 2003, Docket # 34180-2003, of which I call your Attention to the Highlighted areas of That Part of the Decision Dealingwith Interpretation of "Contractor" , "SubContractor" , "Contract".

"**Contractor**" – An entity engaged in a contractual business arrangement with the Department of Energy to provide services, products/materials or manage operations at a beryllium vendor or Department of Energy facility,

RECEIVED OWCP/DEEOIC

NOV 21

FINAL ADJUDICATION BRANCH
U.S. DOL
JACKSONVILLE FLORIDA

8:19

**"Subcontractor" – An entity engaged in a contracted business arrangement with a beryllium vendor contractor or a contractor of the Department of Energy to provide a service at a beryllium vendor or Department of Energy facility.**

**"Contract" - An agreement to perform a service in exchange for compensation, usually memorialized by a memorandum of understanding, a cooperative agreement, an actual written contract, or any form of written or implied agreement, is considered a contract for the purpose of determining whether an entity is a "DOE contractor."**

Therefore Rendering the Documents I submitted In Question "A Contract between the two Parties." Including Reference to LABC Being a "Subcontractor"

Even though I have requested Copies of the 1063 Pages on the CD that were used In Evidence of My denial by Karoline Anders and John Vance from the very Start and was denied, the bulk of evidence seems to stem from that report Submitted by John Vance dated September 25, 2006

All references to pages and paragraphs in the following text are for the September 25, 2006 Memo from John Vance to Bill Franson.

Page 1, first paragraph – Not sure why the issue to be considered is framed as it is. LABC need not be *either* a beryllium vendor or a Department of Energy facility, but could be both, as other covered facilities are considered, and as I argue.

Page 1, second paragraph – A request of my file's contents would now, presumably, encompass the 1,063 pages of imaged documents, some of which may be beneficial to me.....File received and no evidence of 1063 Pages in Question.

Page 4, second full paragraph – Though the memo does provide the standard definition of proprietary interest under law, it is not clear why there is not a citation to a law or laws for the definition provided in this paragraph.

There may indeed be documents within the 1,063 imaged pages – or the additional information that will come from my FOIA request – that may produce a challenge to the finding of the memo of there being no evidence of a proprietary interest, as defined on page four of the memo.

The heart of the memo hinges on the second prong of the test, beginning in the middle of page four. The terms used in the second prong of the test are very broad, and subject to widely varying interpretations.

The DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal. There may be other applications of contract law that do not require a subcontractor to be on the same premises as a contractor for the contractual relationship to be binding. There may also be instances of a DOE facility being considered a subcontractor without being on the same premises as a contractor.

The second prong of the definition of a DOE facility provides a wider berth of interpretation than the first. You may indeed find that various courts have interpreted the same terms that are used in the second prong as evidence of a proprietary interest.

DOL 0000847

John M. Anders who Works for DOE and who originally made the designation of "VENDOR" To American Beryllium is the Husband of Karoline Anders an ex Employee OF DOE now employed by DOL in John Vance's Office, Investigator of this case and the Author of the Memo, Signed off by John Vance.

Now, this to me raises all kinds of Red Flags as "CONFLICT OF INTEREST" She had to have a prior knowledge of the case on her own or thru her husband.

DOL denied me the opportunity to review all the evidence needed to appeal my Final decision; therefore, that the failure of the DEEOIC to produce the requested documents is a violation of my due process rights and the Administrative Procedure Act. I hereby request an Extension of the initial 30 days to allow me to gather further evidence requested from FOIA DOE

The case was never Investigated Properly by Karoline Anders and John Vance of the Department of Policy and Regulations. There was no attempt at Discovering Contracts pertaining to the Documents I presented. I know from past experience that the Claimant is usually held responsible for evidence to support their case but I do not hold a clearance for obtaining this information, so, I would expect that they should have Requested those contracts from DOE as I had asked for in the first place, Instead they only used the Documents I submitted and denied the case based on those Documents, Which, By the way are considered Contracts based on your own Definition as witnessed in the Decision posted above. I have requested Copies of all the Contracts pertaining to the Documents I have submitted From FOIA DOE, If those contracts are unobtainable for me because of lack of Clearance I expect DOL to request those Contracts to Substantiate My case.

Respectfully

Raymond W. Stephens
Claimant

12/20/06  Letter

12/28/2086  12:55    9419539628              RAYMOND STEPHENS                    PAGE  01

December 20, 2006

Raymond W Stephens
1660 Whitehead Dr.
Sarasota, Florida
34232

C~~~~~~~

US Dept of Labor DEEOIC/FAB
Charles E Bennett Fed BLDG.
400 West Bay St. Rm . 63B
Jacksonville, Florida 32202

Dear Tim Cain
        Previously I sent a letter to the FAB requesting they
hold my case in Abeyance until such time as I received a
response from My FOIA request from DOE. I have received
that Response and it is enclosed with this letter, Notably
it is not what I had Hoped for, in that most of what I
needed seems to have been destroyed. I have two documents
from that response that supports my allegation That LABC
was a "SubContractor" from 1988 thru 1991.
        You may continue with your Decision Making process at
this time fore it seems I have no other way of producing
more evidence to support my Argument.

However; Let me again remind the FAB that over a 1,000 pages of DOE
documents were referred to in the Vance memo, that clearly what I
received falls far short of the mark, and that failure to provide me
with all of the documents used to arrive at the decision in the Vance
memo is a violation of my due process rights and a violation of the
Administrative Procedure Act.

Respectfully

Raymond W. Stephens
1660 Whitehead Dr.
Sarasota , Florida
34232

7 pages attached

RECEIVED OWCP/DEEOIC

2006 DEC 20  P 2: 16

FINAL ADJUDICATION BRANCH
U.S. DOL
JACKSONVILLE, FLORIDA

DOL 0000900

03/01/07  Memorandum

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division c'    'ergy Employees Occupational
  Illness Compensation
Washington, D.C. 20210



MEMORANDUM

Date:        MAR ~ 1 2007

To:          Mark Stewart
             Manager, Final Adjudication Branch (FAB)
             Jacksonville

From:        John Vance
             Unit Chief
             Branch of Policies, Regulations and Procedures

Re:          Concerns of Mr. Raymond W. Stephens re: Loral American
             Beryllium Corporation (LABC)

On January 26, 2007, the Division of Energy Employees Occupational Illness
Compensation (DEEOIC) received information from by Mr. Raymond W. Stephens as
part of his request for reconsideration of his November 9, 2006 final decision which
denied his claim for Part E benefits on the grounds that his employer, Loral American
Beryllium Corporation (LABC), was neither a DOE facility nor a subcontractor
performing a service on the premises of a DOE facility. The Branch of Polices,
Regulations and Procedures (BPRP) issued a memo on this same subject dated September
25, 2006 in which it was determined that LABC did not meet the definition of a DOE
facility for purposes of the EEEOICPA and further that LABC did not qualify as a
subcontractor performing a service on the premises of a DOE facility. Mr. Stephens now
raises additional objections to this earlier memo, which will be addressed here.

These objections will be stated and addressed in the order in which they are presented by
Mr. Stephens in his various correspondences with DEEOIC.

### New Submission: Letter Received October 19, 2006

**Concern:** Mr. Stephens expresses his frustration at not receiving the 1063 pages of
material upon which the earlier memo was based. In a subsequent letter he expressed his
additional belief that because these pages were not in his file that they were not
considered as part of the earlier memo.

**Response:** BPRP apologizes for the confusion surrounding the 1063 pages of
documentation. DOL did not initially provide these documents to Mr. Stephens because

1

DOL 0002002

the Department of Labor was not the "agency of origin," and we were concerned that it was not appropriate for us to release them - that only the Department of Energy could release them. We have revisited this earlier stance and have now provided these documents to Mr. Stephens. Additionally, all 1063 pages were reviewed as part of the drafting the September 25, 2006 memo.

**Complaint:** Mr. Stephens complains that the DEEOIC did not try to find additional contracts to help him prove his case.

**Response:** Although the DEEOICP gathers extensive amounts of information as a means of assisting claimants, ultimately the burden of proof is on the claimants. The EEOICPA implementing regulations are clear as to the burden of proof placed on every claimant under the Act. Submitting evidence in support of a claim is ultimately the claimant's responsibility, as explained in § 30.111 of the implementing regulations. This section states that "the claimant bears the burden of proving by a preponderance of the evidence the existence of each and every criterion necessary to establish eligibility under any compensable claim category...the claimant also bears the burden of providing to the OWCP all written medical documentation, contemporaneous records, or other records and documents necessary to establish any and all criteria for benefits set forth in these regulations." In the case of Mr. Stephens, available evidence was gathered and reviewed by the DEEOIC and found insufficient to substantiate his arguments.

**Objection:** Mr. Stephens states that DOL should consider the concrete flooring which was a necessary pre-requisite for installation of the Zeiss Machine. He argues that because of this specialized concrete flooring that LABC meets the proprietary interest of the DOE definition and should therefore be found to be a DOE facility.

**Response:** DEEOIC is aware that concrete flooring was installed to specifications needed as a prerequisite for installation of the Zeiss Machine. The Zeiss Machine and the unique nature of its requirements were considered as part of the September 25, 2006 memo. We disagree with Mr. Stephens' conclusion. It is our understanding that LABC owned the concrete floor and therefore there is no DOE proprietary interest and the DOE facility definition is not met.

**Objection:** Mr. Stephens states that the DOL should not consider the determination of whether a facility can be a DOE facility to be mutually exclusive of the same facility being a beryllium vendor.

**Response:** There is no prohibition on a facility being both a DOE facility and a beryllium vendor for purposes of the EEOICPA. DEEOIC acknowledges that the wording of the first sentence of the section entitled, "Objections," in the Final Decision dated November 9, 2006 on this same point is poor. We recognize that Mr. Stephens seeks to have LABC to be categorized at both a beryllium vendor and as a DOE facility or as a subcontractor to a DOE facility. He is correct that such a dual categorization is permitted by the Act. There are a number of facilities so designated.

2

DOL 0002001

Additionally, the purpose of the word "alternatively" in the paragraph Mr. Stephens references from the September 25, 2006 memo on this same point was to explore alternative arguments. The two arguments explored in that memo were 1) whether the LABC facility met the definition of a DOE facility and 2) whether the LABC facility met the definition of a DOE subcontractor, as specified in DEEOIC Bulletin No. 03-27. We concluded in the September 25, 2006 memo that LABC did not meet either of these definitions. Nevertheless, if a determination had been made that LABC met the definition of a DOE facility, such a determination would have had no impact on its status as a designated beryllium vendor. The two analyses are separate and distinct and meeting one definition is not a bar to meeting the other.

**Comments:** Mr. Stephens cites a number of DEEOIC regulations pertaining to the definition of contracts and contractor employees and states, "There may also be instances of a DOE facility being considered as subcontractor without being on the same premises as a contractor."

**Response:** With regard to the determination of whether LABC is a subcontractor within the meaning of EEOIPA, DEEOIC realizes that much of the documentation from Rocky Flats refers to LABC as a subcontractor. While this is interesting, it is not probative in terms of whether it is a subcontractor for purposes of the EEOICPA program. By definition, in order for an entity to be a DOE subcontractor for purposes of administration of the EEOICPA, the work performed for DOE under that contract must have occurred on the premises of a DOE facility. The applicable portion of Bulletin No. 03-27 is:

> 7. There are three developmental components that must be met before a decision of covered [subcontractor] employment can be reached. The CE [claims examiner] must determine whether 1) the claimed period of employment occurred during a covered time frame as alleged, 2) a contract to provide "covered services" existed between the claimed subcontractor and the DOE employer or BE vendor [if proving that claimant is a subcontractor to a covered beryllium vendor] at a covered facility (during a covered time frame), and 3) **whether employment activities (work or labor) took place on the premises of the covered facility.** (emphasis added)

Mr. Stephens is not seeking to prove he was a subcontractor at a beryllium vendor, rather he is trying to prove that LABC is a subcontractor to Rocky Flats, within the meaning of EEOICPA. What Bulletin No. 03-27 means is that for anyone to be found to be a subcontractor to Rocky Flats, they had to be on the premises of Rocky Flats. The Act also covers on-site subcontractors of beryllium vendors, but those subcontractors are only entitled to the same benefits as the employees of the beryllium vendors themselves, namely Part B. Since Mr. Stephens has already been paid his Part B benefits, coverage as a subcontractor of a beryllium vendor would not help his claim.

**Objection:** Mr. Stephens quotes extensively from of an earlier DEEOIC decision, Docket Number 34291-2003, which explores the meaning of Bulletin No. 03-27.

3

"Establishing Covered Subcontractor Employment." This decision has also been added to the case file for completeness sake.

**Response:** The DOL agrees that Bulletin No. 03-27 is controlling on the question of whether LABC can be considered a "DOE subcontractor" for purposes of the EEOICPA. The case represented by Docket Number 34291-2003, however, explores the issue of whether a valid contract existed between the claimant's employer and the DOE, as per Bulletin No. 03-27 (available in full on the DEEOIC website). In that case there was no dispute of the fact that the claimant was on the premises of a DOE facility (Paducah, in that instance). This is distinguishable from Mr. Stephens' case in that with regard to LABC there is no doubt that a contractual relationship existed between DOE and LABC. The reason LABC was not found to be a DOE subcontractor is because the employment activities (ie. the manufacture of parts) did not take place on the premises of a DOE facility.

**New submission:** Mr. Stephens provides a signed statement from Mr. Patrick G. Daspit which states, "In order to install the Zeiss CMM, LABC had to put in an isolated concrete pad for vibration, as well as environmental equipment to control humidity and temperature." The statement also mentions the aqueous cleaning method and quality assurance process required as part of the LABC contract with DOE.

**Response:** Although the statement from Mr. Daspit was not previously in the file, the information provided therein was nothing substantially different from what was already known about the Zeiss Machine, the aqueous cleaning method or the quality assurance process. The aqueous cleaning method was addressed in the previous memo on pages two and three. The quality assurance method was also familiar to the DOL and is not relevant to whether the DOE had a proprietary interest at LABC.

### New Submission: Letter Dated November 17, 2006

**Argument:** Mr. Stephens argues that proprietary interest includes intellectual property and/or ownership of process and he suggests that if DOE had such an intellectual property interest in some aspect of the process that this would mean that the DOE had a proprietary interest in LABC and LABC should be found to be a DOE facility for purposes of the EEOICPA.

**Response:** DOL's conclusion is that under the Act, proprietary interest means an interest in "buildings, structures, premises, including the grounds upon which such building, structure, or premise is located." This has not been shown in the instant case.

**Comments:** Mr. Stephens states, "DOL is supposed to have cleared people that can do that [review classified contracts]. Karoline Anders should hold a clearance and could request that from DOE"

4

**Response:** Karoline Anders does hold a DOE clearance. None of the material associated with the 1063 pages or anything else in this file, however, is classified. Although the parts manufactured by LABC, and specifically the shapes thereof, were (and still are) classified, the shape of a manufactured part is not relevant to a determination of whether the DOE had a proprietary interest in LABC or whether LABC held one of the specific types of contracts listed in the law.

**Comments:** Mr. Stephens states, "John M. Anders who Works for DOE and who originally made the designation of 'VENDOR' To American Beryllium is the Husband of Karoline Anders and ex Employee OF DOE now employed by DOL in John Vance's Office, Investigator of this case and the Author of the Memo, Signed off by John Vance. Now this to me raises all kinds of Red Flags as "CONFLICT OF INTERST." She has to have a prior knowledge of the case on her own or thru her husband."

**Response:** Decisions and memos receive considerable review through DOL's solicitor's office, the BPRP and various levels of management, all of which have a say in how decisions should be made and what those decisions should be. The September 25, 2006 memo regarding LABC was fully vetted through this process to ensure sound decision-making occurred.

**New submission:** Mr. Stephens provides a copy of the DOE response to his FOIA request.

**Response:** This material is all duplicative of that which is already contained in the 1063 pages and was fully considered in writing the September 25, 2006 memo on this topic.

**New submission:** Letter from Mr. Stephens dated January 11, 2007 in which he complains about the DOE response to his FOIA, including concerns about the possible destruction of contract records.

**Response:** The DOL is not in a position to offer an opinion on the efficacy of the DOE FOIA process.

## Conclusion

While the DEEOIC regrets not sending the CD containing the documentation earlier, there is essentially nothing in Mr. Stephens' most recent submissions or arguments that changes any aspect of the September 25, 2006 memorandum. LABC does not meet the definition for a DOE facility nor does it qualify as a DOE subcontractor for purposes of the EEOICPA, per Bulletin No. 03-27.

5

03/13/07  Notice of Denial
of Request for Reconsideration

U.S. DEPARTMENT OF LABOR    EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL
ILLNESS COMPENSATION
FINAL ADJUDICATION BRANCH



**EMPLOYEE:**          Raymond W. Stephens

**CLAIMANT:**          Raymond W. Stephens

**FILE NUMBER:**       ████████████

**DOCKET NUMBER:**     10035076-2006

**DECISION DATE:**     November 9, 2006

### NOTICE OF DENIAL OF
### REQUEST FOR RECONSIDERATION

This is the response to your November 17, 2006 request for reconsideration of the November 9, 2006 decision of the Final Adjudication Branch. With that request, you submitted the following documents: a March 5, 1985 letter and a July 25, 1985 letter addressed to Loral American Beryllium Corporation (LABC) from a T. L. Vigil, senior buyer with Rockwell International; a copy of a final decision dated August 1, 2003 for docket number 34291-2003; a September 25, 2006 memorandum to Bill Franson, District Director of the Jacksonville District Office, from John Vance, Branch Chief of the Branch of Policy, Regulation, and Procedures; a second page of a February 11, 1985 letter from Mr. George M. Allen, Jr., with Rockwell International; several documents from EG&G Rocky Flats terminating LABC's facility clearance or contractor status, with a separate letter dealing with LABC's security servicing visits; and a copy of the employment and job history affidavit of Patrick G. Daspit. Additionally, you submitted a letter dated December 20, 2006, which included two letters from EG&G Rocky Flats that were previously sent as well as a letter from the Department of Energy which responded to your Freedom of Information Act request to them. You also sent several facsimile transmissions containing duplicate evidence previously submitted. For the reasons set forth below, your request is denied.

The November 9, 2006 final decision denied your claim for compensation under the EEOICPA because you worked at American Beryllium Company (a.k.a. LABC), which has been classified as a beryllium vendor and not a DOE facility. Hence, you did not meet the definition of a covered DOE contractor employee and you were not entitled to benefits under Part E of the Act. 42 U.S.C. § 7385s(1).

In order for a reconsideration to be granted, the evidence or argument must be of sufficient quality to establish that the potential exists to alter a Finding of Fact or Conclusion of Law referenced in the final decision. I have reviewed the documents submitted with your November 17, 2006 request for reconsideration as well as the additional documents you subsequently submitted, and must deny that request. In your request, you state that you could not obtain the 1,063 pages of documents mentioned in Mr. Vance's memorandum to Mr. Franson, which

DOL 0002005

deprived you of the chance to review all of the available evidence in violation of your "due process rights and the Administrative Procedure Act." You later refer to several disagreements you have with the findings stated in this memorandum, particularly with its decision that DOE had neither a proprietary interest nor had entered into a contract. You argue that "LABC need not be either a beryllium vendor or a Department of Energy facility, but could be both, as other covered facilities are considered...." You also state that the "DEEOIC bulletin used to justify the finding on LABC not being a subcontractor is certainly open to potential rebuttal," and that the part of the definition of a DOE facility referring to contracts "provides a wider berth of interpretation." You also argue that since the installation of a Zeiss machine (the purchase of which was mentioned in the July 25, 1985 letter) included pouring a cement floor, which became part of the building where it was placed, the building is a "proprietary interest" of the DOE. Furthermore, you claim that if LABC was involved in a weapons process for the DOE and DOE "owned that process," it should qualify as a property, (e.g., an "intellectual property") and a contract should exist that explains the ownership of the process.

The DEEOIC, including the Branch of Policies, Regulations and Procedures (BPRP), has considered your new arguments and evidence and determined that there is nothing in your most recently submitted evidence or arguments that changes the findings of the September 25, 2006 memorandum. Furthermore, your arguments about LABC's designation and your disagreement with the bulletin and the definition of a DOE contractor are subjective and not supported by any evidence.

In order for an entity to be a DOE subcontractor, the work performed for DOE under that contract must have occurred on the premises of a DOE facility. For LABC to be a subcontractor to Rocky Flats, it had to be on the premises of Rocky Flats and engaged in employment activities. These activities in this case, the manufacturing of parts, did not take place on the premises of a DOE facility. LABC owned the concrete floor on which the Zeiss machine was installed, so there is no DOE proprietary interest and the DOE facility definition is not met. Therefore, LABC does not meet the definition of a DOE facility nor does it qualify as a DOE subcontractor for purposes of the EEOICPA, per Bulletin No. 03-27. As for your contention about LABC's weapons process being the intellectual property of the DOE, proprietary interest under the Act only means an interest in "buildings, structures, [and] premises, including the grounds upon which such a building, structure, or premise is located."

The documents you submitted do not contradict the conclusions reached in the final decision. Therefore, you have not provided a sufficient basis for reconsideration of the November 9, 2006 final decision. The November 9, 2006 decision of the Final Adjudication Branch is therefore final on the date of issuance of this denial of your request for reconsideration. 20 C.F.R. § 30.319(c)(2).

Jacksonville, FL

*L. HC*

Leslie H. Choubane
Hearing Representative
Final Adjudication Branch

DOL 0002004

# ADMINISTRATIVE RECORD

Stephens v. U.S. Department of Labor
United States District Court for the District of Columbia
Civil Action No. 07-0858-HHK

| | DATE | TITLE/SUBJECT | FROM | TO | PAGE |
|---|---|---|---|---|---|
| | 08/03/04 | EE-1 Form completed by claimant. Claims shortness of breath and arterial sclerosis. | | | 001-002 |
| | 04/11/05 | EE-1 Form completed by claimant for additional CBD. | | | 003-004 |
| | 08/03/04 | EE-3 Form completed by claimant for employment at American Beryllium from June 1980 to June 1992. | | | 005-006 |
| | | Social Security documents for claimant. | | | 007-010 |
| | | Medical documentation submitted by claimant. | | | 016-017 |
| | | W-2 form 1990 submitted by claimant. | | | 021-025 |
| | 11/30/04 | Recommended Decision. Part B claim. | | | 036-043 |
| | 12/15/04 | Letter from District office informing of entitlement to beryllium sensitivity monitoring. | | | 050-051 |
| | 12/15/04 | Final Decision.  Part B acceptance. | | | 054 |
| | 04/08/05 | Medical documentation submitted by claimant. | | | 060-168 |
| | 04/07/05 | Letter from claimant now seeking Part E benefits. | | | 170 |
| | | Medical documentation submitted by claimant. | | | 171-173 |
| | | Medical documentation submitted by claimant. | | | 177-185 |
| | 06/14/06 | Call log. | | | 187-188 |
| | 06/15/04 | Letter from district office regarding section 7385.  Does not cover employment at a beryllium vendor or atomic weapons employer facility when not considered to be a DOE facility for remediation. | District office | Raymond Stephens | 189-190 |
| | 06/16/05 | Recommended Decision for CBD claim under Part B. | | | 191-197 |
| | 07/20/05 | Letter regarding medical benefits. | | | 220-221 |
| | | EN-20 Payment form. | | | 224 |
| | 07/20/05 | Final decision for CBD under Part B. | | | 228-229 |
| | 07/25/05 | Completed EN-20 form. | | | 235 |
| | 07/11/05 | Letter to Mr. Stephens in response to his May 23, 2005 letter. | Peter Turcic | Raymond Stephens | 257-258 |
| | | Medical documentation submitted by claimant. | | | 270-273 |
| | 12/20/05 | Call log. | | | 274-281 |
| | | Medical documentation. | | | 282-284 |
| | | Medical documentation. | | | 287-291 |
| | 01/19/06 | Letter to Mr. Stephens requesting that he provide a rationalized medical report explaining how his heart problems are related to CBD. | District office | Raymond Stephens | 292 |

| | 01/19/06 | Note to file | | | 295 |
|---|---|---|---|---|---|
| | | Medical documentation | | | 300-303 |
| | 01/24/06 | Development letter | District office | Dr. Liss | 304 |
| | 03/06/06 | Medical documentation faxed | Raymond Stephens | Rachel Leiton | 326-330 |
| | 03/10/06 | Letter informing Raymond Stephens that heart condition was accepted as a "consequential illness" and he is eligible to receive medical benefits | | | 336 |
| | | Reimbursement documents | | | 344-349 |
| | | Prescription history information | | | 350-398 |
| | 03/14/06 | Travel medical reimbursement documents | | | 401-407 |
| | 03/22/06 | Recommended Decision. Denial of Part E claim. | | | 411-412 |
| | | Medical documentation | | | 415-436 |
| | 04/13/06 | Copy of transcript from deposition of Dr. Geoffrey Liss | | | 437-447 |
| | | Medical documentation | | | 451-469 |
| | | Reimbursement documents | | | 470-483 |
| | 05/23/06 | Phone message.  Mr. Stephens claims left voicemail for Mark Stewart stating that he believed LABC did weapons research for Rocky Flats and Y-12 from 1968 to 1980's.  For this reason he believes that LABC should be a subcontractor. | | | 484 |
| | 05/23/06 | Letter of objection.  Letter states that Rocky Flats was a direct contractor for DOE and that LABC was a subcontractor.  Claims that this should be enough to change the DOE classification of LABC from a beryllium vendor to a subcontractor. | Raymond Stephens | Mark Stewart | 486 |
| | | Medical documentation. | | | 493-503 |
| | 05/24/06 | Letter seeking help from Mark Stewart with new "investigation." | Raymond Stephens | Mark Stewart | 504 |
| | 05/30/06 | Letter from Mark Stewart acknowledging receipt of 5/25/06 letter. | Mark Stewart | Raymond Stephens | 505 |
| | | Medical documentation. | | | 506-586 |
| | 06/03/06 | Letter to Mark Stewart. | | | 588-587 |
| | | LABC documents. | | | 589-592 |
| | | Medical documentation. | | | 598-616 |
| | 07/14/06 | Call log. Mr. Stephens is petitioning to have facility's designation modified from beryllium vendor to a DOE facility. | | | 619 |
| | | LABC documents copied from 1063 page CD. | | | 621-670 |
| | | June 6, 1988 report regarding beryllium work at LABC. | | | 671 |
| | | LABC documents copied from 1063 page CD. | | | 672-675 |
| | | July 25, 1985 document submitted by Mr. Stephens.  Rockwell authorizes LABC to lease machinery on Rockwell's behalf. | | | 676 |
| | | LABC documents copied from 1063 page CD. | | | 677-685 |
| | 08/22/06 | Letter from Raymond Stephens to John Vance or Karoline Anders. | Raymond | John Vance | 686 |

| | | | Stephens | or Karoline Anders | |
|---|---|---|---|---|---|
| 08/10/06 | Email correspondence between Raymond Stephens and Karoline Anders. | | | | 688-691 |
| 08/16/06 | Letter from Mr. Stephens offering second argument in support of his objection.  Zeiss UPMC argument. | | | | 692 |
| | Loral American Beryllium documents. | | | | 694-700 |
| 09/25/06 | Memorandum from John Vance to Bill Franson regarding American Beryllium Company. | | John Vance | Bill Franson | 705-701 |
| 10/17/06 | Letter to Stephens providing a copy of his file. | | | | 708 |
| 10/10/06 | Letter from Mr. Stephens regarding a FOIA request. | | Raymond Stephens | Peter Turcic | 715-714 |
| 10/10/06 | Follow up from Mr. Stephens. | | Raymond Stephens | | 716 |
| 10/10/06 | Follow up from Mr. Stephens. | | Raymond Stephens | | 717 |
| 10/19/06 | Letter to Mark Stewart.  Just received copy of file. | | | | 722-719 |
| | Medical documentation. | | | | 724-742 |
| 11/09/06 | Final Decision. | | | | 748-747 |
| 11/09/06 | Letter to Mr. Stephens to FAB regarding cd not in file. | | | | 753 |
| 11/20/06 | Letter.  CD. DOL not in possession of copies but DOE has them. | | | | 755 |
| 09/08/06 | Affidavit by Patrick Daspit. | | | | 756-757 |
| | LABC documents. | | | | 758-766 |
| 09/25/06 | Copy of September 25, 2006 memorandum. | | | | 767-771 |
| 10/17/06 | Letter to Mr. Stephens. | | FAB | Raymond Stephens | 774 |
| | Correspondence. | | Raymond Stephens | District Office | 776 |
| 10/10/06 | Letter to Peter Turcic. | | Raymond Stephens | Peter Turcic | 779-781 |
| 10/10/06 | Letter to Peter Turcic. | | Raymond Stephens | Peter Turcic | 782 |
| 10/10/06 | Letter. | | Raymond Stephens | District Office | 783 |
| 10/19/06 | Letter . | | Raymond Stephens | Mark Stewart | 785-788 |
| | Medical documentation. | | | | 790-807 |
| 11/09/06 | Final Decision following review of written record. | | | | 814-813 |
| 10/02/06 | Call log. | | | | 817 |
| 11/09/06 | Letter. | | Raymond Stephens | FAB | 819 |
| 11/20/06 | Letter. | | FAB | Raymond | 821 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Stephens | |
| 09/08/06 | Affidavit of Patrick Daspit | | | | 822-823 |
| | LABC documents | | | | 824-832 |
| 09/25/06 | Memorandum | | John Vance | Bill Franson | 833-837 |
| 11/17/06 | Letter (Revised 11/17/06) requesting reconsideration | | Raymond Stephens | FAB | 840-838 |
| 11/16/06 | Letter (11/16/06) requesting reconsideration | | Raymond Stephens | FAB | 848-846 |
| | Medical documentation | | | | 850-891 |
| 12/18/06 | Letter from Department of Energy to Mr. Stephens | | DOE | Mr. Stephens | 897-899 |
| 12/20/06 | Letter | | Raymond Stephens | Tim Cain | 900 |
| 01/03/07 | Letter | | Raymond Stephens | Tim Kaine | 902 |
| | Medical documentation | | | | 903-905 |
| 01/10/07 | Call log | | | | 906 |
| 01/10/07 | Call log | | | | 907 |
| 01/11/07 | Correspondence-email | | Raymond Stephens | Tim Cain | 908 |
| 01/16/07 | Call log | | | | 909 |
| 01/11/07 | Correspondence | | Raymond Stephens | Tim Kaine | 911 |
| | LABC documentation | | | | 912-914 |
| 01/12/07 | Letter | | Raymond Stephens | Abel Lopez | 915-916 |
| 01/12/07 | Letter | | Raymond Stephens | Tim Cain | 917 |
| 01/23/07 | Memorandum | | Tim Cain | John Vance | 919-920 |
| 11/13/06 | Call log | | | | 922 |
| 02/27/07 | Correspondence | | Karoline Anders | Raymond Stephens | 923-924 |
| 01/25/07 | Call log | | | | 926 |
| 11/21/06 | Call log | | | | 927 |
| 11/13/06 | Call log | | | | 928 |
| 02/16/07 | Correspondence-email | | Tim Cain | Raymond Stephens | 929 |
| | LABC documents from CD | | | | 931-1992 |
| 02/27/07 | Correspondence-email | | Karoline Anders | Raymond Stephens | 1993-1994 |

| | DATE | TITLE/SUBJECT | FROM | TO | PAGE |
|---|---|---|---|---|---|
| | 03/07/07 | Call log | | | 1995 |
| | 03/08/07 | Correspondence-email | Raymond Stephens | Tim Cain | 1996 |
| | 03/12/07 | Call log | | | 1997 |
| | 03/01/07 | Memorandum | John Vance | Mark Stewart | 2002-1998 |
| | 03/13/07 | Notice of Denial of Request for Reconsideration | | | 2005-2004 |
| | 03/13/07 | Correspondence | Tim Cain | Raymond Stephens | 2007 |
| | | Medical documentation | | | 2009-2010 |

## Certification of Administrative Record

| | DATE | TITLE/SUBJECT | FROM | TO | PAGE |
|---|---|---|---|---|---|
| | 09/27/07 | Records Authentication Certificate | Roberta Mosier | | |

.                                                                6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RAYMOND W. STEPHENS   )
            )
    Plaintiff,   )
            )
   v.       )   No. 07-0858-HHK
            )
DEPARTMENT OF LABOR   )
            )
    Defendant.   )
_____)

**<u>ORDER</u>**

   Upon consideration of plaintiff's motion for summary judgment and defendant's motion for summary judgment which is supported by the administrative record, the opposition and reply thereto, and it appearing that the final decision of the Department of Labor with regard to benefits determination that is the subject of this litigation is not arbitrary and capricious, a abuse of discretion, or otherwise contrary to law, it is this

_____day of _____, 2008

   ORDERED, that plaintiff's motion is denied, and it is

   FURTHER ORDERED, that defendant's motion be, and hereby is, granted. Summary judgment is hereby entered in defendant's favor and this civil action is dismissed, with prejudice.

           _____
           UNITED STATES DISTRICT JUDGE

Copies to:

Raymond W. Stephens
1660 Whitehead Drive
Sarasota, Florida  34232

Claire Whitaker
Assistant U.S. Attorney
555 4th St., N.W. Room E-4204
Washington, D.C. 20530